William E. Levin, SB No. 104,631
Levin & Dicterow
668 N. Coast Highway, Suite 1264
Laguna Beach, CA 92651
Attorneys for Plaintiffs,
VBS Distribution, Inc., and VBS Television, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBS Distribution, Inc., a California corporation, and VBS Television, Inc., a California corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| Nutrivita Laboratories Inc., a California corporation, Nutrivita, Inc., a California corporation, US Doctors' Clinical, Inc., a California corporation (or dba), Robinson Pharma, Inc., a California corporation, KVLA, Inc., a California corporation, Tuong Nguyen, an individual domiciled in California, Tram Ho, an individual domiciled in California, Jenny Do aka | |

**Civil Case No.**

**8:16-cv-1553_____**


**PLAINTIFF VBS DISTRIBUTION, INC. AND VBS TELEVISION, INC.'S COMPLAINT FOR: 1) UNFAIR COMPETITION, 2) FALSE ADVERTISING, 3) THEFT OF TRADE SECRETS, 4) TRADE DRESS INFRINGEMENT, 5) ANTI-TRUST AND RESTRAINT OF TRADE [ALL UNDER FEDERAL AND STATE LAW], 6) COPYRIGHT INFRINGEMENT, 7) UNFAIR TRADE PRACTICES, 8) INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS, 9) INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS,  10) BREACH OF FIDUCIARY DUTY,  AND 11) CIVIL CONSPIRACY, AND**

1 | Ngoc Nu, an individual domiciled in          **OTHER RELIEF**
2 | California, and Does 1-10 Inclusive
3 |                                              **DEMAND FOR JURY TRIAL**
4 |     Defendants.                              **VERIFICATION OF COMPLAINT**

_____

VBS Distribution, Inc. ("VBS Distribution"), and VBS Television, Inc, ("VBS Television"), collectively or individually referred to as "Plaintiffs") by and through their counsel, alleges for their Complaint against Defendants Nutrivita Laboratories, Inc., Nutrivita, Inc., US Doctors' Clinical, Inc., Robinson Pharma, Inc., KVLA, Inc., Tuong Nguyen, Tram Ho, and Jenny Do ("Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action for unfair competition under federal and California law, false advertising under federal and California law, theft of trade secrets under federal and California law, trade dress infringement under federal and California law, anti-trust and restraint of trade under federal and California law, copyright infringement, and related state claims, based on Defendants' intentional and repeated pattern of unfair competition and false advertising, and the other wrongful acts of Defendants alleged herein.

## THE PARTIES

### Plaintiffs

2. Plaintiff VBS Television, Inc. is a corporation, organized and existing under the laws of the State of California, and having a principal place of business at 16331 Gothard St., Suite B, Huntington Beach, California 92647.

3.     Plaintiff VBS Distribution, Inc., aka VBS Home Shopping, is a corporation, organized and existing under the laws of the State of California, and having a principal place of business at 16331 Gothard St., Suite B, Huntington Beach, California 92647.

### The Vietnamese Dietary Supplement Defendants

4.     On information and belief, Defendant Nutrivita Laboratories Inc., (hereinafter referred to as "Nutrivita Labs" or sometimes just "Nutrivita"), is a corporation organized and existing under the laws of the state of California, and having a principal place of business at 2781 W. MacArthur Blvd, Suite 305, Santa Ana, California 92704, and does business in this judicial district, including Orange County. Its listed address in the Secretary of State's corporate records is the same address as the address for its registered agent for service of process, Mr. Daniel Do-Khanh, who was also its counsel of record in the first lawsuit (as described below).

5.     On information and belief, Defendant Nutrivita, Inc., (hereinafter referred to sometimes just as "Nutrivita"), is a corporation organized and existing under the laws of the state of California, and having a principal place of business at 7291 Heil Ave., Huntington Beach, California 92647, and does business in this judicial district, including Orange County. Both Nutrivita Labs and Nutrivita, Inc. are sometimes referred to herein collectively as Nutrivita, and the exact relationship between them is not currently known to Plaintiffs. Its registered agent for service of process is Cindo Ho, who, upon information and belief, is the daughter of Defendant Jenny Do, who is also the current wife of Defendant Tuong Nyugen.

6.     On information and belief, Defendant US Doctors' Clinical, Inc. (hereafter referred to as "US Doctors" or "US Doctors' Clinical"), is a corporation organized and existing under the laws of the state of California, and having a principal place of business in Orange County, which is or was listed as 15568 Brookhurst St., Ste. 374, Westminister, CA 92683, and does business in this judicial

district, including Orange County. In the alternative, upon information and belief, it is a dba and/or trademark for one of the other Defendants herein, or otherwise connected to some of the other Defendants herein. It is or was listed as the distributor for some of the Arthro-7 products sold by Defendants

7. On information and belief, Defendant Robinson Pharma, Inc. (hereafter referred to as "Robinson Pharma"), is a corporation organized and existing under the laws of the state of California, and having a principal place of business at  3330 South Harbor Blvd., Santa Ana, California 92704,  and does business in this judicial district, including Orange County.

8. On information and belief, Defendant Tuong Nguyen (hereinafter referred to as "Tuong"), is an individual domiciled in California, and residing in this judicial district, and is the primary or sole shareholder and owner and the driving force of each of the other Vietnamese dietary supplement Defendants, and KVLA, and their chairman, president, and/or chief executive officer, controls them directly or through his wife, Defendant Jenny Do, and personally participated in, controlled, and directed, and/or induced, the wrongful acts complained of herein, and is the alter ego of said Defendants. In some cases, he is also the purported sole employee or person most knowledgable of said defendants, according to his previous deposition testimony in the first lawsuit between some of the parties hereto ("Tuong deposition"). (The defendants Nutrivita, US Doctors' Clinical, Robinson, and Tuong, are collectively sometimes referred to as "the Vietnamese dietary supplement Defendants").

### The Show Defendants

9. On information and belief, Defendant KVLA, Inc. (hereafter referred to as "KVLA") is a corporation organized and existing under the laws of the state of California, and having a principal place of business at  7291 Heil Avenue, Hungtingon Beach, California 92647,  and does business in this judicial district,

including Orange County. This is the same address as Defendant Nutrivita,Inc.

10.     On information and belief, Defendant Tram Ho (hereinafter referred to as "Tram"), is an individual domiciled in California, and residing in this judicial district.

11.     On information and belief, Defendant Jenny Do, also known as Ngoc Nu (hereinafter referred to as "Jenny"), is an individual domiciled in California, and residing in this judicial district. The defendants KVLA, Tuong, Tram, and Jenny, are sometimes hereinafter referred to as "the Show defendants."

12.     Plaintiff is currently unaware of the true names and capacities of the Defendants sued herein under the names "Does 1 through 10" and therefore refers to said parties by such fictitious names. Plaintiff is informed and believes that each of the defendants sued under such fictitious names was in some manner responsible for Plaintiff's damages, whether as an agent, employee, partner, joint venturer, assignee, successor, or alter ego to Defendant or in some other capacity.  Plaintiff will amend this complaint to allege the true names of the fictitiously named defendants when the same are ascertained.

13.     On information and belief, each of the Defendants was the agent, principal, employee, representative, or alter ego of the other Defendants and/or acted with one or more of the other Defendants' knowledge, consent and approval, and acted within the course and scope of his agency or representative capacity. As such, each of the Defendants is responsible for the actions of the other Defendants, as alleged herein.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ 1331, 1337, and 1338 because the suit arises under the unfair competition, false advertising, and trade dress laws of the United States, including 15 U.S.C. § 1125, the trade secrets laws of the United States , the anti-trust and

restraint of trade laws of the United States, and the copyright laws of the United States, 17 U.S.C. § 101 *et seq.,* and pendant jurisdiction of any and all state causes of action under 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over each of the Defendants because, inter alia, on information and belief, each Defendant transacts business in the Central District of California, including in Orange County.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and otherwise because a substantial part of the events or omissions giving rise to these claims for  unfair competition, false advertising, theft of trade secrets, trade dress infringement, anti-trust and restraint of trade, copyright infringement, and related state claims, occurred in this judicial district, including in Orange County.

17.     On information and belief,  each of the Defendants has advertised, sold, and/or distributed the services and products complained of in this Complaint in this judicial district, and engaged in the wrongful acts alleged herein in this judicial district, including in Orange County.

## FACTS
## PLAINTIFF'S ACTIVITIES

18.    Plaintiff VBS Distribution manufactures, markets, and distributes numerous dietary supplement type products primarily aimed at the Vietnamese marketplace, particularly including a joint supplement product under the name JN-7 Best.

*19.*    Plaintiff VBS Television is a television broadcast company primarily aimed at the Vietnamese community and is broadcast primarily in the Vietnamese language.  Its services include television entertainment, news, and auction services, and its products advertised and sold through its television network include dietary supplements and jewelry, particularly diamonds. VBS Television is believed to be the most widely viewed Vietnamese television network in the United States.

20.     Both VBS Distribution and VBS Television have the same Chief Executive Officer (CEO) and Chairman, Joseph C. Nguyen (hereinafter "Joseph"), and are closely related corporations, with various licenses and agreements between them, and have their offices at the same address.

21.     As discussed below, the Defendants are direct competitors of Plaintiffs in both of the above described marketplaces, and are the primary competitors of Plaintiffs in these marketplaces, particularly the Vietnamese consumers for such products and services in Orange County and elsewhere in the United States.

### The Copyrighted Show and Plaintiffs' Trade Dress

22.     During 2011, Joseph C. Nguyen ("hereinafter referred to as "Joseph"), on behalf of VBS Distribution, created a commercial television show entitled "DAU GIA TREN TRUYEN HINH" (which in English means "Fight Price on Television"). "DAU GIA TREN TRUYEN HINH" shall hereinafter be referred to as the "Show". The Show is a live auction program, with unique identifying characteristics, which primarily auctions jewelry, particularly diamonds. Some of these unique characteristics include the following: a) the unique style and format of the show, b) its time slot and date selection, each week on alternate weekdays, from 5 to 7 p.m., on Tuesdays and Thursdays,  c) the price range for its auctioned items, ranging from about $ 300 to $ 3000,  d) its "least to most expensive" format in which the least expensive items are sold first, ascending to the most expensive items at the end of the show, e) the length of the show, 2 hours, f) its focus on live TV auctions of jewelry, particularly diamonds, g) its carefully selected vendors, who appear on the show with the show's host, h) unique and proprietary camera angle and special lighting techniques developed by Plaintiffs using an Apple Ipad tablet, i) the number and selection of items sold, usually about 30 items [hereinafter "the Show trade dress" or "the trade dress"].

23.    VBS Distribution is the owner of a registered service mark for the Show issued by the United States Patent and Trademark Office, Registration Number 4,440,695, registered on November 26, 2013, a copy of which is attached hereto as **Exhibit 1**, for the mark Fight Price on Television for auction services. This mark has been licensed to VBS Television. Although the Show defendants have used a somewhat similar mark and title for their Infringing show, this Complaint does _not_ assert any separate trademark claims based on such registrations, due to the differences between the titles of the Show and the Infringing Show.

24.    VBS Distribution and Joseph are the owners, and VBS Television the exclusive licensee, of a registered copyright for the Show issued by the United States Copyright office, Registration Number PA1-921-488, on November 13, 2014, a copy of which is attached hereto as **Exhibit 2.** Defendants Tram is shown as the author of "Performer" on the certificate of registration, and Joseph is shown as the author of "text,  tv show."  The date of first publication of the Show is listed as September 5, 2011. The file history of the copyright registration and a copy of the actual deposited work (on a CD or DVD) have been requested by Plaintiff on an expedited basis, but Plaintiff has been informed they will not be received for up to about 2 months. Plaintiffs' copyright claims in this lawsuit are subject to the receipt and review, with any necessary translations, of the deposited work and the file history of the copyright registration, by Plaintiffs and their non-Vietnamese counsel, and their subsequent comparison to the Infringing Show (defined below), and such copyright infringement claims may be supplemented, or withdrawn, based upon such activities after the foregoing are received and compared, although it is believed, upon information and belief, that the Plaintiffs show and the Defendants' show are substantially similar in their protected and copyrightable content and elements, and strikingly similar. Subsequent episodes of the Show are

protected under U.S. copyright law, whether or not the copyright therein has been registered yet, and Plaintiffs reserve the right to amend this Complaint to add other specific copyright registrations for such subsequent episodes of the Show upon their issuance, and to allege infringement of such additional episodes subject to discovery of the infringing Show's episodes, upon such applications being filed or registrations being issued.

25.    The Show's trade dress, as defined above, symbolizes the business goodwill of Plaintiffs, and is an intangible asset of substantial commercial value.

26.    One of the Plaintiff's primary goals has been to build up a strong trade dress that its customers can and will associate with Plaintiff and its innovative format for the Show, its quality products and its stellar customer service.

27.    As a result of Plaintiffs' long usage and extensive advertising and marketing of its trade dress, the consuming public and Plaintiffs' vendors and others, have come to recognize the Show's trade dress in the field of television auctioning of jewelry products to the Vietnamese community in Orange County and elsewhere, as symbolizing Plaintiffs' and their reputation as the source of the Show and Plaintiffs' services and goods.

28.    Since at least 2011, long prior to the acts of the Defendants herein alleged, Plaintiffs  have used their distinctive and unique trade dress alone in connection with the promotion, marketing and advertising of each of its products and services for sale on the Show in the United States, including this District.. More specifically, Plaintiff first began using the trade dress in approximately 2011 in Orange County in interstate commerce.

29.    Sales, advertising and promotion of Plaintiffs' products and services which use their unique and distinctive, and non-functional, trade dress, since inception have been substantial in Plaintiff's niche marketplace.

30.    As a result of such continuous use and extensive sales, advertising and promotion, of the Show and the trade dress by Plaintiffs, their products and services associated with them enjoy recognition and notoriety in the United States in Plaintiffs' niche market place, and are recognized by the consuming public as emanating from Plaintiffs.

<u>**Plaintiff's Confidential Information and Trade Secrets**</u>

31.    The Plaintiffs own and possess unique and confidential lists of customers' names, addresses, and other contact information which are vital, necessary and critical to the success and profitability of the Show.  If a competitor to the Show possessed such information, the very existence and profitability of the Show could be in jeopardy. The specific vendor contacts of Plaintiffs and their contact information, are also confidential information of Plaintiffs. Such lists and information constitute protectable trade secrets of Plaintiffs, together with the other confidential information described below.

**<u>DEFENDANT'S WRONGFUL ACTIVITIES</u>**

**<u>Wrongful Activities of Nutrivita, US Doctor's Clinical and Robinson Pharma</u>**

32.    In the Vietnamese dietary supplement Defendants' advertising, marketing, and promotion of their directly competing joint supplement product, Artho-7, they claim that said product is composed of 100% herbal ingredients while their supplement facts state that one of the ingredients is collagen from chicken and their capsule is made of gelatin which is derived from cows or pigs. Their materials state: "100 % natural" which would be construed and understood by the Vietnamese customers for such products as meaning not containing any animal products. They also state in their advertising and promotional materials: "100% natural herbal"

which would also mean no animal products. One of the Vietnamese dietary supplement Defendants' advertisements for their Artho-7, a copy of which is attached hereto as **Exhibit 3**, states for example that their Arthro7 product is: "100% tu duoc thao thien nhien." (symbols omitted). The English translation of those words is as follows: "tu" means "from." "duoc thao equals "medical herbal." "Thien nhien" equals "natural."  This particular advertisement appeared in a Vietnamese newspaper, Nguaoi Viet, probably the largest in the country, in 2013. [There is no hypen or "-" before the 7 in this advertisement, although Defendant Nutrivita Labs claimed in the first lawsuit that its trademark was confusingly similar to that of Plaintiff VBS Distribution because they both allegedly contained a "-7"].

33.    If the Vietnamese customers, particularly those who are Buddhists, knew the true facts, they would be unlikely to purchase said Defendants' products, which would be contrary to their religious and cultural beliefs. Accordingly, these claims are false and misleading, about material facts, including to the Vietnamese customers to which both Plaintiffs and the Vietnamese dietary supplement Defendants' products are largely marketed. This same language and claims have appeared on other brochures, and advertisements, including newspaper advertisements, for said Defendants' products, and continue to do so currently. A copy of several more representative examples of said Defendants' promotional materials and advertisements, also showing the packaging, including boxes, for the Arthro7 products, are attached hereto respectively as **Exhibits 4 and 5**, and these also contain the same and similar claims, as well as the claims set forth below, about said Defendants' products.

34.    Each recent box, and various advertisements and promotional materials, for Artho-7, claims that over 8 million bottles (or more) of said product have been sold, whereas pursuant to discovery during the first lawsuit (described below) between Plaintiff VBS Distribution and Defendant Nutrivita Laboratories

and Joseph, the Defendants admitted they had  sold only 89,896 bottles or less from 2009 – 2015, and further admitted that they do not know of any basis for the claim of 8 million units or bottles being sold. Next to the statement (see, for example, the box shown on the first page of Exhibit 4): "Over 8 Million Bottles Sold!", appears NUTRIVITA®, which, and in conjunction with other materials, implies and creates the false impression that Defendant Nutrivita has sold over 8 million bottles of these products, when in fact it has not. These statements and claims are false and misleading concerning material facts which would and could significantly affect the consumers' decision to purchase Defendants' products rather than those of their direct competitor, Plaintiff VBS Distribution, and have caused and will continue to cause significant injury and damage to Plaintiffs, and have resulted in many millions of dollars in profits to said Defendants, which would not occurred but for the false and misleading advertising and claims made.

35.    Advertisements and marketing and promotional marketing materials for the Artho-7 product include a strong endorsement from Dr. John Hahn, but do not disclose that he has been paid, or is being paid, for his endorsement although previously Defendants did disclose such payments, which is a material fact to potential purchasers. Dr. Hahn also apparently was paid to write a long article to praise the Artho7 products but those facts are also not disclosed.

36.    In fact, the Vietnamese dietary supplement Defendants' products, brochures, promotional materials, and advertisements, create the impression that Dr. Hahn is a medical doctor (see, for example, Exhibit 3), but in fact he is not. In Exhibit 5, for example, it states, underneath a picture of Dr. John E. Hahn, wearing a traditional white medical doctor's coat with a white shirt and dark tie, "Board certified foot surgeon." There he states: "I've recommended this product for over 10 years in my clinical practice…. Positive results utilizing Arthro-7 have been supported by a UCLA researcher."  Beneath the trademark, it says in large letters

"Clinically Tested Formula."

37.    On some of the boxes in which said Defendants' Arthro-7 products are sold, above the quote attributed to Dr. Hahn, it also states in large letters in a set off red color: "Doctor Recommended." On some boxes for the products, there is no indication that "Dr. Hahn" is a "DPM, N.D."  On information and belief,  it is or was stated that he is a medical doctor on some boxes and materials.. When DPM or ND is indicated, it is in small print which would be overlooked by the average potential consumer, who are misled by the emphasis on doctors.

38.    On some of the Defendants' boxes for their Arthro-7 products, particularly the ones sold with "U.S. Doctor's Clinical®" in large letters at the top on all four sides of the box, the side panel also is about half-filled with a group of "doctors" appearing under the large heading, "Advisory Board Doctors."

39.     The overall result is that many, if not most, potential consumers and consumers for said Defendants' Arthro-7 products, are deceived or misled into believing that an independent, neutral medical doctor, rather than a paid non-medical doctor, is essentially certifying that Defendants' products are highly effective as supported by medical research, which is not true, and but for such deception, they would not purchase Defendants' products, which compete directly with Plaintiffs' JN-7 Best products.

40.    Upon information and belief, said Defendants' products, packaging, promotional materials, and advertisements, contain other false and misleading statements, as will be shown during discovery in this lawsuit. Said broader discovery into Defendants' claims in their packaging, promotional materials, and advertising, was not undertaken in the first lawsuit which had a limited scope and nature related only to the alleged infringement of Defendants' purported copyright on their packaging and the trademark and trade dress of same.

41.    Upon information and belief, and based on Defendants' previous

admissions and materials disclosed in discovery in the first lawsuit, Dr. John Hahn has in fact been paid, and substantially so, by the Defendants for his endorsement of the Artho7 products, although potential purchasers are not aware of that fact, and have been misled into believing that Dr. Hahn is a neutral and independent treating or prescribing doctor recommending such products, rather than someone being paid to do so.

42.     Some of the said Defendants' Arthro-7 products state that the product is "Distributed by: U.S. Doctor's Clinicial® 15568 Brookhust St., Suite 374, Westminister, CA 92683 with an 800 phone number and web site." However, upon information and belief, there may be no such company or operational entity, and if so, this statement is also false and misleading, as potential consumers are likely to be misled and deceived into thinking that this fictitious entity is the distributor of these products.

43.     These statements and claims are false and misleading as to material facts which would and could significantly affect the consumers' decision to purchase Defendants' products rather than those of their direct competitor, Plaintiffs, and have caused and will continue to cause, injury and damage to Plaintiffs.

44.     Other wrongful acts of these Defendants, all part of their overall pattern of unfair competition, are alleged below, including, as one example only, the filing and maintenance of the first lawsuit.

### Wrongful activities of KVLA, Tram Ho, Tuong Nguyen, and Jenny Do
### Defendant Tram Ho

45.     On or about April 19, 2012, Tram Ho sought employment with VBS Television.

46.     Although Tram Ho had no prior experience with respect to auctions or

the sale of jewelry, she was hired to be the co-host for the Show, and VBS Television then trained her in that capacity and taught her how to conduct the Show, including numerous proprietary and trade secrets related to the Show.

47.     Pursuant to her hiring, she signed an independent contractor agreement which among other requirements, required Tram Ho to retain the confidentiality of, and not disclose, information including, but not limited to customer lists, questionnaires, pricing guidelines, concepts, procedures, explanations and writings obtained or used by VBS Television. No breach of contract claim of any type is asserted in this Complaint against Defendant Tram Ho, and any such breach of claims are expressly disavowed in this lawsuit, and are being pursued, if at all, separately in arbitration based  upon Tram Ho's labor claims for allegedly unpaid commissions, which are disputed as without merit.

48.     During the subsequent four years, Tram Ho's independent contractor agreement was converted to an employment agreement and renewed on substantially similar terms.

49.     Sometime during 2015, Tram Ho's employment performance was so poor the VBS Television considered terminating her employment agreement, but instead renegotiated with her in an effort to salvage the situation.

### The Infringing Show

50.     To the great surprise of the Plaintiffs, during the spring of 2016, they saw Tram Ho advertising on KVLA, the rival television station to VBS Television. She was advertising a new television show entitled "Diamond at a Surprise Low Price" (hereinafter the "Infringing Show"). At that time, Tram Ho was still an employee of VBS Television and under contract with VBS Television to co-host the Show, which employment was, upon information and belief, known at that time to the Show Defendants.

51.     Upon information and belief, the Infringing Show first began to

VBS' Complaint for Unfair Competition - 15

broadcast on or about June 1, 2016 on KVLA.

52.     KVLA produces and televises the Infringing Show, and, upon information and belief, deliberately induced, together and in conspiracy with the other Show Defendants both Tram Ho, and other employees of VBS Television, to breach their contracts with VBS Television and to instead start to work for KVLA, and to produce and appear in the Infringing Show, and to bring proprietary and confidential information, and trade secrets, of VBS Television, to the Infringing Show and to KVLA.

53.     The Infringing Show is essentially a complete copy of the Show and is intended to cause confusion to Vietnamese and other viewers so that they are likely to believe that they are watching the Show, or that there is some affiliation, relationship, license, endorsement, or sponsorship between the Infringing Show and the Show.

54.     Among the areas of duplicity are the following: same hostess, same vendors (some), same unique style as provided by the same technician, same time slot of 5:00pm – 7:00 pm, but on Mondays, Wednesdays and Friday, whereas the Show is on Tuesdays and Thursdays, the least to most expensive format, the auctioning of approximately 30 items each show, the content is virtually identical, and the price range of products is virtually identical ($300 - $3,000), as are various other features of the Infringing Show, which copies the Show closely, infringes on Plaintiffs' copyright registration on the Show, and infringes on the Show's trade dress.

55.     Since June 1, 2016, some of VBS Television's customers and vendors have complained to the Plaintiffs about the copying by KVLA of the Show, and there have been instances of actual confusion between the parties and their respective businesses, products, and services.

56.     In direct violation of her contract with the Plaintiffs, Tram Ho took and

used the customer lists and data bases and other confidential information and trade secrets of VBS Television, and did not return such lists, data bases, or other trade secrets to VBS Television as required by her employment agreement.

57.     One or more of the employees of VBS Television witnessed Tram Ho surreptitiously photocopying the customer lists and/or data base.

58.     On information and belief, Defendants were fully aware, prior to their activities complained of herein, of Plaintiffs and their products, services and marketing activities, and their success and reputation in the foregoing niche Vietnamese marketplace.

59.     Upon information and belief, there have been recent instances of actual confusion in the marketplace, in which customers or potential customers have contacted Plaintiffs,  although it was apparently the Defendants they intended to contact, and vice versa.

60.     On information and belief, there is also actual confusion occurring at Defendants' place of business, as to the parties' respective products and services, businesses, and whether there is any affiliation, license, sponsorship, or endorsement between them.

61.     Throughout the history of their pattern of copying and unfair competition and infringing upon Plaintiffs' rights, Defendants have made little if any effort to differentiate their show or trade dress in the marketplace from Plaintiff's show and trade dress, but instead have demonstrated their intent to confuse customers and potential customers and others in the marketplace into thinking that Defendants are the Plaintiffs or affiliated in some way with them..

62.     Defendants use a confusingly similar trade dress and will continue to do so until and unless enjoined by this Court.

63.     Defendants' concurrent usage of the Infringing Show and the Infringing Trade Dress in the same marketplace for the same business and services,

is likely to cause confusion as to the source of the services or the businesses. or an affiliation, license, sponsorship, or endorsement between Plaintiffs and their business and services, and Defendants' business and services.

64.   Numerous factors and evidence also indicate that Defendants have intentionally adopted and are using a confusingly similar trade name and service mark for the purpose of causing confusion and trading on Plaintiffs' prior usage, rights, and reputation and goodwill.   Because Defendants are in the same geographical area as the Plaintiff and in the same industry, and even hired away some of Plaintiffs' key employees before starting their directly, but unfairly, competing show, it is virtually certain that Defendants were aware of Plaintiff's prior use and rights when they began to use a confusingly show and trade dress  in the same area. For example, Defendants' have even located their TV station and offices in the same small complex of office buildings in which Plaintiffs were already located, probably a few hundred yards away at most.

65.   Defendants' use of the Infringing Show and trade dress constitutes an infringement of Plaintiff's common law and statutory rights under Federal law, including but not limited to Section 43(a) of the Lanham Act, and under California law, unfair competition, and false advertising, and appears to be a deliberate infringement of Plaintiff's rights.

66.   Plaintiffs have demanded that Defendants stop the wrongful activities complained of herein.   This demand was in an effort to avoid litigation, and Defendants were advised that a lawsuit would be filed if Defendants failed to stop such wrongful activities, and Plaintiffs made a public announcement on their television network that they would be filing a lawsuit based on Defendants' activities if they did not stop.

67.    It seems apparent that Defendants intend to, and will, continue all of their wrongful activities until and unless enjoined by this Court. While Plaintiffs

have complained to Defendants of their unfair, infringing, and illegal activities, and issued public warning notices to them, Defendants have failed, and/or refused, to stop their wrongful activities.

### The First Lawsuit as A Part of Defendants' Ongoing Pattern of Unfair Competition and Anti-Competitive Conduct

68.   On October 18, 2013, Nutrivita filed a lawsuit against VBS Distribution ("the first lawsuit"), pleading no less than 13 separate counts of action, virtually throwing in the entire "kitchen sink" of allegations and claims.

69.   The Complaint in said lawsuit alleged numerous violations of California and federal law in connection with the manufacture and marketing of the JN 7 Best joint supplement product, which Nutrivita claimed was a copy of their product's packaging, and falsely claimed that such material was copyrighted, and that VBS Distribution's trademark, JN-7 Best, was somehow infringing on the Vietnamese supplement Defendants' trademark Arthro-7.

70.   Nutrivita made a litany of allegations,  the majority of which were untrue and without merit, and made, upon information and belief, solely or primarily for the purpose of precluding competition, and harassing, or driving out of the small niche marketplace, the Vietnamese dietary supplement Defendants' largest, and new, competitor, VBS Distribution. In fact, said defendants sent a "cease and desist" letter giving **a per se unreasonable period of three days to VBS Distribution to stop selling its competing products completely.** Nutrivita did not merely demand that VBS change its packaging or label, but insisted that VBS Distribution, its largest competitor, which had just entered into this niche marketplace, **completely stop selling the competing product at all, under any name or in any packaging**. This demand letter was not only highly anti-competitive and the essence of unfair competition, but also illustrated the Vietnamese dietary supplement defendants' bad faith and ulterior purpose in

pursuing litigation.

71.   Although almost none of the claims of violations were true, and Nutrivita knew this to be the case, Nutrivita nonetheless filed its largely frivolous and baseless lawsuit, conducted burdensome discovery, subjected VBS Distribution to great expense,  publicly promoted and publicized, including on its web site, the first lawsuit, and attempted to destroy the business and reputation of the Plaintiffs, Nutrivita was advised repeatedly by the Plaintiff's attorney that the case was without merit, and the reasons for same, from the very start of the lawsuit, yet pursued the first lawsuit for more than two years, past the close of discovery, and up through the eve of trial, requiring Plaintiff VBS Distribution and Joseph to incur the expense and labor of preparing their pretrial materials and commencing their trial preparation.

72.   On or about December 23, 2015, Nutrivita finally stipulated to a dismissal of the entire case with prejudice. The trial court determined that VBS Distribution and Joseph were the prevailing party, although, on a very incomplete and factually disputed record, declined to award attorneys' fees to VBS Distribution and Joseph. The latter ruling is currently on appeal to the Ninth Circuit, and is not, therefore, at least until the Ninth Circuit rules, res judicata or law of the case in any way as to whether Defendants instituted or continued the first lawsuit in bad faith, or for an anti-competitive or ulterior purpose, particularly the copyright claims, the trademark claims, and the federal dilution claims, and the related state claims based upon such claims.

73.   In addition, Plaintiffs believe that the Court may on its own choose to modify its views of whether Nutrivita filed its suit in bad faith (regardless of the results of the pending appeal) based on additional facts in this lawsuit, and those facts and evidence not part of the record in the first lawsuit. These will be made available during this lawsuit, and  are also expected to be obtained during discovery

in the present case. Discovery was never completed even as to the more limited issues in the first lawsuit.  In large part this was because the Defendant Nutrivita Labs refused to complete discovery, including even the corporate and individual depositions. They also failed to provide the documents requested during discovery, before they ultimately, due to the weakness of their case, dismissed their entire lawsuit with prejudice.

74.   The dismissal was **not** based on any settlement agreement as none was ever reached. Defendants also falsely claimed in the first lawsuit that VBS Distribution had made changes in their packaging or trademarks only after, and as a result of, the lawsuit being filed. But those claims were not true, as all the changes had been made before the lawsuit was filed. As a factual matter, Plaintiff VBS Distribution made no further changes after the lawsuit was filed or as a result of the lawsuit being filed. Indeed, although Defendants are legally precluded from refiling their claims by virtue of their dismissal with prejudice, Plaintiffs are not in any way precluded, if they so wished, from selling the same packaging on which they were sued, at the present time. But during the day or so that VBS Distribution had to act, and without the benefit of legal representation, Plaintiff VBS Distribution elected to change their packaging even prior to the lawsuit being filed, as Defendants Nutrivita and Tuong were notified before the suit was even filed.

75.   Nor did VBS continue to make the labels for the bottles, even without the packaging, but simply sold off the small quantity of the labeled bottles while the new packaging and labels were being made. Defendant Nutrivita falsely represented in their demand letter that they wanted the cooperation of VBS Distribution to avoid filing a lawsuit, and looked forward to hearing back from VBS in response to the demand.

76.   However, when VBS responded immediately, and changed their packaging --but indicated their intent to sell the remaining bottles, before the new

packaging was ready, --Defendants Nutrivita and Tuong did not respond further in any way. They did not indicate that selling the bottles with the same labels but not any boxes, until the new packaging was ready, was still  objection, even though VBS indicated any further issues would be up to their lawyers. Defendants said nothing further, made no contact, requested no other changes. They simply filed suit a few days after the letter from VBS.

77.    That lawsuit, on information and belief, had already been prepared before receiving any response from VBS. On information and belief, Defendants Nutrivita and Tuong intended to file no matter what response VBS made or what it did. Because, on information and belief, Nutrivita and Tuong's plan, from the beginning, as further demonstrated by their actions alleged in this lawsuit, was to take all steps necessary to preclude VBS from competing with them in the marketplace.

78.    Had said Defendants truly wanted any further changes made, such as the bottles' labels, they could and should have contacted VBS Distribution before filing suit, as their demand indicated was their alleged intent, to obtain cooperation and avoid litigation.  If they had, VBS would have agreed to remove the labels, and wait for the new labels and packaging before selling the very small remaining inventory, about 1000 or so bottles. But Defendants' true intent and motivation for filing the suit, and maintaining it for two years through the eve of trial, were not any valid concerns about intellectual property rights. Instead, their true intent in their demand letter, upon information and belief and subject to discovery, was to stop VBS Distribution from selling a competing product at all.

79.    Nor is there any reasonable basis to believe that it took Defendants Nutrivita and Tuong two years—and that therefore they did not dismiss their lawsuit for two years-- to learn that VBS Distribution had long ago sold off the small inventory of bottles with the old labels and changed to a new package and label

about which these Defendants could not, and did not, complain.

80.    Depending upon the Ninth Circuit's ruling on these issues, and upon the evidence developed in this case, Plaintiffs reserve the right to withdraw this portion of the new lawsuit which relies upon the filing and maintenance of the first lawsuit. That is only a part of the pattern of unfair competition by the Defendants, and is not necessary to prove the other allegations in this Complaint.

### **Plaintiffs' Damages**

81.    Upon information and belief, as a direct and proximate result of Defendant's activities, Plaintiffs have suffered actual damages in an amount yet to be determined, including but not limited to damages to Plaintiff's reputation, loss of good will, lost sales and revenues, diminution in the value of Plaintiff's business, and lost sales of Plaintiff's related products as a result of Defendants' infringing activities, and subject to proof at trial and future retention of expert witnesses regarding such damages and other damages set forth in this complaint.

82.    Upon information and belief, as a direct and proximate result of Defendants' activities, Plaintiffs will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined, but believed to be in excess of three million dollars, $3,000,000.

83.    Upon information and belief, as a direct and proximate result of Defendants' activities, Defendants have made gross sales (and profits thereon) from its wrongful activities as alleged herein, which belong in equity and should be turned over to Plaintiffs, both as unjust enrichment from Defendants' wrongful acts, and/or as a measure of Plaintiffs' damages.

84.    Plaintiff believes, based on such items as feedback from its customers, that it has many repeat customers for its products and services.  That is, customers who purchase its products are also likely to purchase other products

in the future from Plaintiffs. Similarly, customers who purchased Defendants'
products which used the trade dress, perhaps in the belief that they were Plaintiffs'
products, are likely to purchase other of defendants' products.  As such, Plaintiffs
have lost sales as a direct result of defendants' infringement, because Defendants'
customers are likely to purchase other of Defendants' products.  Accordingly,
Plaintiffs have additional lost sales as a direct result of Defendants' infringement.
Not only would Defendants generate such additional sales of their other products,
making additional profits due to the initial infringement, but Plaintiffs would also
lose sales of other products it would otherwise have sold the same customer but
for the initial infringing sale.  Each sale of a product by Defendants creates a lost
sale for Plaintiffs for their products and services, and there is a multiplier effect
from each such lost sale for the reasons stated.

85.    As a direct and proximate result of Defendants' activities, Plaintiffs
have been forced to hire attorneys to defend and enforce its rights and to bring the
present lawsuit, and to incur costs to prosecute this lawsuit, and has obligated itself
to pay attorneys' fees and litigation costs to pursue this lawsuit against Defendants.

86.    Upon information and belief, and subject to discovery and testimony,
the foregoing damages will exceed twenty million dollars, $ 20,000,000.

87.    Defendants' acts have caused and will continue to cause irreparable
harm to Plaintiff unless restrained by this Court.  Plaintiffs have no adequate remedy
at law. Accordingly, Plaintiffs are entitled to an order enjoining and restraining
Defendants, during the pendency of this action and permanently thereafter, from
manufacturing, distributing, importing, exporting, marketing, offering for sale or
selling the infringing products or services, producing or airing the Infringing Show,
continuing to unfairly compete with Plaintiffs, continuing to falsely advertise their
products or services, continuing to use Plaintiffs' trade secrets, or to engage in
restraint of trade or other anti-monopoly violations,  or otherwise engage in the

wrongful acts complained of herein.

## CLAIMS FOR RELIEF

### Count 1 – As to All Defendants

### (Unfair Competition under the Lanham Act)

88.    Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 87 of the Complaint as though fully set forth herein.

89.    Defendants' above described actions and wrongful activities constitute unfair competition with Plaintiffs, and an ongoing pattern of unfair competition, all to the damage of Plaintiffs as alleged herein.

90.    Defendants' wrongful use of the infringing show and trade dress falsely indicates to consumers that Defendant's products and services originate from, are approved by, are sponsored by, are licensed by, or are affiliated with Plaintiffs or are otherwise associated with their services or products.

91.    Defendants' wrongful use of the Infringing Show and trade dress in the manner described above is likely to cause and has in fact caused confusion, is likely to cause and in fact has caused mistake, and/or is likely to deceive and has in fact deceived customers and potential customers of the parties by suggesting some affiliation, connection, or association of Defendant with Plaintiff.

92.    Defendants' actions, as set forth above, constitute trademark infringement of a non-federally registered trade dress, and constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, all to the damage of Plaintiffs as described herein and previously alleged.

### Count 2 – As To All Defendants

### (False Advertising Under the Lanham Act)

93.    Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 92 of the Complaint as though fully set forth herein.

94.    Defendants' actions, as set forth above, constitute false and deceptive

advertising in violation of the Lanham Act, 15 U.S.C. § 1125, all to the damage of Plaintiffs as described herein.

## Count 3- As to All Defendants

### (Unfair Competition, False Advertising, and Unfair and Deceptive Trade Practices - California Common Law)

95.     Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 94 of the Complaint as though fully set forth herein.

96.     Defendants' acts, as set forth above, constitute unfair competition and false advertising under the common law of the State of California, all to the damage of Plaintiffs as previously alleged.

## Count 4 – As to All Defendants

### (Unfair Competition, False Advertising, and Unfair and Deceptive Trade Practices - California Business and Professions Code)

97.     Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 96 of the Complaint as though fully set forth herein.

98.     Defendants' acts, as set forth above, constitute unfair competition  and false advertising, and unfair and deceptive trade practices, as defined in California Business and Professions Code §§ 17200-17210, and §17500 et seq., all to the damage of Plaintiffsas previously alleged.

## Count 5 – As to the Show Defendants

### (Theft of Trade Secrets under Federal Law)

99.     Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 98 of the Complaint as though fully set forth herein.

100.    Defendants' above described actions and wrongful activities constitute theft of Plaintiffs' trade secrets under the new federal trade secrets law, all to the damage of Plaintiffs as alleged herein.

## Count 6 – As to the Show Defendants
### (Theft of Trade Secrets under California Law)

101.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 100 of the Complaint as though fully set forth herein.

102.   Defendants' above described actions and wrongful activities constitute theft of Plaintiffs' trade secrets under California law, all to the damage of Plaintiffs as alleged herein.

## Count 7 – As to The Show Defendants
### (Copyright Infringement under Federal Copyright Law)

103.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 102 of the Complaint as though fully set forth herein.

104.   The Show, including the original version and subsequent episodes, is an original work that may be copyrighted under U.S. law under 17 U.S.C. § 101 *et seq.*,, and Plaintiffs have registered the copyrighted work as alleged previously.

105.   Plaintiffs are the sole owners of the copyrighted work and the exclusive licensees of the work, and are in compliance with the copyright laws.

106.   Defendants' use of the copyrighted work is without any license or permission from Plaintiffs.

107.   Defendants' above described actions and wrongful activities constitute copyright infringement under 17 U.S.C. § 501 *et seq.*, all to the damage of Plaintiffs as alleged herein.

## Count 8 – As to the Show Defendants
### (Trade Dress Infringement under Federal Law)

108.   Plaintiffs repeat and incorporate by reference the statements and

allegations in paragraphs 1 to 107 of the Complaint as though fully set forth herein.

109.   Defendants' above described actions and wrongful activities constitute infringement of Plaintiffs' trade dress in the Show, in violation of the Lanham Act, 15 U.S.C. § 1125,   all to the damage of Plaintiffs as alleged herein.

### Count 9 –As to the Show Defendants

### (Trade Dress Infringement under California Law)

110.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 109 of the Complaint as though fully set forth herein.

111.   Defendants' above described actions and wrongful activities constitute infringement of Plaintiffs' trade dress in the Show, in violation of California statutory and common law,   all to the damage of Plaintiffs as alleged herein.

### Count 10 –As to the Vietnamese Dietary Supplement Defendants

### (Anti-Trust and Restraint of Trade under Federal Law)

112.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 111 of the Complaint as though fully set forth herein.

113.   Defendants' above described actions and wrongful activities constitute anti-trust violations and restraint of trade, in violation of federal law, all to the damage of Plaintiffs as alleged herein.

### Count 11 –As to the Vietnamese Dietary Supplement Defendants

### (Anti-Trust and Restraint of Trade under California Law)

114.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 113 of the Complaint as though fully set forth herein.

115.   Defendants' above described actions and wrongful activities constitute anti-trust violations and restraint of trade, in violation of California law, all to the damage of Plaintiffs as alleged herein.

## Count 12 –As to the Show Defendants
### (Interference with Contractual Relationships under California Law)

116.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 115 of the Complaint as though fully set forth herein.

117.   Defendants' above described actions and wrongful activities constitute intentional interference with contractual relationships of Plaintiffs with its vendors and its employees, in violation of California law, all to the damage of Plaintiffs as alleged herein.

## Count 13 –As to the Show Defendants
### (Interference with Advantageous Business Relationships under California Law)

118.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 117 of the Complaint as though fully set forth herein.

119.   Defendants' above described actions and wrongful activities constitute intentional interference with advantageous business relationships of Plaintiffs, including its vendors for the Show and its relationships with its employees, in violation of California law, all to the damage of Plaintiffs as alleged herein.

## Count 14 –As to All Defendants
### (Civil Conspiracy under California Law)

120.   Plaintiffs repeat and incorporate by reference the statements and

allegations in paragraphs 1 to 119 of the Complaint as though fully set forth herein.

121.   Defendants' above described actions and wrongful activities constitute a civil conspiracy to commit the other torts and illegal activities alleged herein, or some of them, in violation of California law, all to the damage of Plaintiffs as alleged herein.

## Count 15 –As to Defendant Tram Ho

### (Breach of Fiduciary Duties under California Law)

122.   Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 121 of the Complaint as though fully set forth herein.

123.   Defendant's above described actions and wrongful activities constitute a violation of her fiduciary duty to Plaintiffs, including her fiduciary duty as an employee, independent contractor for Plaintiffs, and as co-host of the Show, in violation of California law, all to the damage of Plaintiffs as alleged herein.

## INJUNCTIVE RELIEF

1.   Plaintiffs seeks to enjoin, preliminarily and permanently, Defendants and their agents and representatives from each and every one of the wrongful activities alleged herein, including but not limited to falsely advertising, unfair competing, stealing or misappropriating Plaintiffs' trade secrets, using Plaintiffs' trade dress, or copying its products or services, or infringing on or using Plaintiffs' Show, or any other wrongful activities of the type alleged herein during the pendency of this action.

2.   There is a substantial likelihood that Plaintiffs will prevail on the merits, and Plaintiffs have raised serious issues as their claims, and the balance of hardships tips decidedly in their favor.

3.      If the court does not grant a preliminary injunction, Defendants will continue their wrongful activities complained of herein.

4.      Plaintiffs will suffer irreparable injury if the court does not enjoin Defendants from the wrongful activities described herein.

5.      Defendants will not suffer undue hardship or loss as a result of the issuance of a preliminary injunction.

6.      Issuance of a preliminary injunction would not adversely affect the public interest.  In fact, the public will be benefited by the entry of a preliminary injunction.

7.      Plaintiffs ask this Court to set this request for preliminary injunction for hearing at the earliest possible time and, after hearing the request, issue a preliminary injunction against Defendants, and a temporary restraining order.

## **DAMAGES**

8.      Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 to 123 of the Complaint as though fully set forth herein.

9.      As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer until Defendants are enjoined, the following damages, and those alleged above and below:

A.      Actual damages, including but not limited to loss of sales, and reputation damages, in an amount to be determined at trial and after discovery and testimony, but believed to be in amount of not less than twenty million dollars, $20,000,000.

B.      Enhanced damages for willful infringement, including up to three times Plaintiffs' actual damages (treble damages).

C.      Defendants' sales and profits as a measure of Plaintiffs' damages, in an amount to be determined at trial and after discovery and testimony, but believed to be in amount of not less than twenty million

dollars, $20,000,000.

10.     Upon information and belief, Defendants knew that its unauthorized use of the trade dress, the Infringing Show, and the false advertising and unfair competition as to their directly competing products, would result in an undue benefit to Defendants.

11.     Defendants' unauthorized and confusingly similar use of the Plaintiffs' intellectual property, and their unfair competition, false advertising, and other wrongful acts, unjustly enriches Defendants at the expense of Plaintiffs' reputation and goodwill, in an amount to be determined at trial and subject to discovery and testimony, but believed to be in amount of not less than twenty million dollars, $20,000,000.

*12.*     The cost of a corrective advertising campaign in an amount to be determined at trial and subject to discovery and testimony, but believes to be in amount not less than three million dollars, $ 3,000,000.

## ATTORNEY FEES

13.     This is an exceptional case, and one of  willful, deliberate, or intentional infringement, such that Plaintiffs are entitled to an award of attorney fees under the Lanham Act, the federal copyright laws,  15 U.S.C. § 1117(a), and other relevant federal and California statutory law, which, through trial, are expected to exceed one million dollars, $1,000,000.

## PUNITIVE DAMAGES

14.     Plaintiffs are entitled to punitive damages under California law as a result of Defendants' wrongful acts as alleged herein, which are fraudulent, malicious,  and oppressive, and with reckless disregard for the rights of Plaintiffs, in violation of Cal. Civil Code § 3291, which are expected to be sought in an amount of at least $ 70,000,000 (seventy million dollars).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that this Court grant judgment against Defendants for the following relief:

A.        Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, be temporarily restrained, and preliminarily and permanently enjoined from its continuing wrongful acts, including but not limited to the following:

i.        Using the Infringing Show or trade dress, or any other confusingly similar designation, or any confusingly similar trade dress, in connection with their products, or related goods or services, or infringing upon Plaintiffs' trade dress.

ii.        Competing unfairly with Plaintiffs in any manner, including continuing to falsely advertise untrue and misleading facts and statements and claims about their products.

iii.        Conspiring with, aiding, assisting, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) and (2) above.

B.        Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, deliver for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials in its possession or control that depict or reference the infringing trade dress or any other confusingly or substantially similar trade dress, and any materials or articles used for making or reproducing the same, as provided by 15 U.S.C. § 1118.

C.        Defendants file with the court and serves on Plaintiffs, within 30 days after the entry and service on Defendants of an injunction, a report in writing and attested to under penalty of perjury setting forth in detail the manner and form

in which Defendants have complied with the provisions of subparagraphs (A) and (B) above.

D.        Plaintiffs recover all damages it has sustained as a result of Defendants' infringement and unfair competition and other wrongful activities.

E.        Plaintiffs be awarded treble damages under 17 U.S.C. § 1117(b), and/or statutory damages under federal copyright laws for each work infringed, for willful infringement up the statutory maximum of $ 150,000 per work or the maximum allowed by law, or actual damages to the extent higher.

F.        Plaintiffs be awarded punitive damages under California law.

G.        An accounting be directed to determine Defendants' profits resulting from its infringement and unfair competition and that the profits be paid over to Plaintiffs, increased as the court determines is appropriate to the circumstances of this case.

H.        Plaintiffs be awarded statutory damages under 15 U.S.C. § 1117(d).

I.        The court declare this case an exceptional case of willful, deliberate, or intentional infringement, and award Plaintiff its reasonable attorney fees for prosecuting this action pursuant to 15 U.S.C. § 1117(a), and as the prevailing party on the claims, and as otherwise allowed by law.

J.        Plaintiff recover its costs of this action and pre-judgment and post-judgment interest, and attorneys' fees, to the fullest extent allowed by law.

K.        Defendants be required to recall all inventory of infringing products or services.

L.        Plaintiffs receive all other relief that the Court deems just and appropriate.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by the jury on its claims herein and all issues

and claims so triable in this action.

Respectfully submitted,

Dated:   August 22, 2016

LEVIN AND DICTEROW

By /s/ William E. Levin
William E. Levin
Attorneys for Plaintiff,
VBS DISTRIBUTION, INC. AND VBS
TELEVISION, INC.

## VERIFICATION OF COMPLAINT

I, JOSEPH C. NGUYEN, am the Chairman and Chief Executive Officer (CEO) of Plaintiffs VBS Distribution, Inc., a California corporation, and VBS Television, Inc., a California corporation, and declare under penalty of perjury under the laws of the United States and the State of California, that the facts set forth in the foregoing Complaint and true and correct based on my personal knowledge, except that where indicated to be based on information and belief, I believe them to be true and correct.

Dated: August 22, 2016

_____

/s/ Joseph C. Nguyen

Joseph C. Nguyen

.Exhibits to Complaint

| Exhibit No. | Description |
| --- | --- |
| 1 | Registration Number 4,440,695, registered on November 26, 2013, in the United States Patent and Trademark Office for the mark Fight Price on Television for auction services |
| 2 | The registered copyright for the Show issued by the United States Copyright office, Registration Number PA1-921-488, on November 13, 2014. |
| 3 | One of the Vietnamese dietary supplement Defendants' advertisements for their Artho-7, which appeared in a Vietnamese newspaper, Nguaoi Viet, probably the largest in the country, in 2013. It states example that  Defendants' Arthro7 product is: "100% tu duoc thao thien nhien." (symbols omitted). The English translation of those words is as follows: "tu" means "from." "duoc thao equals "medical herbal." "Thien nhien" equals "natural." |
| 4 | Another representative example of the Vietnamese dietary supplement Defendants' promotional materials and |

VBS' Complaint for Unfair Competition - 37

| | |
|---|---|
| | advertisements, also showing the packaging , including boxes, for the Arthro7 products. |
| 5 | Another representative example of the Vietnamese dietary supplement Defendants' promotional materials and advertisements, also showing the packaging , including boxes, for the Arthro7 products. |