Levin & Dicterow
William E. Levin, SB No. 104,631
williamlevin@hotmail.com
668 N. Coast Highway, Suite 1264
Laguna Beach, CA 92651
949-613-5131

Attorney for Plaintiffs,
VBS Distribution, Inc., and VBS Television, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBS Distribution, Inc., a California corporation, and VBS Television, Inc., a California corporation<br><br>  Plaintiffs,<br><br>  v.<br><br>Nutrivita Laboratories Inc., a California corporation, Nutrivita, Inc., a California corporation, US Doctors' Clinical, Inc., a California corporation (or dba), Robinson Pharma, Inc., a California corporation, KVLA, Inc., a California corporation, Tuong Nguyen, an individual domiciled in California, Tram Ho, an individual domiciled in California, Jenny Do aka Ngoc Nu, an individual domiciled in California, and Does 1-10 Inclusive<br><br>  Defendants. | **Civil Case No.**<br>**8:16-cv-01553-CJC-DFMx**<br>Hon. Cormac J. Carney<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Filed concurrently with the Notice of Motion, Declarations of Joseph Nguyen, Madalyn Huynh, Peter Vo, Hau Thi Tran, Thu Thi Nguyen, List of Exhibits, and (Proposed) Order.]<br><br>DATE:  JANURY 23, 2016<br>TIME:   1:30 P.M.<br>CTRM:  9B |

# **TABLE OF CONTENTS**

Page

Table of Authorities………………………………………………....... iii

I.  Factual Background……………………………………………...…  1

II. The Standard For Issuance Of A Preliminary Injunction Is Satisfied…….  5

III. VBS Television Can Show They Are Likely To Prevail On Their Trade

    Dress Infringement And Unfair Competition Claims…………......….....  6

    1.   VBS Television's Trade Dress Is Non-Functional……………….  8

    2.   The Trade Dress Is Strong………………………………….…  9

    3.   The Services And Goods Are Identical, The Trade Dress is

         Identical, & There is Bad Faith……….………………………  11

    4.   The Marketing Channels And Customers Overlap………..……...  12

    5.   There Is Significant Evidence Of Substantial Actual Confusion…...  12

IV. VBS Television Demonstrates They Are Likely To Prevail On Their

    Trade Secret Misappropriation Claims…………………..………  13

    1.   VBS Television Has Protectable Trade Secrets………………….  13

    2.   Show Defendants Misappropriated VBS Television's Trade

         Secrets……………………………………………………..  14

V. VBS Distribution Has Shown They Are Likely To Prevail On Their

    False Advertising Claims……...………………………….....................  15

    1.  Supplement Defendants Made False Statements Of Fact

        About Arthro-7 In Commercial Advertisements……….………….  16

    2.  The Deceptive Advertisement Claims Are Material………………  19

    3.  Supplement Defendants Caused The Falsely Advertised

        Arthro-7 To Enter Interstate Commerce…………..……………  20

    4. VBS Distribution Has Been Or Is Likely To Be Injured As A

        Result………………………………………………………..  20

VI. Injunctive Relief Should Be Granted………………………………….   21

   1. VBS Will Continue To Suffer Irreparable Harm Absent

     Immediate Injunctive Relief……………………………………   21

    *A. Defendants' Intention And Pattern Of Behavior*

     *To Put VBS Out Of Business By Unlawful Means*……………….   23

   2. The Balance Of Equities Strongly Favor VBS…………..................   23

   3. An Injunction Is In The Public Interest……………………………   24

VII. A Bond Is Not Required Or Should Be Minimal……………………….   25

VIII. Conclusion……………………………………………………………….   25

## TABLE OF AUTHORITIES

**Cases**                                                                                   Pages

*Active Sports Lifestyle USA LLC v. Old Navy, LLC,*
    No. SACV 12-00572 JVS (Ex), 2013 U.S. Dist. LEXIS
    190611 (C.D. Cal. Sep. 19, 2013)……………….................….   7

*Ajaxo Inc. v. E\*Trade Group, Inc.,*
    135 Cal. App. 4th 21 (2005)………………………….........   15

*American Paper & Packaging Prods., Inc. v. Kirgan,*
    183 Cal. App. 3d 1318, 228 Cal. Rptr. 713 (1986)………..…….   13

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)…………………………………   8, 12

*Beachbody, LLC v. Universal Nutrients, LLC,*
    No. CV 16-02015-R, 2016 U.S. Dist. LEXIS 94097
    (C.D. Cal. July 18, 2016)…………………………………….   16, 20

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.,*
    90 F. Supp. 2d 431 (S.D.N.Y. 2000)……………………………   6

*Boldface Licensing + Branding v. By Lee Tillett, Inc.,*
    940 F. Supp. 2d 1178 (C.D. Cal. 2013)…………..…………….   23

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)……………..…………………   11

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988)…………………..……………   10

*Clicks Billiards, Inc. v. Sixshooters Inc.,*
    251 F.3d 1252 (9th Cir. 2001)………………………………..   6,7,8,9, 12

*Clinique Labs. v. Dep Corp.,*
    945 F. Supp. 547 (S.D.N.Y. 1996)…………………………...   11

*Coca-Cola Co. v. Tropicana Prods., Inc.,*
    690 F.2d 312 (2d Cir. 1982)…………………………………   22

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
   35 Cal. 3d 197, 197 Cal. Rptr. 783, P.2d 660 (1983)…………...    15

*Courtesy Temp. Serv. v. Camacho,*
   222 Cal. App. 3d 1278 (1990)…………………………………..    13, 14

*CytoSport, Inc. v. Vital Pharms., Inc.,*
   617 F. Supp. 2d 1051 (E.D. Cal. 2009)…………………………    24

*DocMagic, Inc. v. Ellie Mae, Inc.,*
   745 F. Supp. 2d 1119 (N.D. Cal. 2010)………………………...    13

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
   967 F.2d 1280 (9th Cir. 1992)…………………………………..    7-8

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
   826 F.2d 837 (9th Cir. 1987)…………………………………..    6, 11, 12

*Gable-Leigh, Inc. v. North Am. Miss,*
   No. CV 01-01019 MMM (SHx), 2001 U.S. Dist.
   LEXIS 25614 (C.D.Cal. Apr. 9, 2001)…………………………    13, 14

*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015) (*en banc*)…………………………    5, 23

*GoTo.com, Inc. v. Walt Disney Co.,*
   202 F.3d 1199 (9th Cir. 2000)…………………………………..    25

*Harper House, Inc. v. Thomas Nelson, Inc.,*
   889 F. 2d 197 (9th Cir. 1989)………………………...…………    17, 20

*Ideal Industries, Inc. v. Gardner Bender, Inc.,*
   612 F.2d 1018 (7th Cir. 1979)…………………………………..    24

*Ideal Industries, Inc. v. Gardner Bender, Inc.,*
   447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116
   (1980) (cert. denied)……………………………………………    24

*In re Chippendales USA, Inc.,*
   622 F.2d 1346 (Fed. Cir. 2010)…………………………………    10

*In Re Frankish Enterprises Ltd.*,

    113 U.S.P.Q.2d 1964 (T.T.A.B. Feb. 27, 2015)………………..   10

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,

    4 F.3d 819 (9th Cir. 1993)………………………………………   6, 23

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enter., Inc.*,

    559 F.3d 985 (9th Cir. 2009)……………………………………   24

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,

    456 U.S. 844 (1982)………………………………………………   8

*Jauregui v. City of Palmdale*,

    226 Cal. App. 4th 781, 172 Cal. Rptr. 3d 333 (2014)…………..   5

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,

    299 F.3d 1242 (11th Cir. 2002)…………………………………   19

*Johnson v. Couturier*,

    572 F.3d 1067 (9th Cir. 2009)…………………………………...   25

*Jorgensen v. Cassiday*,

    320 F.3d 906 (9th Cir. 2003)……………………………………   25

*Kendall-Jackson Winery*, Ltd. V. E. & J. Gallo Winery,

    150 F.3d 1042 (9th Cir. 1998)…………………………………...   9

*Kennedy Industries, Inc. v. Aparo*,

    416 F. Supp.2d 311 (E.D. Pa. 2005)……………………………   24

*Kewanee Oil Co. v. Bicron Corp.*,

    416 U.S. 470, 94 S. Ct. 1879 (1974)……………………………   24

*Le Sportsac, Inc. v. K. Mart Corp.*,

    754 F.2d 71 (2nd Cir. 1985)……………………………………..   9

*Maxim Integrated Prods., Inc. v. Quintana*,

    654 F. Supp. 2d 1024 (N.D. Cal. 2009)………………………...   21

*M. Kramer Mfg. Co. v. Andrews*,

    783 F.2d 421 (4th Cir. 1986)……………………………………   12

*Mattel, Inc. v. Walking Mountain Prods.,*
    353 F.3d 792 (9th Cir. 2003)…………………………………… 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung,*
    No. CV 01-00659 CBM (RCx), 2001 U.S. Dist.
    LEXIS 3248 (C.D. Cal. Feb. 2, 2001)…………………………… 24

*Millennium Labs. v. Ameritox, Ltd.,*
    817 F.3d 1123 (9th Cir. 2016)………………………………….. 8

*Morlife, Inc. v. Perry,*
    56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997)…………… 14

*Official Airline Guides v. Goss,*
    6 F.3d 1385 (9th Cir. 1993)…………………………………….. 11-12

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
    602 F. App'x 669 (9th Cir. 2015)……………………………… 9

*PBM Prods., LLC v. Mead Johnson & Co.,*
    639 F.3d 111 (4th Cir. 2011)…………………………………… 17

*Perfumebay.com, Inc. v. E-bay Inc.,*
    506 F.3d 1165 (9th Cir. 2007)………………………………… 12

*Pom Wonderful LLC v. Purely Juice, Inc.,*
    No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist.
    LEXIS 55426 (C.D.Cal. July 17, 2008)……………………….. 17-20, 24

*Procter & Gamble Co. v. Ultreo, Inc.,*
    574 F. Supp. 2d 339 (S.D.N.Y. 2008)………………………….. 22

*Qualitex Co. v. Jacobson Prods. Co., Inc.,*
    541 U.S. 159 (1995)…………………………………………… 8

*Reeves v. Hanlon,*
    33 Cal. 4th 1140 (2004)……………………………………… 15

*Rice v. Fox Broadcasting Co.,*
    148 F. Supp. 2d 1029 (C.D. Cal. 2001)………………………… 16

*Rice v. Fox Broad. Co.*,

    330 F.3d 1170 (9th Cir. 2003)……………………………………   16

*Robbins v. Superior Court*,

    38 Cal. 3d 199 (1985)…………………………………………...   5

*Robinson v. Delicious Vinyl Records Inc.*,

    2013 WL 3983014 (C.D. Cal. Aug. 1, 2013)…………………...   21

*Sargent Fletcher, Inc. v. Able Corp.*,

    110 Cal. App. 4th 1658 (2003)………………………………   14

*Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*,

    568 F.2d 1342 (C.C.P.A. 1977)………………………………   9

*Shakey's Inc. v. Covalt*,

    704 F.2d 426 (9th Cir. 1983)…………………………………   6

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson &*
*Johnson-Merck Consumer Pharms. Co.*,

    906 F. Supp. 178 (S.D.N.Y. 1995)…………………………...   17

*Southland Sod Farms v. Stover Seed Co.*,

    108 F.3d 1134 (9thCir.1997)…………………………………   16, 17

*Summit Technology, Inc. v. High–Line Medical Instruments Co.*,

    933 F.Supp. 918 (C.D.Cal.1996)…………………………….   16

*Sunburst Products, Inc. v. Derrick Law Co.*,

    Nos. 89-56025, 89-56113, 90-55194, 1991 U.S. App.

    LEXIS 352 (9th Cir. Jan. 9, 1991)…………………………...   23-24

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,

    No. SACV 15-0246-DOC (DFMx), 2016 U.S. Dist.

    LEXIS 129811 (C.D. Cal. Sep. 15, 2016)………………………   8

*Traffix Devices v. Mktg. Displays*,

    532 U.S. 23, 121 S. Ct. 1255 (2001)……………………………   8

*Two Pesos, Inc. v. Taco Cabana, Inc.*,

505 U.S. 763 (1992)…………………………………………  6, 9

*U-Haul Intl, Inc. v. Jartran, Inc.,*

793 F. 2d 1034 (9th Cir. 1986)…………………………..  17, 19

*Vacco Industries, Inc. v. Van Den Berg,*

5 Cal. App. 4th 34 (1992)…………………………………  14

*Van de Kamp v. Tahoe Reg'l Planning Agency,*

766 F.2d 1319 (9th Cir. 1985)…………………………...  25

*Vertos Med., Inc. v. Globus Med., Inc.,*

No. C 09-1141(PJH), 2009 U.S. Dist. LEXIS

110463 (N.D. Cal. Nov. 6, 2009)……………………….  11-12, 24

*Wal-Mart Stores v. Samara Bros.,*

529 U.S. 205 (2000)…………………………………….  10

*Western Sugar Coop. v. Archer-Daniels-Midland Co.,*

No. 11-CV-3473 (CBM), 2011 U.S. Dist. LEXIS

158250 (C.D.Cal. Oct. 21, 2011)……………………….  19, 20

*Whyte v. Schlage Lock Co.,*

101 Cal. App. 4th 1443 (2002)…………………………..  14

*Winter v. Nat'l Res. Def. Council, Inc.,*

555 U.S. 7 (2008)……………………………………….  5, 23

*Wyndham Resort Dev. Corp. v. Bingham,*

No. 2:10-cv-01556-GEB-KJM, 2010 U.S. Dist.

LEXIS 80608 (E.D. Cal. July 8, 2010)…………………  22


**Statutes and Rules**

15 U.S.C. § 1125…………………………………………...  6, 15

18 U.S.C. § 1832…………………………………………...  6

18 U.S.C. § 1836…………………………………………...  6

18 U.S.C. § 1839…………………………………………...  13, 14

California Uniform Trade Secrets Act, Cal. Civ. Code § 3426………   6, 13, 14

**Treatises and Other Authorities**

1 W. Levin, *Trade Dress Protection* (2d ed. 2016)……………………   23

J. Thomas McCarthy, *McCarthy on Trademarks*

   *and Unfair Competition* (4th ed. 2014)………………………….   9

# I. __Factual Background__

The scope of the preliminary injunction sought by this motion is set forth in the proposed accompanying order and the Notice of Motion. The requested relief focuses on the wholesale copying of the VBS' television show by the infringing television show, the trade secrets used in creating and promoting it, and the overall and continuing, ever escalating, pattern of unfair competition and anti-competitive conduct by Defendants, including extensive "poaching" of VBS' employees.

The false advertising claims misleading the public about Defendants' Arthro-7 product are also the subject of this motion and the requested preliminary injunction.

This Court has already done a stellar job of summarizing some of the key facts surrounding this lawsuit as alleged in the First Amended Complaint ("FAC"), in its recent Order of Dec. 1, 2016 disposing of Defendants' motion to dismiss ("Order"). (Order, pp. 2-6). Rather than repeat those in this memorandum, VBS incorporates that summary here. In essence, the Court has set forth a helpful and detailed road map of what claims, upon proof of the alleged facts, Plaintiffs (collectively "VBS") is likely to prevail upon at trial, and what additional facts are needed as to certain other claims. VBS relies in this motion primarily upon unfair competition, trade secrets, trade dress, false advertising, and the related claims.

The FAC, and its attached exhibits, was also verified under oath by VBS' CEO, Mr. Joseph Nguyen, which gives the facts set forth in the FAC the same legal effect as a declaration.[1] In addition, the alleged facts and additional facts and evidence, are supported by the declarations filed in support of this motion by

---

[1] VBS will also be filing a Second Amended Complaint on or before Dec. 31, 2016.

Joseph C. Nguyen ("Joseph Decl."), Peter Vo ("Vo Decl."), Madalyn Hunyh ("Hunyh Decl."), Thu Thi Nguyen ("Thu Nguyen Decl." ), and Hau Thi Tran ("Tran Decl.") and the additional exhibits attached to them.

As discussed herein, the facts and the evidence show that there is **a long pattern of unfair competition and anti-competitive behavior** by the Defendants. (Joseph Decl., ¶¶ 3-12, 18, 37-39).

That pattern continues to this day, including <u>additional copying of VBS' Show within the last month,</u> even after the filing of this suit. (Joseph Decl., ¶40). Its primary, if not sole, **purpose is to put VBS out of business. Defendant Tuong Nguyen ("Tuong") and his wife Jenny Do's stated intention is to put VBS out of business to the point where there are only 3 remaining people at VBS: Jospeh Nguen, and two others.** (Joseph Decl., ¶¶ 3-4).

Irreparable harm along the way to a very real threat to *destroy* VBS' entire business and reputation (Joseph Decl., ¶¶ 3-5), is the natural and intended consequence of Defendants' pattern of illegal actions, including its **poaching of VBS' employees** (Vo Decl., ¶¶ 9-13; Joseph Decl., ¶¶ 3-12, 38), locating almost next door to VBS (Thu Nguyen Decl., ¶ 3; Joseph Decl., ¶ 12), blatant copying of the Show (Joseph Decl., ¶¶ 19-42), and stealing of VBS' customer lists and trade secrets. (Vo Decl., ¶¶ 3-8;  Hyunh Decl., ¶¶ 3-16; Nguyen Decl., ¶¶ 44-56). And here <u>irreparable injury</u> includes loss of reputation and control over reputation of VBS, loss of customers and sales, loss of capital and investment, loss of competitive position, theft of trade secrets, (Joseph Decl., ¶¶69-74), loss of VBS' key and other employees by deliberate poaching, (Vo Decl., ¶¶ 9-13; Joseph Decl., ¶¶3-12), **substantial actual confusion in the marketplace**, (Tran Decl., ¶¶ 8-10; Huynh Decl., ¶¶ 17-21;  Thu Nguyen Decl., ¶¶4- 10; and Joseph Decl., ¶¶ 43-44),

and even personal and vicious ad hominem attacks on VBS' CEO, Joseph Nguyen, and VBS' current Show vendor Lam, on the Infringing Show. (Joseph Decl., ¶¶75-77)

All of the Defendants –except Defendant Tram Ho and the Does defendants—are related through common ownership by Defendant Tuong and his wife Jenny Do ("Jenny" or "Do"). (Joseph Decl., ¶ 12).

The long pattern of activities is traceable to defendant Tuong, who is an arch rival of VBS, together with his various business enterprises.  The pattern of unfair competition and anti-competitive behavior is quite **deliberate and malicious**. It began *immediately* following VBS Distribution's very first entry into the niche Vietnamese dietary supplement market with the creation of JN-7 Best joint compound product. (Joseph Decl., ¶¶ 3-12).  That product **directly competed** with Tuong's primary dietary supplement, Arthro-7, in the same Vietnamese marketplace. (Joseph Decl., ¶¶ 17-18, 57-62). Unlike Tuong's Arthro-7's product, which was falsely advertised, VBS' product contained no animal products. Tuong would not allow this new direct competition. (Joseph Decl., ¶¶ 17-18, 57-68).

Defendant Tuong  and his business have  monopoly power in that Vietnamese marketplace with their competing product Arthro-7. Their intent was to bar VBS' entry into that marketplace and make it more difficult. (Joseph Decl., ¶¶17, ; (First Amend. Comp. ("FAC"), ¶ 73-85).

 Defendants continuing pattern of unfair competition and anti-competitive behavior includes:(a) the previous lawsuit to stop VBS from entering or remaining in the dietary supplement marketplace which was finally dismissed with prejudice on the eve of trial after two years (Verified FAC, ¶¶ 73-85; Joseph Decl., ¶¶ 17-18), (b) their preliminary opposition to the federal registration of VBS' service mark for JN-7

Best, (c) the wholesale copying of VBS' Show, "Dau Gia Tren Truyen Hinh" (English Translation, "Fight Price On TV") (the, "Show"), including its copyrighted work and trade dress, with their Infringing Show "Diamond at a Surprise Low Price" (the "Infringing Show"),  (Joseph Decl., ¶¶ 19-42; Verified FAC, ¶¶ 46- 72)), (d) their intentional solicitation of key VBS employees for the Infringing Show while employed by VBS (Joseph Decl., ¶¶ 3-12; Vo Decl., ¶¶ 9-13),  (e) their direct solicitation of VBS' vendors for the Show using confidential contact and other proprietary information to switch them to their new Infringing Show  (Joseph Decl., ¶¶  11-12)) (f) their misappropriation and use of VBS Television's trade secrets (Joseph Decl., ¶¶ 31-36, 45-56;  Huynh Decl., ¶¶ 3-16; Vo Decl., ¶¶ 2-8), and (g) their false advertising of the Arthro-7 product and featuring it on the confusingly similar Infringing Show and using that product in solicitations to VBS' customers after misappropriating their customer list. (Joseph Decl., ¶¶ 2 and Ex. 6, 57-68; Verified FAC, ¶¶ 32-44, 57).

VBS Distribution is a small dietary supplement company which sells its joint compound product JN-7 Best throughout the United States, and has about 10% of the niche Vietnamese market. (Joseph Decl., ¶ 18). The Supplement Defendants (Tuong , Nutrivita Laboratories, Nutrivita Inc., US Doctors' Clinical, Inc., Robinson Pharma, Inc.) has approximately 60% of the same market. (Joseph Decl., ¶18); Order, p. 2-3).

VBS Television is possibly the largest Vietnamese media network in the United States. In 2011, VBS Television began airing its now popular Show. (Verified FAC, ¶¶ 22-30). The Show is a Vietnamese live jewelry auction program which focuses on the auctioning and sale of diamond jewelry. (*Id.*). The Show utilizes a distinctive non-functional trade dress to aid consumers and the public

with their association of the Show, its quality, and VBS Television. (Joseph Decl., ¶¶ 23-30 ). The Show Defendants (KVLA, Jenny Do, Tuong Nguyen, and Tram Ho) have an almost identical infringing show "Diamond at a Surprise Low Price" (the "Infringing Show"), which is causing considerable actual confusion in the marketplace.  (Joseph Decl., ¶¶ 19-30; 37-44).

## II.  The Standard For Issuance Of A Preliminary Injunction Is Satisfied

A plaintiff seeking a preliminary injunction must show that (1) it will likely succeed on the merits; (2) it will likely suffer irreparable injury if the court does not issue a preliminary injunction; (3) the balance of equities favors the plaintiff; and (4) an injunction is in the public interest. *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015) (*en banc*) (*citing Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

Under California law, if the denial of an injunction would result in great harm to the plaintiff and the defendants would suffer little harm, then it is an abuse of discretion to fail to grant the injunction unless there is no possibility of the plaintiffs prevailing on the merits. *Robbins v. Superior Court*, 38 Cal. 3d 199, 205 (1985) *cited by Jauregui v. City of Palmdale*, 226 Cal. App. 4th 781, 810, 172 Cal. Rptr. 3d 333, 353 (2014) (Mosk, J, Concurring).

As set forth herein, Plaintiffs can show a reasonable likelihood of success on the merits of their claims, and that **they will likely continue to suffer irreparable injury resulting from Defendants' wrongful acts which constitute a long pattern of unfair competition and unfair and deceptive trade practices absent an injunction.** Plaintiffs can also show that both equity and the public interest weigh in favor granting an injunction enjoining and restraining the Defendants' conduct.

Plaintiffs' claims of trade dress infringement, unfair competition, and false designation of origin claims for relief are based on 15 U.S.C. § 1125 and under California common law.

Plaintiffs' trade secret misappropriation claims for relief are based on the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq*, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq,* concerning the misappropriation of trade secrets. 18 U.S.C. § 1836 provides for injunctions in civil actions for trade secret violations under the new federal statute, including civil seizure under 18 U.S.C. Cal. Civ. Code § 3426.2 *et seq* authorizes the court to enjoin the actual or threatened misappropriation of trade secrets, and also authorizes mandatory injunctions requiring the misappropriator to return the fruits of misappropriation.

Plaintiffs' false advertising claims for relief derive from 15 U.S.C. § 1125 and California statutory and common law.

### III. <u>VBS Television Can Show They Are Likely To Prevail On Their Trade Dress Infringement And Unfair Competition Claims</u>

Trade dress refers to the total image, design, and appearance of a product or service or its packaging, and it can include such features as size, shape, color, color combinations, texture, graphics, or materials. *See, e.g., Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001); *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). The courts have made it clear that places which customers see or experience may possess a total visual appearance that constitutes protectable trade dress.[2]

---

[2] *See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 765 (1992) (the festive eating atmosphere having dining areas decorated with artifacts, bright colors, paintings, and murals, as well as the uniforms, was held to be protectable trade dress of a Mexican restaurant); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987) (restaurant's décor, menu, layout, and style of

VBS Television's trade dress consists of, but is not limited to, the unique style and format of the Show, which is a (a) live television auction program primarily auctioning jewelry, particularly diamonds, which (b) airs every week on Tuesdays and Thursdays (c) from 5 to 7 p.m., which (d) said products are auctioned off most commonly at prices ranging from $ 300 to $ 3000, which (e) uses a crescendo format where the least expensive items are auctioned off first with gradually more expensive products being auctioned off until the end of the program where the most expensive product is auctioned off last, which (f) consistently auctions off a limited selection of products (usually about 30), which (g) has a length of two hours, which (h) utilizes carefully selected vendors to appear on the Show with the Show's co-host one at a time, which (i) uses unique and proprietary camera techniques that were developed by VBS using an Apple ipad tablet device which give a distinct and unique look. (FAC, ¶ 22).

To sustain a claim for trade dress infringement, a plaintiff must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001).

Nonetheless, "[t]he core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Active Sports Lifestyle USA LLC v. Old Navy, LLC*, 2013 U.S. Dist. LEXIS 190611, at *18 (C.D. Cal. Sep. 19, 2013, No. SACV

service is protectable trade dress); *Shakey's Inc. v. Covalt*, 704 F.2d 426, 430 (9th Cir. 1983) (pizza restaurant's menu content, prices, ingredients, and preparation style are protectable trade dress); *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000) (wine store's ways of identifying wines, colors, and shelves are protectable trade dress).

12-00572 JVS (Ex)) (*citing E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d
1280, 1290 (9th Cir. 1992)). The 9th Circuit considers eight non-exhaustive non-
exclusive guiding factors in weighing the existence of a likelihood of confusion:
(1) the strength of the mark; (2) the proximity of the goods; (3) similarity of the
marks; (4) evidence of actual confusion; (5) marketing channel overlap; (6) buyer
sophistication; (7) bad faith of the infringer; and (8) likelihood that the parties will
expand their product line (the, "Sleekcraft Factors"). *AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341, 348 (9th Cir. 1979); *see also Mattel, Inc. v. Walking Mountain
Prods.,* 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Based on the foregoing and the evidence presented with this motion, VBS
Television is likely to be able to show at rial that its Show trade dress is non-
functional, the trade dress serves as a source indicator which consumers recognize,
and that the Defendants' Infringing Show's trade dress creates a likelihood of
confusion. In fact, there have been ample instances of actual confusion already.

### 1.   VBS Television's Trade Dress Is Non-Functional

In determining functionality of a trade dress, the focus is not on the
individual elements. The crucial focus is "on the overall visual impression that the
combination and arrangement of those elements create." *Millennium Labs. v.
Ameritox, Ltd.*, 817 F.3d 1123, 1130 (9th Cir. 2016) (citing *Clicks Billiards,* 251
F.3d at 1259); *Toyo Tire & Rubber Co. v. CIA Wheel Grp*., No. SACV 15-0246-
DOC (DFMx), 2016 U.S. Dist. LEXIS 129811, at *10 (C.D. Cal. Sep. 15, 2016).

Trade dress protection may <u>not </u>be claimed for product features that are
functional. *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29, 121 S. Ct. 1255,
1259 (2001). There are two tests for functionality. *Qualitex Co. v. Jacobson Prods.
Co., Inc.,* 541 U.S. 159 (1995); *Inwood Laboratories, Inc. v. Ives Laboratories,
Inc.,* 456 U.S. 844, 850, n. 10 (1982). The *Qualitex* test finds functionality where
the exclusive use of a feature puts competitors at a significant non-reputation-
related disadvantage. The *Inwood* test finds functionality where the product feature

is essential to the use or purpose of the article or if it affects the cost or quality of the article. But, the 9th Circuit has said that even where a product feature is functional, the feature's purely aesthetic elements are non-functional. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,* 602 F. App'x 669, 671 (9th Cir. 2015) (a tire's tread pattern is functional, but the specific angles and spacing of the lug bars can be considered trade dress).

Thus, "Functional elements that are separately unprotectable can be protected together as part of a trade dress." *Clicks Billiards*, 251 F.3d 1252, 1259 (9th Cir. 2001) (citing *Le Sportsac, Inc. v. K. Mart Corp.,* 754 F.2d 71, 76 (2nd Cir. 1985)); *see also Kendall-Jackson Winery*, *Ltd. V. E. & J. Gallo Winery,* 150 F.3d 1042, 1050 (9th Cir. 1998). Therefore, even if the court finds that some elements of the trade dress are functional, the trade dress as a whole is still non-functional.

For the reasons set out in the Declaration of Joseph C. Nguyen filed herewith, the trade dress utilized by the Show is non-functional. (Joseph Decl., ¶¶ 23-30).

## 2. The Trade Dress Is Strong

To prevail on this motion for preliminary injunction, a plaintiff must also show that the trade dress is either inherently distinctive[3] or has secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992). The trade dress satisfies both of these standards.

The trade dress is inherently distinctive because it serves no other purpose than to identify the Show as the source of the services. (Joseph Decl., ¶¶ 10-17) "A

---

[3] In determining inherent distinctiveness, the courts use the *Seabrook* test. *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977). This test merely seeks to determine "whether the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:13 (4th ed. 2014)

mark is inherently distinctive if its intrinsic nature serves to identify a particular source." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000). Trade dress for services may be inherently distinctive.[4] Because the elements which comprise trade dress of the Show are not the service but merely serve to indicate the source of the service, the trade dress is the equivalent to packaging which "normally *is* taken by the consumer to indicate origin." *Wal-Mart Stores*, 529 U.S. 205, 210.

Before the Infringing Show came into existence, the Show was the only one of its kind for about a period of over four years, and the Show's trade dress has been featured in numerous advertisements and promotions for the Show. (Joseph Decl., ¶ 11, 19). The trade dress has enjoyed the rare situation of being the only trade dress used in its marketplace. It has always been unique in its particular field, not just because of the fact it was the only one in it but because there is no other television program that looks like it or gives off the same impression. Because of the "extensive advertising, length of time in business, public recognition, and uniqueness" the trade dress has strong secondary meaning. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1179 (9th Cir. 1988) (affirming permanent injunction). The trade dress, holistically, contains no basic shapes or designs; it was designed from scratch with the purpose of serving as a unique identification of source. (FAC, ¶ 22). And it needed to be because there are near limitless ways a live TV auction program can design its appearance to indicate source.

Additionally, when changes to the Show were made, the Infringing Show immediately made the same changes. (Joseph Decl., ¶ 40). The only rational explanation for the striking similarities of the trade dress is that the Defendants'

---

[4] *In Re Frankish Enterprises Ltd.*, 113 U.S.P.Q.2d 1964 (T.T.A.B. Feb. 27, 2015); *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992); *In re Chippendales USA, Inc.*, 622 F.2d 1346 (Fed. Cir. 2010) (a reveling costume worn by Chippendales dancers found to be a trade dress which could be inherently distinctive for "adult entertainment services").

knew of the Show and copied it entirely. "[D]eliberate copying may suffice to support an inference of secondary meaning." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987).

As such, VBS Television's trade dress is entitled to a broad scope of protection.

### 3.   The Services And Goods Are Identical, The Trade Dress Is Identical, & There Is Bad Faith

The shows, services, and the goods auctioned off through the shows are not just similar, they are identical. Furthermore, the Infringing Show is directly competing with the Show. These similarities and direct competition have already been discussed and substantiated by the supporting declarations and Verified FAC and exhibits.

When nearly identical trade dress is used on or in connection with competing products, "likelihood of confusion would follow as a matter of course." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999). The facts show there is a strong reason to believe the copying is intentional. The only rational explanation for the Show Defendants' identical trade dress for an identical service selling identical goods is the Show Defendants' knowingly copied VBS. When the services and products sold are as strikingly similar as it is in this case, and where the Show Defendants had full knowledge of VBS Television's trade dress rights, there can be no dispute that Show Defendants' new trade dress was created with an intent to trade off VBS' goodwill. *See Clinique Labs. v. Dep Corp.*, 945 F. Supp. 547, 555 (S.D.N.Y. 1996) ("The overall appearance of the two lines of products is too similar even to entertain the idea that [defendant] did not mimic Clinique's mark and dress.").

When "an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Vertos Med., Inc. v. Globus Med., Inc.*, No. C 09-1141(PJH), 2009 U.S. Dist. LEXIS 110463, at *23 (N.D. Cal.

Nov. 6, 2009) (*citing Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)). There is no question that Show Defendants' acted in bad faith.

Show Defendants knowingly use a trade dress that is identical to VBS Television's in a bad faith effort to confuse and divert customers. (FAC, ¶ 60-63, 69).

"Courts almost unanimously presume a likelihood of confusion based on a showing of intentional copying." *Fuddruckers*, 826 F.2d at 845-46 (emphasis added) (*citing M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 448 n.24 (4th Cir. 1986)).

### 4.   The Marketing Channels and Customers Overlap

The parties' shows are both in the Vietnamese language and are available to watch live on both television and the internet. The vendors who advertise and auction their products on the shows are also the same. Tram Ho directly solicited sales for the Show, and after she left she directly solicited sales for the Infringing Show   from VBS' customers using its own customer lists.

The customers also overlap; middle to upper-class women, mainly Vietnamese. Before the Infringing Show aired, and continuing to today, the Show Defendants acquired and used VBS Televisions confidential vendor and customer information lists to directly contact and advertise to VBS' customers and vendors the Infringing Show and its offered products. (FAC, ¶ 51, 56; Ex. 6).

### 5.   There Is Significant Evidence Of Substantial Actual Confusion

Evidence of actual confusion is not required to demonstrate a likelihood of confusion and its absence is "unnoteworthy" due to the difficulty in gathering such evidence. *Perfumebay.com, Inc. v. E-bay Inc.*, 506 F.3d 1165, 1175-6 (9th Cir. 2007). However, the presence of evidence of actual confusion is strong "proof that future confusion is likely," and gives this factor great weight. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987); *AMF, Inc. v. Sleekcraft*

*Boats*, 599 F.2d 341, 352 (9th Cir. 1979). VBS Television has received numerous communications from customers which indicate them mixing up the Show with the Infringing Show. (See all supporting declarations)

## IV.   VBS Television Demonstrates They Are Likely To Prevail On Their Trade Secret Misappropriation Claims

To prevail on this claim, a plaintiff must show that (i) it has a legally protectable trade secret and (ii) that defendants have misappropriated it. See 18 U.S.C. §1839; Cal. Civ. Code § 3426.1(b); see also, e.g., *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1145 (N.D. Cal. 2010).

### 1.   VBS Television Has Protectable Trade Secrets

For information to be protectable trade secrets, the information must be "the sort of information that derives independent economic value, actual or potential, from not being generally known to the public or to persons who can obtain economic value from their disclosure or use; and additionally, whether they are the subject of efforts that are reasonable under the circumstances to maintain their secrecy." *Gable-Leigh, Inc. v. North Am. Miss*, No. CV 01-01019 MMM (SHx), 2001 U.S. Dist. LEXIS 25614, at *50-51 (C.D.Cal. Apr. 9, 2001) (citing *American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1324, 228 Cal. Rptr. 713 (1986)); see also, 18 U.S.C. §1839(3). All of the efforts undertaken by VBS to protect their confidential information constitute reasonable steps to ensure the secrecy of their trade secret information, as the declarations and exhibits show. VBS Television created said information through great effort, time, and money expended to collect, gather, organize, and refine it. It is this very work effort, or process of acquiring and retaining information, "that constitutes a protectable trade secret." *See, e.g., Courtesy Temp. Serv. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (1990). If competitors gained access to any of the said confidential information, then it is very likely that not only would the competitors immediately gain an advantage in the market, but also that advantage would be visible economically as

valuable customers, and vendors would be targeted and poached leading to the competition's monetary gain. Additionally, VBS Television would lose valuable competitive advantage if the pricing guidelines, concepts, explanations, and procedures were made known to competitors because they could then, for example, more selectively and effectively price and market their products.

"**It is well-established that a customer list may constitute a protectable trade secret**… because its disclosure would allow a competitor to direct its sales efforts both more selectively and effectively." *Gable-Leigh, supra*, 2001 U.S. Dist. LEXIS 25614, at *52-54 (emphasis added) (quoting *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522, 66 Cal. Rptr. 2d 731, 736 (1997)) (internal quotations omitted). Courts have also found information concerning pricing, profit margins, costs, promotional discounts, advertising allowances, marketing concessions, market research data, advertising strategy plans, payment terms, rebate incentives, budgets, strategic plans, and the like to qualify as trade secrets.[5]

## 2. Show Defendants Misappropriated VBS Television's Trade Secrets

The definitions of "improper means" and "misappropriation" of trade secrets under federal law and California law are essentially the same; Cal. Civ. Code § 3426.1; 18 U.S.C. 1839. Misappropriation is the improper acquisition of a trade secret or its nonconsensual use or disclosure. *See Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 1523 (1997). And "improper means" is defined as including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Cal. Civ. Code § 3426.1(a). Trade secret misappropriation can be proven with both direct and circumstantial evidence. *Sargent Fletcher, Inc. v. Able Corp*., 110 Cal. App. 4th

---

[5] *See, e.g., Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1455-1456 (2002); *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990); *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 49-51 (1992).

1658, 1673 (2003); *Ajaxo Inc. v. E*Trade Group, Inc*., 135 Cal. App. 4th 21, 50 (2005).

As the facts and Declarations, filed herewith, have already indicated, Defendant Tram Ho, a former employee, knowingly, and in direct contravention of her duties to maintain the secrecy of the trade secrets, both disclosed and used the trade secrets belonging to VBS without VBS' consent, to, at least, the other Show Defendants for her personal monetary gain. (Joseph Decl., ¶ 49, Tram Decl., Thu Nguyen Decl. and Huyuh Decl.).  Absent Tram Ho, the trade secrets would not have been known to any of the Defendants. Not only did Tram take the customer lists, she took vendor lists, and business know how. (FAC, ¶ 57-59). Tram gave all of those trade secrets to the Show Defendants who know that such confidential information belongs to VBS. What is more, Tram and the Show Defendants are direct competitors of VBS and had been unfairly competing with them already and poaching their employees.

California holds that the California Uniform Trade Secrets Act *is* violated when, like in the case at bar, a former employee uses their former employer's client or customer list to solicit clients. *See, e.g., Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155 (2004).

## V.   VBS Distribution Has Shown They Are Likely To Prevail On Their False Advertising Claims

Lanham Act, § 43(a), prohibits anyone from making false or misleading descriptions or representations of fact in commercial advertising about his or another's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B). "An advertisement is false or misleading under Section 17500 if it is likely to deceive members of the public; actual deception need not be demonstrated." *Comm. on Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197, 211, 197 Cal. Rptr. 783, 673 P.2d 660 (1983).

In order to prevail on a false advertising claim, the plaintiff must prove several factors which are discussed below.[6]

### 1.   Supplement Defendants Made False Statements Of Fact About Arthro-7 In Commercial Advertisements

Commercial advertising is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) the representations must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Beachbody, LLC v. Universal Nutrients, LLC,* No. CV 16-02015-R, 2016 U.S. Dist. LEXIS 94097, at *10 (C.D. Cal. July 18, 2016) (citing *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1181 (9th Cir. 2003)). Some examples of the Supplement Defendants' advertisements of Arthro-7 which make false statements are attached to the FAC and Jospeh Decl. as **Exhibits 3**, **4, and 5** (collectively, the "Advertisements"). Statements in those Advertisements, have and are widely advertised on the internet and in various print media, and are made intentionally if not negligently. Three known examples are, www.nutrivita.com, www.usdoctorsclinical.com/dr-john-e-hahn-dpm-nd, and the Vietnamese newspaper "Nguoi Viet" (symbols omitted) (English translation, "Vietnamese Man"). The newspaper advertisement is attached hereto as Exhibit 3. VBS Distribution sells a competing product JN-7 Best. Arthro-7 and JN-7 Best are sold in the same stores, and they are sold in many of the same geographic areas including California and other states. (Joseph Decl., ¶ 59; FAC, ¶ 39, 64). Because Supplement Defendants' Advertisements are very widely disseminated, it can be assumed that a substantial section of the customer base heard the false statements,

---

[6] *Rice v. Fox Broadcasting Co.,* 148 F. Supp. 2d 1029, 1066 (overturned on some grounds, affirmed on others) (*citing Summit Technology, Inc. v. High–Line Medical Instruments Co.,* 933 F.Supp. 918, 929 (C.D.Cal.1996)); *see also Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134 (9thCir.1997).

discussed below, either directly or indirectly, more so because the false claims are actually on product packaging. *E.g. PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011) (false ad was sent to 1.6 million people).

　　To demonstrate a statement is false within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). A literal falsity is false on its face. "Where an advertisement is demonstrated to be literally false, the Court does not need to inquire into whether consumers were deceived or misled. **A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone,** as the court will assume that false statements actually mislead consumers."[7]

　　The Advertisements contain such unambiguous and false advertisement claims as, "100% herbal ingredients," "100% natural," "100% natural herbal," "Over 8 Million Bottles Sold!," and "Doctor Recommended" (which appears next to a picture of, and a statement endorsing Arthro-7, "Dr. Hahn"). *See* Exhibits 3-5; (FAC, ¶¶ 32-45). All of the above mentioned false advertising claims appear prominently on the packaging, and in the advertisements. In a tiny font buried in the supplement facts label, listed ingredients include collagen and gelatin which are made from animals such as chickens, pigs, and cows. Animals are not herbal

---

[7] *Pom Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at *28–*32 (C.D. Cal. July 17, 2008) (emphasis added) (*citing U-Haul Intl, Inc. v. Jartran, Inc.,* 793 F. 2d 1034 (9th Cir. 1986); *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F. 2d 197, 209 (9th Cir. 1989) (even in non-comparative advertising case, no need for actual evidence of consumer deception where defendant engaged in intentional deception); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 181 (S.D.N.Y. 1995) ("a court may enjoin an ad which is explicitly or literally false without reference to the advertisement's impact on the buying public.").

ingredients; they come from completely separate and different taxonomical kingdoms. Ingredients which are comprised of 100% natural herbal ingredients logically cannot contain non-herbal ingredients. The ingredient claims are a literal falsity. *Pom Wonderful,* No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at *33 (C.D. Cal. July 17, 2008) (defendant's advertisements that its juice was "100% pomegranate juice" and contained "No added sugar or sweeteners" were literally false where independent tests performed by seven laboratories confirmed that defendant's product was adulterated). Furthermore, as stated in the FAC (FAC, ¶¶ 32-33) consumers of these products, who are Buddhist, do not consume animals as food.

The "Doctor Recommended" advertising claims in which "Dr. Hahn" appears wearing a white lab coat and endorses the product is another literal falsity. (Exhibits 3-5). That is because, amongst the other reasons stated in the FAC, "Dr. Hahn" is **NOT** a medical doctor, and does not have a M.D. (medical degree). (Joseph Decl., ¶ 66). When someone in a medical advertisement is referred to as a "doctor", consumers think the doctor is a medical doctor. *See* 16 C.F.R. § 255.3. "Dr. Hahn" is literally not a "Dr." On some advertisements, in tiny font, which goes unnoticed by consumers, appears "DPM, N.D." D.M.P. denotes that one has achieved a degree in podiatric medicine. Podiatric schools award D.P.M, and medical schools award M.D. Medical schools and podiatric schools have different curriculum, and teach different material. Technically, attorneys are doctors because of the J.D., a juris doctorate, same with Ph.D's, but, nonetheless, attorneys and Ph.D's do not give medical advice, call themselves doctor, and do not place the prefix Dr. before their name because they are not medical doctors, and do not want to deceive others. It is axiomatic that to the public the use of Dr. or Doctor, without more preceding or following, indicates a medical doctor and only a medical doctor. It is even more so when the context is, like in this case, an advertisement for dietary supplements. Additionally, compounding the deception is the presence in

some of the advertisements that a "U.S. Doctors Clinical" entity (owned by Tuong) distributes Arthro-7; the public and consumers will think, even more strongly, that many medical doctors endorse the product. Furthermore, upon information and belief, "Dr." Hahn has been paid substantial amounts of money by Supplement Defendants to endorse and promote Arthro-7, and Supplement Defendants have not disclosed such in the advertisements; *per se* deception. (FAC, ¶ 41).

The "Over 8 Million Bottles Sold!" advertising claim which appears on countless numbers of Defendants' advertisements, is another falsity. (FAC, ¶ 34; Joseph Decl., ¶ 67).

Since the Supplement Defendants have expended "substantial funds in an effort to [intentionally or negligently] deceive consumers and influence their purchasing decisions" this Court, like others, should presume that the consumers are, in fact, being deceived. *See Western Sugar Coop. v. Archer-Daniels-Midland Co.*, No. 11-CV-3473 (CBM) 2011 U.S. Dist. LEXIS 158250, at *20 (C.D.Cal. Oct. 21, 2011) (*citing U-Haul Int'l Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) ("The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded."). VBS Distribution is entitled to a presumption of deception based on the Supplement Defendants' use of literally false advertising claims.

## 2.   The Deceptive Advertisement Claims Are Material

The Advertisements misrepresent the ingredients, an inherent quality or characteristic of the product. *Supra, Pom Wonderful,* No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at *30 (C.D.Cal. July 17, 2008) (*citing Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242 (11th*

*Cir. 2002)).*[8] Furthermore, consumers shopping for dietary supplements are much more likely than not to be significantly influenced by the endorsements of medical doctors, and by the popularity of a product. All of the claims, separately, and in conjunction, are significant factors in a consumer's purchasing decision. *Beachbody, LLC v. Universal Nutrients, LLC,* No. CV 16-02015-R 2016 U.S. Dist. LEXIS 94097, at *10 (C.D. Cal. July 18, 2016).

### 3. Supplement Defendants Caused The Falsely Advertised Arthro-7 To Enter Interstate Commerce

Because Arthro-7 is advertised for sale and is sold on the internet (available globally) under the Advertisement, the Supplement Defendants caused the falsely advertised goods to enter interstate commerce. (Joseph Decl., ¶ 64).

### 4. VBS Distribution Has Been Or Is Likely To Be Injured As A Result

"[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989) (referring to the Lanham Act). VBS Distribution is competitor to the Supplement Defendants in the niche Vietnamese dietary supplement market with their competing product JN-7 Best. (Joseph Decl., ¶ 57-59). The products are even sold in the same stores. (*Id*). When consumers see the Advertisements either on the package or in various other media they are persuaded to purchase the product which is claimed to be more popular and recommended by doctors. (Joseph Decl., ¶ 68). This leads to VBS' loss of profits by diversion of sales. [9]

---

[8] The size and prominence of the Advertisements' false claims are important in determining materiality, and the comparative size of the false claims to every other element in the Advertisements makes them more prominent and thus likely to influence the purchasing decision. *Supra, Pom Wonderful,* No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426 (C.D.Cal. July 17, 2008) (defendant's placement of text in the nutrition label 3x larger than the rest of the nutrition information was material).

[9] It is also probable that because one product, Arthro-7, is perceived as popular and doctor recommended and a comparable product, JN-7, is not, consumers might

*Supra, Western Sugar Coop. v. Archer-Daniels-Midland Co.,* No. 11-CV-3473 (CBM), 2011 U.S. Dist. LEXIS 158250 (C.D.Cal. Oct. 21, 2011) (price erosion and lost profits are recognized injuries

## VI.   Injunctive Relief Should Be Granted

### 1.   VBS Will Continue To Suffer Irreparable Harm Absent Immediate Injunctive Relief

Absent an immediate injunction, VBS Television will continue suffering damage to its reputation and goodwill by way of, at minimum, consumers being unable to differentiate the Show from the Infringing Show, from the strong probability that consumers may come to wrongly believe that the two shows are associated, from believing the harassing phone calls come from VBS, from any negative perception of VBS originating therefrom, and from consumers wrongly believing Arthro-7, which has a questionable reputation, is associated or endorsed by VBS due to Show Defendants use of an identical trade dress (*See* FAC ¶¶ 64, 19; Dkt. 31 at 12-13). Such damage would be impossible to quantify. It is also ongoing, and will continue absent an injunction.

For trade dress, and more generally trademark, cases, irreparable harm has been repeatedly found where a plaintiff loses control over their business reputation, loses trade, and loses goodwill because of infringement. *See e.g. Maxim Integrated Prods., Inc. v. Quintana,* 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009); *see also Robinson v. Delicious Vinyl Records Inc.,* 2013 WL 3983014, at *7 (C.D. Cal. Aug. 1, 2013). Defendants have shown no sign or willingness to immediately cease their infringing conduct, and without an injunction they will not stop and VBS will continue to suffer irreparable harm in the form of damage to their reputation, loss of customers, loss of sales, loss of vendors and other business relationships. (FAC,

---

think that the comparable product is somehow inferior and the company that sells it is somehow inferior. The Advertisements are likely to have, or will, injure VBS Distribution's good will.

¶¶ 69, 71, 72; Joseph Decl., ¶¶ 52, 69-77 and seriatim) Additionally, customers may come to associate the Infringing Show with the Show. (See supporting declarations showing actual confusion). Such an association will greatly harm the strength of Plaintiffs' goodwill and will cause irreparable harm.

Courts applying California law have consistently confirmed that the harm suffered from the misappropriation of an employers' confidential and proprietary information is irreparable and presumed. *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-cv-01556-GEB-KJM, 2010 U.S. Dist. LEXIS 80608, at *17 (E.D. Cal. July 8, 2010). VBS Television has and will continue to suffer irreparable injury, absent a preliminary injunction, from Show Defendants' taking and use of their confidential and trade secret information, as VBS will be deprived of the value of their confidential and trade secret information in which significant time, money, and effort were invested.

VBS Television may never be able fully to ascertain or recoup lost customers, vendors, good will, and profits caused by Show Defendants misappropriation of its confidential and proprietary information. It would be impossible to parse out and assign specific money damages to each of Show Defendants' past, present, and future violations of Plaintiffs' statutory and common law rights related to the protection of its confidential and proprietary information.

Plaintiffs may also never be able to fully ascertain or recoup lost customers, lost potential customers, profits, and damaged good will caused by the Supplement Defendants' false advertising, and Show Defendants' use of the Infringing Show. Upon information and belief, Supplement Defendants are still making said false claims in their advertisements. A plaintiff need not prove actual loss or diversion of sales to satisfy this requirement. *Procter & Gamble Co. v. Ultreo, Inc*., 574 F. Supp. 2d 339, 348 (S.D.N.Y. 2008); *Coca-Cola Co. v. Tropicana Prods., Inc*., 690 F.2d 312, 316 (2d Cir. 1982).

### A.  Defendants' Intention And Pattern Of Behavior To Put VBS Out Of Business By Unlawful Means

Defendants' long and continuing pattern of behavior to unfairly put VBS out of business is continuing and will not stop absent an injunction. (Joseph Decl., ¶¶ 18, 40) The Show Defendants continue to use VBS' stolen trade secrets in conjunction with their Infringing Show, which is still mimicking everything VBS does in order to deceptively divert sales from VBS' customers. (FAC, ¶¶ 73-85; Joseph Decl., ¶¶ 18, 40, 43, 49; Huynh Decl.; Exhibit 10).

### 2.  The Balance Of Equities Strongly Favor VBS

In determining whether to issue an injunction, the court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted); *see also Garcia,* 766 F.3d at 933.

In trade dress infringement, "[n]umerous courts have recognized that the damage to goodwill cannot be adequately compensated by monetary damages." *See, e.g.,* 1 William E. Levin, Trade Dress Protection § 20:9 n.2 (2d ed. 2016) (citing authorities). The harm from trade dress infringement "is substantial and unlikely to be reparable by monetary damages alone, because speculation as to the amount of such lost sales, and the uncertain results of consumer confusion, represent unknown and incalculable damages." *Id.*  at 20-30.1 & n. 4 (citation for quotation omitted). "When the infringer, as in the case at bar, knowingly infringes upon another's trademark, then the court's equity analysis is **not** affected by any potential damage to the defendant's business resulting from the preliminary injunction. *E.g. Int'l Jensen, Inc. v. Metrosound USA, Inc.,* 4 F.3d 819, 827 (9th Cir. 1993); *Boldface Licensing + Branding v. By Lee Tillett, Inc.,* 940 F. Supp. 2d 1178, 1198 (C.D. Cal. 2013). "When a party adopts a course which it must have realized would create consumer confusion, that party cannot later complain that having to mend its ways will be too expensive." *Sunburst Products, Inc. v. Derrick*

*Law Co.*, Nos. 89-56025, 89-56113, 90-55194, 1991 U.S. App. LEXIS 352, at *18 (9th Cir. Jan. 9, 1991) (affirming preliminary injunction) (*quoting Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980)). Denying an injunction would reward the Defendants for their misconduct.

The damage caused by the use of VBS' trade secrets and confidential information by Show Defendants is immeasurable, and Show Defendants would suffer no harm other than that which, at this point, would be self-inflicted.

### 3.   An Injunction Is In the Public Interest

In the context of trademarks the public interest is often defined by the courts as the right of the public to not be deceived or confused. *E.g. CytoSport, Inc. v. Vital Pharms., Inc.,* 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009); *Internet Specialties W., Inc. v. Milon-DiGiorgio Enter., Inc.,* 559 F.3d 985, 993 (9th Cir. 2009). Thus, enjoining the  unauthorized use of the Shows trade dress is in the public interest. Furthermore, because VBS Television has demonstrated a likelihood of success on the merits of its trade dress infringement and unfair competition claims, the public interest weighs in favor of entering the preliminary injunction. *Vertos Med., Inc. v. Globus Med., Inc.*, No. C 09-1411 PJH, 2009 U.S. Dist. LEXIS 110463, at *33 (N.D. Cal. Nov. 6, 2009).

Because "there is a strong public interest in favor of protecting trade secrets,"[10] VBS has shown that the public interest favors injunctive relief. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S. Ct. 1879 (1974).

Courts, and legislatures, have recognized a compelling public interest in protecting consumers from false commercial advertisements. *E.g. Pom Wonderful LLC v. Purely Juice, Inc.,* No. CV-07-02633 CAS (JWJx), 2008 U.S. Dist. LEXIS 55426, at *43 (C.D. Cal. July 17, 2008) (*citing Kennedy Industries, Inc. v. Aparo,*

---

[10]  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, No. CV 01-00659 CBM (RCx), 2001 U.S. Dist. LEXIS 3248, at *16 (C.D. Cal. Feb. 2, 2001)

416 F. Supp.2d 311, 317 (E.D. Pa. 2005)). The public interest is in favor of enjoining Supplement Defendants' false advertisements.

## VII.  A Bond Is Not Required Or Should Be Minimal

The Ninth Circuit holds that district courts may dispense with the bond requirement found in Federal Rule of Civil Procedure 65(c) altogether in certain circumstances. For example, the court may dispense with the bond when "there is no realistic likelihood of harm to the defendants from enjoining his or her conduct." *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 910 (9th Cir. 2003)); *see also GoTo.com, Inc., v. Walt Disney Co.,* 202 F.3d 1199, 1211 (9th Cir. 2000) (saying that district courts have wide discretion when setting the amount of the bond). Moreover, when the plaintiff, as in this case, establishes a strong likelihood of success on the merits, the district court, in its discretion, may impose no bond at all. *Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).

## VIII.  Conclusion

In conclusion, for the reasons set forth in this Memo and the documents filed herewith, VBS has satisfied the elements for, and are entitled to, a preliminary injunction for each claim to prevent immediate and irreparable harm.

Respectfully submitted,

Dated:  December 19, 2016

LEVIN AND DICTEROW

By /s/ William E. Levin
William E. Levin
Attorneys for Plaintiff,
VBS DISTRIBUTION, INC. AND VBS
TELEVISION, INC.