# - EXHIBIT B -

- **20% commission** for the advertisements and sponsorship that she brought to the company. This commission will be paid on the 15th of each month and based on paid invoices.

5- **EXCLUSIVE EMPLOYMENT**: BICH TRAM's employment at VBS is an exclusive employment. As a result, while being employed by VBS, BICH TRAM will not work for any other companies or entities which have the same business.

6- **CONFIDENTIALITY**: BICH TRAM agreed not to use any VBS's confidential information regarding business strategy, technology, and customers gained through working at VBS for her own benefit or benefit of anyone else except the one of VBS.

7- **TERMINATION**: This employment agreement can be terminated by either party because of the following reasons:

- VBS did not honor the compensation package as agreed upon in this Agreement.
- BICH TRAM failed more than 6 times during this contract to reach an agreed quota of $3,300.00 gross income for VBS per auction session.
- BICH TRAM failed to show her willingness to dedicate her time and her effort to promote VBS' business.

8- **TERMINATION PROCEDURE**: It is mutually agreed that if for any reason BICH TRAM decides to leave VBS or be released by VBS, she agrees to comply to the following:

- Her salary and her commission generated by the auction programs will be terminated on the last day of her employment.
- In the case BICH TRAM decides to quit she must give a 2-week notice so that VBS can find a replacement.
- Returning all documents and properties of VBS.

9- **NO COURT PROCEEDING**: Any dispute in this Agreement will be solved through arbitration. No court proceeding allowed.

10-     This Agreement will be governed by the law of the State of California.

EMPLOYER                                EMPLOYEE

VBS TELEVISION, INC.                    TRAM HO

BY _____                _____

Date: 7/17/2015                         DATE 7/17/2015

```
 1      Q     ████████████████████████████████████
 2   ████████████████████████████████████████████
 3   ██████████████████████
 4      A     ████████████████████████
 5      Q     ████  ██████████████████████████  ████████
 6   ██████████████
 7      A     ████████████████████████████████████
 8      Q     ████  ██████████████████████████████████████
 9   ██████████████████████████
10      A     ████████████████████████████████████
11   ████
12      Q     ████  ██████████████████████████████████████
13   ████████████████████████████████████████████
14   ████████████████████████████████████████████
15   ██████████████████████████████████████  ████
16   ████████████████████████████████████████
17      A     ██████████████  ██████████████████████████
18   ████
19            MR. DO-KHANH:  ██████████████████████████
20   ████████████████████████████
21   BY MR. FRIESEN:
22      Q     How many bottles of Arthro-7 have you sold?
23      A     I don't remember.
24      Q     I'd like an estimate.
25      A     I don't remember.
```

- EXHIBIT 14 -

57

CENTEXT LEGAL SERVICES
855.CENTEXT

```
 1      Q    Well, I'm asking you for an estimate.
 2      A    I don't remember.
 3      Q    If you do not remember how many bottles were
 4   sold, then why do you put that over 8 million bottles
 5   have been sold on your packaging?
 6      A    Because I do have a computer.  The 8 million
 7   figure which I mention included from the -- also from
 8   the previous owner -- ownership.
 9      Q    Okay.  How many bottles did the previous owner
10   sell?
11      A    I don't remember.
12      Q    Again, you are the person that has been
13   designated to testify on these issues.  You have a legal
14   requirement to have researched and be prepared to answer
15   these questions.
16           Do you understand what I'm saying?
17      A    But I don't remember.
18      Q    Did you look at the deposition notice before
19   coming here today?
20      A    Yes.
21      Q    And did you read through the various questions
22   starting on Page 4 of the notice?
23      A    I did, but I could not be able to understand
24   completely.
25           MR. DO-KHANH:    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```

58

## Ms. Tram Ho, Vice President KVLA Inc.



- EXHIBIT 15 -

# EMPLOYMENT AGREEMENT

This is an Employment Agreement dated May 24, 2011 between VBS TELEVISION, INC. (hereinafter called VBS), the employer and MADALYNN HUYNH (hereinafter called MINH HUYNH), the employee.

It is mutually agreed that, as a result of employment, VBS and MINH HUYNH will adhere to the following terms and conditions:

1. Starting date of employment is May 24, 2011.

2. JOB DESCRIPTION: VBS expects MINH HUYNH to perform her duty as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. COMPENSATION: MINH HUYNH will receive a wage of ▮▮▮▮ hour.

4. VBS expects MINH HUYNH perform her above mentioned duties at the highest level of professionalism.

5. CONFIDENTIALITY: MINH HUYNH agrees not to use any VBS's confidential information regarding business strategy, technology, and customers gained through working at VBS for her own benefit or benefit of anyone else except of VBS.

6. The first 3 months of employment is a trial period. If during these three months MINH HUYNH shows a poor performance, VBS reserves the right to terminate her employment at a short notice.

7. It is mutually agreed that if for any reason MINH HUYNH decides to leave the company or be released by the company, she will comply to the following:
   - Returning all documents and properties of VBS.
   - Give the company 2 - weeks notice to find a replacement.

**- EXHIBIT 16 -**

8- Except for valid reasons, any party breaches any provision in this Agreement will be responsible for damages caused to the other party, including legal fees.

9- This agreement will be governed by the law of the State of California.

EMPLOYER

VBS TELEVISION, INC.

By _____

Date  5/24/2011

EMPLOYEE

MADALYNN HUYNH

_____

Date  5/24/2011