1
2
3
4
5          **UNITED STATES DISTRICT COURT**

6          **CENTRAL DISTRICT OF CALIFORNIA**

7          **SOUTHERN DIVISION**

8

| | |
|---|---|
| | ) **Case No.: SACV 16-01553-CJC(DFMx)** |
| **VBS DISTRIBUTION, INC., a California corporation, and VBS TELEVISION, INC., a California corporation,** | ) ) ) ) ) **ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **NUTIVITA LABORATORIES, INC., NUTIVITA, INC., US DOCTORS' CLINICAL, INC., ROBINSON PHARMA, INC., KVLA, INC., TUONG NGUYEN, TRAM HO, JENNY DO a/k/a NGOC NU,** | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## I.  INTRODUCTION

Plaintiffs VBS Distribution, Inc., and VBS Television, Inc., (collectively "VBS") bring this case against Defendants Nutivita Laboratories, Inc., Nutivita, Inc., US

Doctors' Clinical, Inc., Robinson Pharma, Inc., KVLA, Inc., Tuong Nguyen, Tram Ho, and Jenny Do a/k/a Ngoc Nu, alleging fourteen causes of action arising out of Defendants' sale of a nutritional supplement and production of a television program which VBS alleges infringe on their own nutritional supplement and television program. (*See* Dkt. 39 [Second Amended Complaint, hereinafter "SAC"].)  VBS seeks compensation, including punitive damages, and injunctive relief.  (*See id.* at Prayer for Relief.)  Before the Court is VBS' motion for a preliminary injunction. (Dkt. 35.)  For the following reasons, VBS' motion is DENIED.[1]

## II.  BACKGROUND

VBS allegedly "manufactures, markets, and distributes" the dietary supplement "JN-7 Best," which is estimated to have 10% of the market.  (SAC ¶ 24.)  Defendants Nutrivita Laboratories, Inc., Nutrivita, Inc., US Doctors' Clinical, Inc., Robinson Pharma, Inc., and Tuong Nguyen (collectively, the "Supplement Defendants") market "Arthro-7," a rival dietary supplement which has approximately 60% of the market.  (*Id.* ¶¶ 4–9; 24.)  VBS alleges various false claims made by the Supplement Defendants in marketing Arthro-7, including claiming that it is "100% natural herbal" even though it contains gelatin and collagen, inflating sales numbers, and failing to disclose payment to a purported endorsing doctor.  (*See id.* ¶¶ 42–54.)

In 2011, VBS created a commercial television live auction show named "DAU GIA TREN TRUYEN HINH" ("Fight Price on Television").  (*Id.* ¶ 29.)  "The Show is a live auction program, with unique identifying characteristics, which primarily auctions jewelry, particularly diamonds.  Some of these unique characteristics include the

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 23, 2017, at 1:30 p.m. is hereby vacated and off calendar.

following: a) the unique style and format of the show, b) its time slot and date selection, each week on alternate weekdays, from 5 to 7 p.m., on Tuesdays and Thursdays, c) the price range for its auctioned items, ranging from about $300 to $3000, d) its 'least to most expensive' format in which the least expensive items are sold first, ascending to the most expensive items at the end of the show, e) the length of the show, 2 hours, f) its focus on live TV auctions of jewelry, particularly diamonds, g) its carefully selected vendors, who appear on the show with the show's host, h) unique and proprietary camera angle and special lighting techniques developed by Plaintiffs using an Apple ipad tablet, [and] i) the number and selection of items sold, usually about 30 items." (*Id.* ¶ 29.) The show first aired on September 5, 2011. (*Id.* ¶ 31.) VBS owns a registered service mark with the US Patent and Trademark Office for the show, number 4,440,695, registered on November 26, 2013, and a registered copyright issued by the US Copyright Office, number PA1-921-488, issued on November 13, 2014. (*Id.* ¶¶ 30–31; *see also id.* Ex. 1 (service mark), *id.* Ex. 2 (copyright certificate of registration).) Through producing the show, VBS owns and possesses "unique and confidential lists of customers' names, addresses, [and] specific vendor contacts" which are "vital, necessary and critical to the success and profitability of the show." (*Id.* ¶ 38.)

Defendant Tram Ho was hired to be the co-host of VBS' show in April 2012, where she worked until spring 2016. (*Id.* ¶¶ 55–59.) She signed a confidentiality agreement with VBS which required her "to retain the confidentiality of, and not disclose, valuable trade secret information including, but not limited to lists, questionnaires, pricing guidelines, concepts, procedures, explanations and writings obtained or used by VBS Television, which if were made known to outsiders would cause substantial loss." (*Id.* ¶ 56.)

In spring 2016, VBS discovered Defendant Tram Ho "advertising on KVLA," VBS' competitor, for a show entitled "Diamond at a Surprise Low Price." (*Id.* ¶ 60.)

She was at that time still employed by VBS.  (*Id.* ¶ 60.)  According to VBS, the new show, which first broadcast on June 1, 2016, "is, in most respects and in overall format and appearance, a blatant copy" of VBS' show.  (*Id.* ¶¶ 61–62.)  Allegedly "[a]mong the areas of duplicity are the following: same hostess, same vendors (some), same unique style as provided by the same technician, same time slot of 5:00 pm–7:00 pm, but on Mondays, Wednesdays and Friday, whereas [VBS' show] is on Tuesdays and Thursdays, the least to most expensive format, the same auctioning of approximately 30 items each show, the content is virtually identical, and the price range of products is virtually identical ($300–$3,000)."  (*Id.* ¶ 65.)  VBS alleges that Defendant KVLA (with Jenny Do, Tram Ho, and Tuoung Nguyen collectively the "Show Defendants") "deliberately induced . . . both Tram Ho, and other desirable employees of VBS Television, to breach their contracts with VBS Television and to instead start to work for KVLA, and to produce and appear in [KVLA's show], and to bring proprietary and confidential information, and trade secrets, of VBS Television, to [KVLA's show] and to KVLA."  (*Id.* ¶ 62.)  Specifically, "[i]n direct violation of her contract and confidential relationship with the Plaintiffs, Tram Ho knowingly misappropriated, converted, and used the customer lists and data bases [sic] and other confidential information and trade secrets of VBS Television, and did not return such lists, data bases [sic], or other trade secrets to VBS Television as required" and she also recruited other VBS employees to KVLA.  (*Id.* ¶ 70.)  VBS claims that there is confusion among the public as to which companies and advertisers support which shows.  (*See id.* ¶¶ 67–69.)  KVLA advertises Arthro-7 on its show.  (*Id.* ¶ 24.)

There was also prior litigation in which Defendant Nutrivita Laboratories sued VBS over JN-7 Best infringing on Arthro-7.  (*See id.* ¶¶ 81–93 (discussing *Nutrivita Laboratories, Inc., v. VBS Distribution, Inc.*, *et al.*, 13-01635-CJC(DFMx)).)

VBS' proposed injunction restrains the Show Defendants from (1) accessing, misappropriating, or using VBS' confidential customer lists, vendor lists, marketing strategies, pricing, cost, profit margin, or sales information; (2) offering for sale or advertising in any medium any product or service to any person on VBS' customer list; (3) having Tram Ho appear on the Show, be involved in its promotion, or advertise the products offered on the Show or any similar show; (4) continuing to employ current or former VBS employees for two years (including Tram Ho); (5) using VBS' show trade dress, (6) continuing to offer, display, advertise, or provide the Show without changing its host, vendors, timeslot, duration, pricing format, number of items, price range, camera techniques; and (7) copying VBS' changes to its show.  (Dkt. 35-2 at 3–6.)  The injunction would also require Show Defendants to (8) identify and deliver within 72 hours all data, documents, and files containing VBS' customer list, vendor list, employee list, or marketing strategies, as well as the Show's customer list and prospective customer list.  (*Id.* at 6–7.)  Finally, the injunction would restrain and enjoin the Supplement Defendants from advertising Arthro-7 with "100% Natural," "100% Herbal," "100% Natural Herbal," and "Over 8 Million Sold," and require disclosure of the medical license of any doctor-endorsee as well as his or her affiliation with third parties and his or her compensation.  (*Id.* at 7.)

## III.  DISCUSSION

A preliminary injunction is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  It is "an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) ("[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'") (quoting *Winter*, 555 U.S. at 24).  "The grant or denial of a

motion for a preliminary injunction lies within the discretion of the district court." *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1429 (9th Cir. 1995).

In *Winter*, the Supreme Court held that a plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Ninth Circuit balances these "*Winter* factors" using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, *Winter* "requires the plaintiff to make a showing on *all* four prongs." *Id.* at 1135 (emphasis added). The Court considers each of the four *Winter* factors in turn.

## A.  Likelihood of Success on the Merits

*1. Trade Dress.*  VBS' success on its unfair competition and trade dress infringement causes of action depends on the presence of a valid, non-functional trade dress.  As noted above, VBS defines their trade dress in terms of a set of parameters including timeslot, price range, length of show, camera angle and lighting techniques, and auction format.  (*See* SAC ¶ 29.)  The Court must "look at the overall visual impression that the combination and arrangement of individual elements create." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1130 (9th Cir. 2016).  However, the list of elements all go to the overall configuration of the show and VBS does not present sufficient reliable evidence that they are likely to prevail on the merits that this configuration is non-functional.  The fact that there were alternative functional choices does not transform functional choices into protectable trade dress.  (*Cf.* Dkt. 35-3 ¶¶ 23–30.)  Therefore, VBS has not met its burden of demonstrating likelihood of success on the merits of their trade dress and unfair competition claims.

2. *Trade Secrets.*  VBS' success on its trade secrets claims depends on the purported trade secret not being readily accessible to a reasonably diligent competitor. *See, e.g.*, *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1332 (9th Cir. 1980) ("The conclusion that particular information constitutes a protectible trade secret because it is confidential requires examining a number of factors. . . . Perhaps the most important consideration is whether the information is readily accessible to a reasonably diligent competitor or salesman.").  The only concrete trade secret that VBS alleges Tram Ho misappropriated was VBS' customer lists and databases.  (SAC ¶ 70; *cf.* Dkt. 35-3 ¶ 35 (listing other information VBS collects and considers confidential).)  Notably, customer lists *may* constitute trade secrets, but only if they contain information that is not readily accessible.  *See Hollingsworth*, 622 F.2d at 1332–34.  VBS has provided no indication that their customer lists, rather than their databases broadly, contain non-readily accessible information.  (*See* Dkt. 35-3 ¶ 35.)  Accordingly, they have not met their burden of demonstrating likelihood of success on the merits on their trade secrets claims.

3. *False Advertising.*  VBS' success on its false advertising claims depends on the presence of a false or misleading claim.  *See People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967); 15 U.S.C. § 1125(a)(1).  VBS claims that the following statements constitute false advertising: that Arthro-7 has "100% herbal ingredients," is "100% natural," is "100% natural herbal," has "Over 8 Million Bottles Sold!" and is "Doctor Recommended."  (Dkt. 38-1 at 17.)  VBS argues that the herbal claim is false because Arthro-7 includes collagen and gelatin, which derive from animals.  (*Id.* at 17–18.)  Defendants claim that "the scope of the definition of herbal in the dietary supplement industry is often extended to include minerals, shells, and certain animal products."  (Dkt. 40 at 19.)  While both VBS and Defendants fail to cite any support for their statements, (*see id.*; Dkt. 38-1 at 17–18), VBS bears the burden and accordingly has not met its burden of demonstrating success on the merits of the false advertising claim.

//

VBS argues that Defendant's claim that Arthro-7 is "Doctor Recommended" is false because the individual in question has a degree in podiatric medicine, which is a D.P.M. rather than an M.D.  (Dkt. 38-1 at 18–19.  VBS states it "is axiomatic that to the public the use of Dr. or Doctor, without more preceding or following, indicates a medical doctor and only a medical doctor."  (*Id.* at 18.)  That *ipse dixit* statement, given the individual is board-certified, (*see* Dkt. 40 at 19), does not suffice to demonstrate likelihood of success on the merits of the false advertising claim.

Finally, Defendant's claim that 8 million bottles of Arthro-7 have been sold, VBS argues, is false because Defendants only sold 89,896 bottles between 2009 and 2015. (Dkt. 35-3 ¶ 67.)  However, Arthro-7 has been on the market since 1998.  (Dkt. 40 at 19.) While it appears plausible that the 8 Million Bottles claim is false, VBS has not met its burden of producing sufficient evidence for this Court to hold that success on the merits is likely.

The Court finds that VBS has not met its burden of demonstrating likelihood of success on the merits of any of its claims, which weighs strongly against granting a preliminary injunction.

**B.  Irreparable Harm**

Courts may not presume that a plaintiff will face irreparable harm.  *See Cottrell*, 632 F.3d at 1135 (*Winter* "requires the plaintiff to make a showing on all four prongs"); *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 494 (9th Cir. 2010) ("[W]e do not presume irreparable harm; rather, applying the *Winter* standard, we ask whether the failure to issue an injunction "likely" would

cause irreparable harm."); *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248–51(9th Cir. 2013) (explaining that *Winter* and related Supreme Court cases discredit the Ninth Circuit's prior practice of presuming irreparable harm when a plaintiff was likely to succeed on the merits). Rather, "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Cottrell*, 632 F.3d at 1131 (emphasis in original) (citing *Winter*, 555 U.S. at 21–22). A preliminary injunction "should not be granted if irreparable harm is absent and there exists an adequate remedy at law." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, No. CV 11-2113-ODW FMOX, 2012 WL 2529404, at *3 (C.D. Cal. July 2, 2012), *aff'd*, 520 F. App'x 505 (9th Cir. 2013). "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enterprises*, 736 F.3d at 1251; *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.") (emphasis in original).

VBS argues that it will suffer irreparable harm in the form of "damage to its reputation and goodwill. (Dkt. 38-1 at 21.) Those harms, however, are not irreparable or incapable of being compensated by damages.

The Ninth Circuit has consistently held that purely economic losses do not constitute *irreparable* harm and can be adequately compensated by damages. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (finding that "diminution of revenues, a diminution of the market value of plaintiff's property and the loss of substantial goodwill normally attached to a profitable enterprise" did not constitute irreparable harm because it could be remedied by a damage award); *California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of*

*S. California, Inc.*, 132 S. Ct. 1204 (2012) ("We note also that Supreme Court case law and some of our own cases clarify that economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award.").

While loss of goodwill and reputation can in some circumstances constitute irreparable harm, it must be supported by sufficient evidence demonstrating that such loss is *likely*. *Herb Reed Enterprises*, 736 F.3d at 1250; *Link v. Springut*, No. LACV1405695-JAK-JEMX, 2015 WL 12426122, at *10 (C.D. Cal. Feb. 26, 2015). VBS has offered only the self-serving declaration of its CEO stating that it will lose goodwill because of consumer confusion. (Dkt. 35-3 ¶¶ 69–74.) These types of "unsupported and conclusory statement[s]" are purely speculative, and therefore are insufficient to demonstrate irreparable harm. *Williams*, 2015 WL 4694075, at *2. To the extent VBS' CEO refers to *continuing* misappropriation of its trade secrets, (Dkt. 35-3 ¶ 74), VBS has wholly failed to present the Court with any details that may justify injunctive relief.

Finally, VBS' claim that its damages will be incalculable because it "would be impossible to parse out and assign specific monetary damages to each . . . violation" is unconvincing. (Dkt. 38-1 at 22; *see also id.* ("VBS . . . may never be able to fully ascertain or recoup lost customers, vendors, good will, and profits.").) The fact that VBS' case is *complex* does not *per se* mean that the harm is incalculable.

In sum, all of VBS' claims of harm either concern economic harm, which is capable of compensation by money damages, or are impermissibly speculative. This factor, accordingly, weighs against granting a preliminary injunction.

## C.  Balance of Equities

"When balancing the hardships, a court must take into account the effect that granting or denying injunctive relief would have on the parties." *Link*, 2015 WL 12426122, at *9 (citing *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 543 (1987)).   Here, both parties claim to face substantial economic loss.  VBS claims that it is facing a "direct threat" to its business' survival due to Defendants' actions.  (Dkt. 35-3 ¶ 72.)  Defendants claim that VBS is "essentially seek[ing] to cease Defendants' relevant business operations" and that they "will be effectively forced to cease the sale of Arthro-7 and Defendant Tram Ho will effectively be out of a job, which would cause her great financial hardship."  (Dkt. 40 at 3, 21.)  Notably, VBS has not substantiated its claims of imminent business demise.  In contrast, the terms of the proposed injunction would have significant effect on Defendants' business by essentially shutting down their show, mandating the termination of employees, and prohibiting much of the Arthro-7 marketing.  (*See* Dkt. 35-2.)  That outweighs the speculative harm that VBS argues it will face in the absence of one; the Court finds that this factor weighs against granting a preliminary injunction.

## D.  Public Interest

This factor requires the Court to find that the public interest served by granting the preliminary injunction "outweigh other public interests that cut in favor of not issuing the injunction." *Cottrell*, 632 F.3d at 1138.  "The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Cal. Pharmacists Ass'n v. Maxwell–Jolly*, 596 F.3d 1098, 1114–15 (9th Cir. 2010) (internal quotations omitted).

Here, VBS claims that the preliminary injunction will serve the public's interest by preventing consumer confusion and protecting consumers from false advertising.  (Dkt. 38-1 at 24–25.)  However, VBS has not presented evidence of actual consumer confusion

and, as discussed above, has not met their burden of demonstrating that the advertising is likely false.  In contrast, granting the injunction will impair access to an admittedly popular supplement and cancel a popular television show.  Accordingly, this factor is at best neutral.

## IV.  CONCLUSION

VBS has not met its high burden of demonstrating entitlement to the extraordinary remedy of a preliminary injunction.  Accordingly, VBS' motion for a preliminary injunction is DENIED.

DATED:     January 19, 2017

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE