# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

VBS DISTRIBUTION, INC., and VBS TELEVISION, INC.,

    Plaintiffs,

    v.

NUTIVITA LABORATORIES, INC., NUTIVITA, INC., US DOCTORS' CLINICAL, INC., ROBINSON PHARMA, INC., KVLA, INC., TUONG NGUYEN, TRAM HO, JENNY DO a/k/a NGOC NU,

    Defendants.

---

TRAM HO

    Counterclaimant,

    v.

REVEREND JOSEPH C. NGUYEN, THE ROMAN CATHOLIC DIOCESE OF ORANGE, VBS DISTRIBUTION, INC., and VBS TELEVISION, INC.,

    Counter-defendants.

Case No.: SACV 16-01553-CJC(DFMx)

**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

## I. INTRODUCTION

On December 30, 2016, Plaintiffs filed their Third Amended Complaint.[1] (Dkt. 39 [hereinafter "TAC"].) On January 13, 2017, Defendant Tram Ho filed counterclaims against Plaintiffs and non-parties Joseph C. Nguyen and The Roman Catholic Diocese of Orange. (Dkt. 45.) Before the Court is Plaintiffs' motion to dismiss Tram Ho's counterclaims. (Dkt. 57.) For the following reasons, Plaintiff's motion is GRANTED and Tram Ho's counterclaims are DISMISSED.[2]

## II. BACKGROUND

Plaintiffs VBS Television, Inc., and VBS Distribution, Inc.'s, allegations against Defendants have been thoroughly explicated elsewhere. (*See, e.g.*, Dkt. 33 at 2–6.) As relevant here, Plaintiffs' operative TAC alleges that Tram Ho applied for a job with VBS Television on April 19, 2012. (TAC ¶ 55.) She was hired as a host for VBS Television's diamond auction show on August 13, 2012. (*Id.*) Her work for VBS Television was memorialized in agreements which, *inter alia*, stated that she agreed that "all information provided by the Company, including but not limited to[] customer lists, questionnaires, pricing guidelines, concepts, procedures, explanations, and writings . . . shall be confidential proprietary information. . . . [Tram Ho] agrees to preserve and protect the confidentiality of the proprietary information both during and after the term of the Agreement." (Dkt. 39 Ex. 8 (2012–2013 independent contractor agreement); *see also id.* Ex. 9 (2013–2015 employment contract containing similar language); *id.* Ex. 13 (2015–

---

[1] The filing itself is titled the "Second Amended Complaint," which is accurate as it is replacing the "First Amended Complaint." (*See* Dkts. 17, 39.) However, the docket entry is "Third Amended Complaint." For the ease of readers locating the filing in question, the Court will refer to the operative compliant as the TAC throughout this Order.

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 13, 2017, at 1:30 p.m. is hereby vacated and off calendar.

2016 employment contract containing similar language).)  The agreements also described her job as including responsibility for soliciting sponsorship and advertisements for VBS Television.  (*See id.*)

Plaintiffs allege that "[s]ometime during 2015, Tram Ho's employment performance was so poor the [*sic*] VBS Television considered terminating her employment agreement, but instead renegotiated with her in an effort to salvage the situation. . . . In 2016, VBS agreed to re-negotiate Tram [Ho]'s compensation package after a review period of six months.  But when that time came, Tram [Ho] just walked away.  She did not tell VBS why and VBS did not know why. . . . To the great surprise of the Plaintiffs, during the spring of 2016, they saw Tram Ho advertising [a competitor show] on KVLA, the rival, competitor, television station to VBS Television. . . . On or about June 1st, 2016, [KVLA] aired their first episode" of their show, which Plaintiffs allege is a "blatant copy" of Plaintiffs' show.  (TAC ¶¶ 59–62.)  Plaintiffs allege that Tram Ho had at some point agreed to collaborate with their competitors for monetary gain, and did so by giving VBS Television's confidential information, including customer and advertiser lists, to Defendants.  (*Id.* ¶¶ 63, 70–71.)  Based on these allegations, Plaintiffs bring twelve causes of action against Tram Ho: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125, (*id.* ¶¶ 109–13); (2) false advertising under the Lanham Act, 15 U.S.C. § 1125, (*id.* ¶¶ 114–18); (3) unfair competition, false advertising, and unfair and deceptive trade practices under California Business & Professions Code §§ 17500 *et seq.*, (*id.* ¶¶ 119–20); (4) theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 *et seq.*, (*id.* ¶¶ 121–22); (5) theft of trade secrets under the California Uniform Trade Secrets Act, California Civil Code §§ 3426 *et seq.*, (*id.* ¶¶123–24); (6) copyright infringement under 17 U.S.C. §§ 101 *et seq.*, (*id.* ¶¶125–29); (7) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125, (*id.* ¶¶ 130–31); (8) trade dress infringement under California law, (*id.* ¶¶ 132–35); (9) interference with contractual relationships under California law, (*id.* ¶¶ 140–41); (10) interference with

prospective economic advantage under California law, (*id.* ¶¶142–43); (11) civil conspiracy under California law, (*id.* ¶¶ 144–45); and (12) breach of fiduciary duties of trust, confidence, and loyalty, (*id.* ¶¶ 146–47).

Tram Ho's counterclaims are brought against Plaintiffs, Joseph Nguyen (Plaintiffs' founder, CEO, and Chairman who is also a Catholic priest assigned to Saint Anne Catholic Church), and The Roman Catholic Diocese of Orange. (Dkt. 45 ¶¶ 2–8.) The vast majority of Tram Ho's allegations are against Reverend Nguyen. She alleges that he operates VBS Television and VBS distribution "through a long-term female partner, Thu Thi Nguyen," (*id.* ¶ 16), and that he described working for VBS Television to her as "an opportunity for her to perform good deeds for the Catholic Church," (*id.* ¶ 19). Tram Ho claims that around August 2013, she was employed by VBS Television on a full-time basis as its Vice President of Marketing. (*Id.* ¶ 20.) From then on, her relationship with Reverend Nguyen allegedly changed—he "began to express fondness and affection" toward her, then "began asking [Tram Ho] out for drinks to discuss work and religion," then began flirting at these outings, which led to "sexually suggestive talk, and hugs and kisses," then his "hands would roam, touching and squeezing her arms and thighs," and then, as a result of her rejections, "he would take his advances further with smothering her with kisses on the mouth, and attempting to fondle and grope her breasts and genital areas." (*Id.* ¶¶ 21, 22, 24.) Tram Ho claims that Reverend Nguyen "justified his sexual advances by explaining . . . that although he was a Catholic priest, he had sexual desires and needs like any other man. [He] explained that he held a special role in the Catholic Church because of his entrepreneurial abilities . . . . [He] likened his sexual desires to that of the needs of the Catholic Church to generate income—both being the realities of survival. Moreover, [he] counseled [her] that everyone sinned, but that confessions would absolve him and her of their sins." (*Id.* ¶ 25.)

According to Tram Ho, Reverend Nguyen "made clear to [her] that her employment was conditioned on his personal relationship with her continuing inside and outside of the office." (*Id.* ¶ 26.) His actions culminated in asking Tram Ho to have sex with him, and her refusal "frustrated as well as further emboldened" him, such that he "would now not wait for drinks and extended his sexual advances directly at the work place by calling her into his office, locking the door, cornering her, and attempt[ing] to grope and fondle her." (*Id.* ¶ 27.) Tram Ho claims that "whenever she pushed back on his sexual advances or [he] was frustrated with her refusal to have sex with him, [he] would look for ways to complain about her job performance or threaten to let her go or reduce her compensation." (*Id.* ¶ 29.)

Tram Ho's counterclaims describe one incident in detail in which Reverend Nguyen allegedly forced himself on her after hours in the office. (*See id.* ¶ 28.) That incident, presumably around September 2015, allegedly ended in Reverend Nguyen's humiliation, after which he unilaterally downgraded her compensation package for six months. (*Id.* ¶ 31.) Six months later, in March 2016, he allegedly asked her to "have drinks with him to discuss her compensation. It was clear to [her] that he wanted sex in exchange for returning her to her previously agreed upon compensation agreement. She turned him down, and despite the fact that there [were] still four months remaining on her employment contract," he terminated her employment. (*Id.* ¶ 32.)

According to Tram Ho, VBS Television and VBS Distribution did not have a human resources department or anyone designated for handling personnel issues during her time there. (*Id.* ¶ 33.) "Nor did they have forms or policies in place that would enable [her] to report [Reverend Nguyen's] sexual harassment and retaliation. . . . Moreover, . . . she felt it futile to report the inappropriate conduct . . . to anyone in the companies or to the Catholic Church" given that they allegedly knew about his "atypical" activities and "supported and ratified such conduct." (*Id.* ¶ 33–34.)

//

Based on these allegations, Tram Ho brings nine causes of action: (1) sexual battery against all Counter-defendants, (*id.* ¶¶ 34–38); (2) negligent hiring, supervision and retention against The Roman Catholic Diocese of Orange, (*id.* ¶¶ 39–42); (3) vicarious liability against The Roman Catholic Diocese of Orange, (*id.* ¶¶ 43–45); (4) sexual harassment against Reverend Nguyen, VBS Television, and VBS Distribution, (*id.* ¶¶ 46–52); (5) retaliation against Reverend Nguyen, VBS Television, and VBS Distribution, (*id.* ¶¶ 53–59); (6) intentional infliction of emotional distress against Reverend Nguyen, VBS Television, and VBS Distribution, (*id.* ¶¶ 60–63); (7) negligent infliction of emotional distress against Reverend Nguyen, VBS Television, and VBS Distribution, (*id.* ¶¶ 64–67); (8) discharge in violation of public policy against Reverend Nguyen, VBS Television, and VBS Distribution, (*id.* ¶¶ 68–74); and (9) breach of contract against VBS Television, (*id.* ¶¶ 75–82).  All of these claims are brought under California law; Tram Ho alleges jurisdiction on the basis of 28 U.S.C. § 1367, (*id.* ¶ 9), which grants federal courts supplemental jurisdiction "over all other claims that are so related to claims in the action within [a court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## III. DISCUSSION

Federal Rule of Civil Procedure 13 delineates two types of counterclaims: compulsory and permissive.  Compulsory counterclaims are those that, *inter alia*, arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A).  The Ninth Circuit applies "the logical relationship test" to determine if a counterclaim is compulsory.  *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195–96 (9th Cir. 2005)).  "A logical relationship exists when the counterclaim arises

from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pegasus Gold Corp.*, 394 F.3d at 1196.  The traditional rule is that federal courts have supplemental jurisdiction over compulsory counterclaims, since a plaintiff would otherwise lose his or her opportunity to be heard on that claim.  *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 468 n.1 (1974).

Permissive counterclaims, in contrast, are all other claims against the opposing party.  Fed. R. Civ. P. 13(b).  Federal courts do not have jurisdiction over permissive counterclaims absent an independent basis for federal subject matter jurisdiction.  *See Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 149 F. Supp. 3d 1188, 1207 n.9 (E.D. Cal. 2015); *Horton v. Calvary Portfolio Servs., LLC*, 301 F.R.D. 547, 550 (S.D. Cal. 2014); *Martin v. Law Offices of John F. Edwards*, 262 F.R.D. 534, 536–37 (S.D. Cal. 2009); *Taylor v. Bryant, Inc.*, 275 F. Supp. 2d 1305, 1306–07 (D. Nev. 2003); *but see Elements Spirits, Inc. v. Iconic Brands, Inc.*, No. CV 15-02692 DDP (AGRx), 2015 WL 5470297, at *4 (C.D. Cal. Sep. 17, 2015) ("The Ninth Circuit has yet to express an opinion on whether permissive counterclaims require an independent jurisdictional basis beyond [§ 1367's] 'same case and controversy' requirement.").

Tram Ho's counterclaims are permissive, not compulsory.  The vast majority of the facts relevant to Plaintiffs' case date from March 2016, including how Defendants contacted Tram Ho (who contacted whom, at what time, and what was discussed), whether Tram Ho took information from Plaintiffs, whether such information breached her contract in effect at that time, the extent to which KVLA's show is similar to Plaintiffs' show, the way in which Tram Ho and the other Defendants advertised their show, and quantifying the impact of KVLA's show on Plaintiffs' show.  In contrast, Tram Ho's counterclaims rest on facts alleged to have occurred at some point between

August 2012 and, in large part, October 2015. The vast majority of those facts, furthermore, implicate only Reverend Nguyen and Tram Ho—there is no allegation that Tram Ho discussed his conduct with others or that others were aware of the conduct. Finally, Tram Ho's counterclaims also implicate complicated questions regarding the nature of Reverend Nguyen's relationship with The Roman Catholic Diocese of Orange and the relationship between Plaintiffs and the Diocese—and those questions are wholly irrelevant to resolving Plaintiffs' claims. With such disparate factual bases, the Court must conclude that the counterclaims do not arise from the same transaction or occurrence as Plaintiffs' claims, and they do not constitute a single case or controversy.

Tram Ho argues that because the TAC and her counterclaims allege some of the same facts—namely, her hiring, her employment performance, and her separation from employment—her counterclaims are compulsory. (*See* Dkt. 60 at 5.) While the facts she relies on in the TAC provide useful context, Plaintiffs' claims do not rely on them. Plaintiffs expressly disclaim any claims based on their employment contract with Tram Ho, (TAC ¶ 56), which Tram Ho has admitted are being arbitrated separately, (Dkt. 44 ¶ 56). Similarly, Tram Ho's counterclaims do not rely at all on her initial hiring, (*see* Dkt. 45 ¶¶ 20–21), mention her work performance only in passing (and do not rely on it in her causes of action), (*see id.* ¶ 29), and six of her claims completely ignore her alleged termination, (*see id.* ¶¶ 34–52, 60–67). Of the three counterclaims that mention her termination, two of them, discharge in violation of public policy and breach of contract, (*id.* ¶¶ 68–82), are precisely akin to the claims Plaintiffs disclaim (not to mention their being arbitrated concurrently).

The third termination-based counterclaim is for retaliation pursuant to California Labor Code Section 1102.5(b), (Dkt. 45 ¶¶ 53–59), which prohibits retaliation against an employee for disclosing information "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation

or noncompliance" with the law, Cal. Labor Code § 1102.5(b). Tram Ho claims that her rejecting Reverend Nguyen's advances constitutes a disclosure within the meaning of Section 1102.5(b), since Reverent Nguyen was her supervisor. (Dkt. 45 ¶¶ 55–56 (Rejecting his advances "was [Tram Ho's] clear message . . . that she would not subject herself to any further sexual harassment by him and a request that he refrain from further improper sexual harassment. In response to [Tram Ho's] exercise of her right to be free of sexual harassment . . . which was also her demand that [he] refrain from further sexual harassment of her, [Plaintiffs and Reverend Nguyen] terminated her employment.").) Common sense and the statutory text teaches that this whistleblower protection statute protects employees who suffer adverse employment actions because they *disclose* unlawful actions to their employers or a government entity. (*See* Cal. Labor Code § 1102.5(b) ("An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for *disclosing* information, or because the employer believes that the employee *disclosed* or may *disclose* information . . . .").) Tram Ho rejecting Reverend Nguyen's advances did not *disclose* to him previously unknown legal violations. Therefore, in addition to relying on facts tangentially related to Plaintiffs' claims, this counterclaim must be dismissed because Tram Ho's allegations do not come within Section 1102.5(b).

Tram Ho's allegations are deeply concerning. But this Court is a court of limited jurisdiction. All of Tram Ho's counterclaims are based on California law, and the parties are not diverse. (*See* Dkt. 45.) Tram Ho's counterclaims lack an independent jurisdictional basis and accordingly must be DISMISSED.

//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss is GRANTED.

DATED:     March 1, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE