R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong CA Bar No. 284,946
wong@trojanlawoffices.com
Hee Jae J. Yoon CA Bar No. 298,925
yoon@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-691-1086

Daniel Do-Khanh (SBN 195323)
daniel@ndklaw.com
Anthony B. Cartee (SBN 248721)
acartee@ac-legal.com
NG DO-KHANH, PC
340 Bristol Street, 6th Floor
Costa Mesa, CA 92626
Telephone: (949) 748-8338
Facsimile: (949) 334-1214

Attorneys for Defendants,
ROBINSON PHARMA, INC.; DOCTOR'S
CLINICAL, INC., d/b/a U.S. Doctor's
Clinical; NUTRIVITA LABORATORIES,
INC.; KVLA, INC.; TUONG NGUYEN;
TRAM HO; JENNY DO a/k/a NGOC NU

TROJAN LAW OFFICES
Beverly Hills

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBS DISTRIBUTION, INC., *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> NUTRIVITA LABORATORIES, INC., *et al*., <br><br> Defendants. | CASE NO. 8:16-CV-01553-CJC(DFMx) <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTON FOR JUDGMENT ON THE PLEADINGS** <br><br><br> Date: May 14, 2018 <br> Time: 1:30 p.m. <br> Courtroom: 9B <br> Ronald Reagan Federal Building <br> 411 W. 4th St., Santa Ana, CA <br><br> **The Hon. Cormac J. Carney** |

# Table of Contents

**PAGE**

I.   INTRODUCTION ........................................................1

II.  STATEMENT OF FACTS ...........................................3

A.   Brief Overview of the Parties, the Claims, and Background Facts ................................................3

B.   Procedural Facts ..........................................................4

C.   Deficiencies in the Second Amended Complaint (as to Copyright) ..................................................5

III. ARGUMENTS ...........................................................6

A.   The Standard for Motion for Judgment on the Pleadings ..................6

B.   Judgment on Plaintiffs' Claim for Breach of Fiduciary Duty Against Tram Ho ........................................6

1.   Law on Fiduciary Duty ..............................................7

2.   The SAC Fails to Allege Facts to Show Tram Ho Owed VBS-TV Any Fiduciary Duty.........................8

a.   No Fiduciary Duty Based on Relationship.....................8

b.   No Confidentiality Provisions Imposed a Fiduciary Duty on Tram Ho.............................9

3.   Breach of Fiduciary Duty Claim Is Superseded By The Trade Secret Claim .........................10

C.   Judgment on Plaintiffs' Claim for Civil Conspiracy ........................10

D.   Judgment on Plaintiffs' Antitrust Claim.............................11

E.   Judgment on Plaintiffs' Claim of Interference with Contractual Relationships .................................13

TROJAN LAW OFFICES
BEVERLY HILLS

-i-

TROJAN LAW OFFICES
BEVERLY HILLS

1.     Judgment on the Pleadings Is Proper as to Plaintiffs' Claim of Interference with Contractual Relationships as to Employees .................................. 14

2.     Judgement on the Pleadings as to Plaintiffs' Claim of Interference with Contractual Relationships as to Vendors "Star Jewelry" and "Lam" ..................................... 15

F.    Judgment on Plaintiffs' Claim of Interference with Prospective Economic Advantage Claim ......................................... 16

1.     Law on Intentional Interference with Prospective Economic Relations ................................................ 16

2.     Plaintiffs Fail to Allege Intentional Interference with Prospective Economic Relationship as to the Vendors ..................................................................... 17

G.    Judgment on Plaintiffs' Lanham Act False Advertising Claim as to the Show Defendants ....................................... 18

1.     Law of Lanham Act False Advertising ................................... 19

2.     No False Advertising of the TV Shows ................................... 19

H.    Judgment on Plaintiffs' Unfair Competition Claims ........................ 20

1.     Plaintiffs' Unfair Competition Based on California Common Law as to All Defendants ........................................ 20

2.     Plaintiffs' Unfair Competition Based on California Common Law as to the Supplement Defendants .................... 21

IV.    CONCLUSION ........................................................................ 22

# Table of Authorities

**Cases**                                                                                          **Pages**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) ................................................................ 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................. 6

*Bank of the W. v. Superior Court,*
    2 Cal. 4th 1254, 833 P.2d 545 (1992) ...................................... 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................. 6

*City of Hope Nat. Med. Ctr. v. Genentech, Inc.,*
    43 Cal. 4th 375, 181 P.3d 142 (2008) ...................................... 7

*City Solutions, Inc. v. Clear Channel Communs., Inc.,*
    201 F. Supp. 2d 1035 (N.D.Cal.2002) ..................................... 8, 9

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal. 3d 197, 673 P.2d 660 (1983) ........................................ 7

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984) ................................................................ 12

*CRST Van Expedited v. Werner Enter., Inc.,*
    479 F.3d 1099 (9th Cir. 2007) .............................................. 16, 17

*Fleming v. Pickard,*
    581 F.3d 922 (9th Cir. 2009) ..................................................... 6

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services,*
    83 Cal.App.4th 409, 99 Cal.Rptr.2d 665 (2000) ...................... 8-9

*Goodworth Holdings Inc. v. Suh,*
    239 F. Supp. 2d 947 (ND Cal. 2002) ..................................... 8, 9

TROJAN LAW OFFICES
BEVERLY HILLS

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir. 1989)...................................................................6

*I-CA Enters., Inc. v. Palram Americas, Inc.,*
    235 Cal. App. 4th 257 (2015)...............................................................10

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.,*
    407 F.3d 1027 (9th Cir. 2005)..............................................................12

*Kirschner Brothers Oil, Inc. v. Natomas Co.,*
    185 Cal. App. 3d 784, 229 Cal. Rptr. 899 (Ct. App. 1986)...........................7

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134, 63 P.3d 937 (2003).................................................17

*Les Fields/C.C.H.I. Ins. Servs. v. Hines,*
    No. 15-CV-03728-MEJ,
    2016 WL 6873459 (N.D. Cal. Nov. 22, 2016) ....................................10-11

*Los Defensores, Inc. v. Gomez,*
    223 Cal. App. 4th 377, 166 Cal. Rptr. 3d 899 (2014)................................21

*Mattel, Inc. v. MGA Entertainment, Inc.,*
    782 F. Supp. 2d 911 (C.D. Cal. 2011).............................................7, 10

*Odorizzi v. Bloomfield Sch. Dist.,*
    246 Cal. App. 2d 123 (1966)................................................................9

*Pellegrini v. Weiss,*
    165 Cal.App.4th 515, 81 Cal.Rptr.3d 387 (2008).......................................7

*PMC, Inc. v. Saban Entm't, Inc.,*
    45 Cal. App. 4th 579, 52 Cal. Rptr. 2d 877 (1996)...................................15

*Quelimane Co. v. Stewart Title Guar. Co.,*
    19 Cal. 4th 26, 960 P.2d 513 (1998) ...................................................16

*Rice v. Fox Broadcasting Co.,*
    330 F.3d 1170 (9th Cir. 2003)............................................................19

TROJAN LAW OFFICES
BEVERLY HILLS

*San Jose Construction, Inc. v. S.B.C.C., Inc.,*
    155 Cal.App.4th 1528 (2007)........................................................................17

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997)....................................................................19

*Trumpet Vine Invs. N. v. Union Capital Partners I, Inc.,*
    92 F.3d 1110 (11th Cir.1996).......................................................................9

*Wolf v. Superior Court,*
    107 Cal.App.4th 25, 130 Cal.Rptr.2d 860 (2003)..........................................7

*Worldvision Enterprises, Inc. v. American Broadcasting Cos., Inc.,*
    142 Cal.App.3d 589, 191 Cal.Rptr. 148 (1983).............................................8

**Codes, Rules, & Statutes**        **PAGE**

Cal. & Bus. Code § 17200 .............................................................................20, 21

Rule 12(b)(6) ........................................................................................................4

TROJAN LAW OFFICES
BEVERLY HILLS

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Nutrivita Laboratories, Inc. ("Nutrivita Labs"), Nutrivita, Inc. ("Nutrivita Inc."), US Doctors Clinical, Inc. ("USDC"), Robinson Pharma, Inc. ("Robinson Pharma"), Tuong "Tom" Nguyen, KVLA, Inc. ("KVLA"), Tram Ho, and Jenny Do (collectively, "Defendants") move for partial judgment on the pleadings as to Plaintiffs VBS Distribution, Inc. ("VBS-DIST") and VBS Television, Inc.'s (VBS-TV) (collectively, "Plaintiffs") claims of: (1) breach of fiduciary duty; (2) civil conspiracy; (3) antitrust; (4) interference with contractual relationships; (5) intentional interference with prospective economic relations; (6) false advertising; and (7) unfair competition.

## I.   INTRODUCTION

The Court should grant this motion for partial judgment on the pleadings because Plaintiffs' Second Amended Complaint (Dkt. #39, hereinafter "SAC") suffers from the same deficiencies as their First Amended Complaint (Dkt. #17, hereinafter "FAC"), which the Court previously dismissed in part (Dkt. #33).  More than 16 months ago, on December 1, 2016, this Court dismissed the following claims in the FAC without prejudice:

1) Second Cause of Action for False Advertising under the Lanham Act;

2) Ninth Cause of Action for Trade Dress Infringement under California law;

3) Tenth Cause of Action for Antitrust and Restraint of Trade;

4) Eleventh Cause of Action for Anti-trust and Restraint of Trade under California law;

5) Thirteenth Cause of Action for Interference with Prospective Economic Advantage under California law; and,

6) Fourteenth Cause of Action for Civil Conspiracy.

(Dkt. #33.)  The Court dismissed Plaintiffs' Fourth Cause of Action for Unfair Competition, False Advertising, and Deceptive Trade Practices under the Cal. Bus. & Prof. Code *with* prejudice.  (*Id*.)

TROJAN LAW OFFICES
BEVERLY HILLS

-1-

In dismissing the claims with leave to amend, the Court gave explicit guidance on how Plaintiffs needed to amend the pleading to state viable claims on some of the causes of action.  For example, on Plaintiffs' civil conspiracy and antitrust claims, the Court "remind[ed] VBS that conspiracies between corporations and their officers and between closely intertwined or aligned corporations are circumscribed," citing a string of cases.  (Dkt. #33 at 8:22-28.)   In the SAC, however, Plaintiffs admit that "VBS does not currently know, with certainty and without further discovery, whether such Supplement Defendants, even those named so far, do or do not have the requisite 'economic power and separate interests' and 'economic unity' to conspire with Tuong, Jenny, or the other Supplement Defendants." (Dkt. #39 at ¶10.)   It has now been more than 15 months since Plaintiffs filed the SAC, yet they have not amended their pleading to assert any additional facts to support the antitrust claim.  Even after requesting leave to file a amended complaint several months ago, Plaintiffs still failed to correct those deficiencies in their proposed Third Amended Complaint.  (Dkt. #165-5 at ¶10.)

As another example, on Plaintiffs' claim that the Defendants "poached" Plaintiffs' technicians, the Court "note[d] that VBS' other allegations as to 'other desirable employees of VBS' who were induced to breach their contracts are insufficient." (Dkt. #33 at 13:20-21.)   The allegations in the SAC remain deficient as Plaintiffs admit there "may not have been a specific written or oral contract" with any of the employees or vendors that are alleged to have been "poached" by KVLA.  (Dkt. #39 at ¶105.)   Even if there were contracts, Plaintiffs have not alleged that Defendants knew about the contracts.  Hence, this and other claims— including Plaintiffs' claims of breach of fiduciary duty, antitrust, and false advertising—can be and should be dismissed on the pleadings.

Dismissal of some of the claims on the pleadings would promote judicial economy.  In the SAC, Plaintiffs make a scattershot of claims, alleging some 14 disparate causes of actions against eight different defendants.  Since Plaintiffs have

-2-

failed to make even bare skeletal allegations for some of these claims, despite having had ample opportunities to amend their pleading, the Court should dismiss some of the claims in the interest of judicial economy so that the parties can more efficiently prepare for the upcoming trial in March 2018.

## II.    STATEMENT OF FACTS

### A.    Brief Overview of the Parties, the Claims, and Background Facts

Plaintiff VBS-TV airs a Vietnamese TV show called "DAU GIA TREN TRUYEN HINH," which in English means "Fight Price on Television" ("Fight Price Show"). (Dkt. #39 at ¶29.)  As its name implies, the Fight Price Show is an auction show in which callers bid on products featured on the show. (*Id*.)  Tram Ho was a host on the Fight Price Show. (*Id*. at 55.)

Defendant KVLA airs a home-shopping show called "Diamond at a Surprise Low Price" ("Diamond Show"). (Dkt. #39 at ¶60.)  It is alleged that KVLA lured Tram Ho from the Fight Price Show to host the Diamond Show. (*Id*.)  It is also alleged that Tram Ho breached her fiduciary duty to Plaintiffs by hosting the Diamond Show.  Further, Plaintiffs allege that Tram Ho misappropriate trade secrets (e.g. customer lists, vendor information, etc.) and gave them to KVLA. (*Id*. at ¶122.)  It is also alleged that the Diamond Show infringes the trade dress and copyright of the Fight Price Show. (*Id*. at ¶1, ¶¶125-129.) The claims involving the Fight Price Show are directed against KVLA, Tram Ho, Jenny Do (aka Ngoc Nu), whom Plaintiffs refer to as the "Show Defendants." (*Id*. at ¶¶15-19.)

Unrelated to the dispute with the Show Defendants, Plaintiffs have also alleged that Nutrivita Labs, Nutrivita Inc., USDC, Robinson Pharma, and Tuong Nguyen—whom Plaintiffs refer to as the "Supplement Defendants" (Dkt. #39 at ¶¶4-9)—engaged in false advertising of Arthro-7, a dietary supplement for relieving joint ailments. (*Id*.at ¶118.) Plaintiffs also allege that the Supplement Defendants have violated federal antitrust laws. (*Id*. at ¶¶ 136-37; *see also*, ¶¶ 12 and 39-41.)

For ease of reference, the claims are summarized below:

-3-

|  | Show Defendants (including Tram Ho) | Supplement Defendants | Tram Ho (individually) |
|---|---|---|---|
| False advertising and unfair competition | X | X | |
| Trade secret misappropriation | X | | |
| Copyright infringement | X | | |
| Trade dress infringement | X | | |
| Antitrust claims | | X | |
| Interference claims | X | | |
| Civil conspiracy | X | X | |
| Breach of fiduciary duty | | | X |

**B.   Procedural Facts**

Plaintiffs filed their Complaint on August 23, 2016.  (Dkt. 1.)  On September 28, 2016 (before Defendants answered the Complaint), Plaintiffs filed the FAC.  (Dkt. #17.)  The FAC alleged 15 causes of action against the Show Defendants and the Supplement Defendants.  (*Id.*)

Defendants brought a motion to dismiss some of the causes of action in the FAC under Rule 12(b)(6) on October 26, 2016.  (Dkt. #23.)  The motion to dismiss was granted in part, and denied in part (with leave to amend as to all but one cause of action), on December 1, 2016.  (Dkt. #33.)

Plaintiffs filed the SAC on December 30, 2016.  (Dkt. #39.)

Pursuant to the Court's February 8, 2018 Order (Dkt. #196), Defendants resubmitted this motion after the parties attended a settlement conference before Judge McCormick.

//

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

### C.  Deficiencies in the Second Amended Complaint (as to Copyright)

Plaintiffs made little effort in the SAC to cure the deficiencies in the FAC.

The most obvious example of this is Plaintiffs' sixth cause of action in the SAC alleging copyright infringement.  (Dkt. #39 at ¶¶125-129.)  Plaintiffs allege that "VBS Distribution and Joseph are the owners, and VBS Television the exclusive licensee, of a registered copyright for the [Fight Price] Show issued by the United States Copyright office, Registration Number PA1-921-488, on November 13, 2014…."  (Dkt. #39 at ¶31.)  Plaintiffs go on to allege, "it is believed, *upon information and belief*, that the Plaintiffs show and the Defendants' show are substantially similar in their protected and copyrightable content and elements, and strikingly similar."  (*Id.* (emphasis added).)

However, Plaintiffs did not even review their copyrighted work at the time they alleged infringement in the SAC, admitting: **"Plaintiffs' copyright claims in this lawsuit are subject to the receipt and review, with any necessary translations, of the deposited work and the file history of the copyright registration, by Plaintiffs and their non-Vietnamese counsel, and their subsequent comparison to the Infringing Show (defined below), and such copyright infringement claims may be supplemented, or withdrawn…"**  (Dkt. #39 at ¶31.)  By their own admission in the SAC, Plaintiffs did not review the single copyright for the Fight Price Show to compare it KVLA's Diamond Show.

Yet, Plaintiffs continued to litigate the claim.

Further, the SAC alleges copyright infringement based on the registration of a single episode of a Fight Price Show that aired in 2014.  (Dkt. #39 at ¶31.)  Yet Plaintiffs claim in the SAC that "subsequent episodes of the Show are protected under US copyright law, whether or not the copyright therein has been registered yet…"  (*Id.*)  Plaintiffs further claim the right to amend the SAC if and when they decide to register subsequent episodes of the Show.  (*Id.*)  Plaintiffs never amended their pleading to allege infringement of any additional registered copyrights.

TROJAN LAW OFFICES
BEVERLY HILLS

Plaintiffs presented Defendants with a stipulation to dismiss the copyright claim **with prejudice** only two days before Plaintiffs filed this motion for the first time. The stipulation was filed on January 10, 2018. (Dkt. #154.) The stipulation provides that "[t]he parties agree that any party's rights to pursue attorney's fees and costs as to the dismissed claim is expressly reserved including the right to seek review of the merits of the copyright claim to the extent necessary to determine if an award of attorneys' fees and costs is appropriate." (*Id.*)

The frivolousness of the allegations made to support Plaintiffs' copyright claim characterizes Plaintiffs' entire SAC.

## III.   ARGUMENTS

### A.   The Standard for Motion for Judgment on the Pleadings

As the Ninth Circuit teaches, "[j]udgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Though "the allegations of the non-moving party must be accepted as true," *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989), the Supreme Court teaches that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B.   Judgment on Plaintiffs' Claim for Breach of Fiduciary Duty Against Tram Ho

Defendants move for judgment on the pleadings as to Plaintiffs' fourteenth cause of action, which alleges that Tram Ho breached her "fiduciary duty of trust,

confidence, and loyalty" to VBS-TV.  (Dkt. #39 at ¶147.)  The Court should grant judgment on this claim because Plaintiffs have failed to plead facts to show that Tram Ho owed any fiduciary duty to VBS-TV.

### 1.    Law on Fiduciary Duty

A breach of fiduciary duty requires (1) the existence of a fiduciary duty; (2) its breach; and (3) resulting damages.  *Pellegrini v. Weiss,* 165 Cal.App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 988 (C.D. Cal. 2011).

The California Court of Appeal teaches that, "[w]hile breach of fiduciary duty is a question of fact, the existence of legal duty in the first instance and its scope are questions of law."  *Kirschner Brothers Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790, 229 Cal. Rptr. 899 (Ct. App. 1986) (internal citation omitted). Further, "before a person can be charged with a fiduciary obligation, **he must either knowingly undertake to act on behalf and for the benefit of another**, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221, 673 P.2d 660 (1983) (emphasis added); *see also*, *Wolf v. Superior Court,* 107 Cal.App.4th 25, 29, 130 Cal.Rptr.2d 860 (2003).  Under California law, a fiduciary duty is created either as a matter of law, such as in an attorney-client relationship, between members of a joint venture, in corporate officer-shareholder relationships, or where the person alleged to have the duty expressly takes on that duty.  *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386, 181 P.3d 142, 150 (2008) ("[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." (citation omitted).)

//

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

### 2.    The SAC Fails to Allege Facts to Show Tram Ho Owed VBS-TV Any Fiduciary Duty

In the SAC, Plaintiffs allege that Tram Ho, "as an employee, independent contractor for Plaintiffs, and as co-host of the Show," was in a position of "heightened trust and confidence."  (Dkt. #39 at ¶147.)  At best, this vague allegation can be read two ways.  First, Plaintiffs placed their trust in Tram Ho as host of the show, thereby allegedly imposing a fiduciary duty on her.  Second, the employment contracts signed by Tram Ho contain confidentiality agreements which created a fiduciary duty, at least as to the treatment of confidential information. (Dkt. #39-8, -9.)  Both arguments are without merit.

### a.    No Fiduciary Duty Based on Relationship

Defendants are entitled to judgment on this claim because the SAC fails to allege that Tram Ho owed VBS-TV a fiduciary duty in the first place.  Plaintiffs' allegation that they placed "heightened trust and confidence" is not enough to state an existence of a fiduciary duty.  As the Northern District of California has succinctly stated:

> **A fiduciary relationship, however, does not arise simply because parties repose trust and confidence in each other**. *City Solutions, Inc. v. Clear Channel Communs*., Inc., 201 F. Supp. 2d 1035, 1048 (N.D.Cal.2002).

*Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 960 (ND Cal. 2002) (emphasis added).  The California Court of Appeal further teaches that, "[t]he mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *Worldvision Enterprises, Inc. v. American Broadcasting Cos., Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983).  A "confidential relationship" arises only "where a confidence is reposed by one person in the integrity of another, and ...

-8-

TROJAN LAW OFFICES
BEVERLY HILLS

1  the party in whom the confidence is reposed ... voluntarily accepts or assumes to

2  accept the confidence." *GAB Business Services, Inc. v. Lindsey & Newsom Claim*

3  *Services,* 83 Cal.App.4th 409, 416, 99 Cal.Rptr.2d 665 (2000); *City Sols., Inc. v.*

4  *Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002).

5      Further, California courts addressing the issue of whether an

6  employer/employee relationship creates a fiduciary duty have found that there must

7  be "additional ties" in order to create a duty.  *See Odorizzi v. Bloomfield Sch. Dist.*,

8  246 Cal. App. 2d 123, 129 (1966).  The party in whom the duty is created must be

9  placed in a "superior position to exert influence over the dependent party."   *City*

10  *Solutions, Inc. v. Clear Channel Communs., Inc*., 201 F. Supp. 2d 1035, 1049 (N.D.

11  Cal. 2002).  The SAC contains no allegation of "additional ties" nor any allegation

12  that Tram Ho was somehow in a superior position to Plaintiffs with responsibilities

13  that would create a binding fiduciary duty.

14          **b.      No Confidentiality Provisions Imposed a Fiduciary**

15          **Duty on Tram Ho**

16      To the extent the SAC can be read to allege that the contracts signed by Tram

17  Ho contain confidentiality agreements that created a fiduciary duty as to the

18  treatment of confidential information, the claim still fails.

19      In *Goodworth Holdings*, *supra*, the Northern District court explained:

20          **A confidentiality agreement does not give rise to a fiduciary**
            **relationship unless it does so expressly**. *Trumpet Vine Invs. N.*
21          *v. Union Capital Partners I, Inc*., 92 F.3d 1110, 1117 (11th
            Cir.1996) (finding that nondisclosure agreement was not enough
22          proof of a confidential relationship to avoid summary
            judgment). Here, the confidentiality agreement did not include
23          any term conferring a fiduciary relationship."
24

25

26  239 F. Supp. 2d at 960 (emphasis added).

27      Here, the confidentiality provisions are very general and do not expressly

28  give rise to any fiduciary relationship.   (Dkt. #39-8,-9.)   For example, the

-9-

confidentiality provision in the Independent Contractor Agreement is standard. (Dkt. #39-8 at ¶4.)   It did not impose a fiduciary duty on Tram Ho.   Notably, Plaintiffs do not point to any confidentiality provisions in any of the contracts that created a fiduciary duty.   Nor is there any allegation in the SAC that explains how or when Tram Ho agreed to take on a fiduciary relationship.   Even Plaintiffs' proposed Third Amended Complaint (Dkt. #165-5) did not make any new allegations that would save the breach of fiduciary claim.

### 3.   Breach of Fiduciary Duty Claim Is Superseded By The Trade Secret Claim

When a theory of breach of fiduciary duty owed by an employee to an employer is based on violation of a confidentiality agreement, any claim for breach of fiduciary duty must be based on the same core set of facts as a claim for misappropriation of trade secrets.   In such a case, the fiduciary duty cause of action is superseded by the trade secret cause of action.   *See Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2011).   Therefore, if the Court were to find a fiduciary duty, the claim would still be ripe for judgment on the pleadings because it is superseded by the trade secret claim in the SAC as they are based on the same operative facts.

### C.   Judgment on Plaintiffs' Claim for Civil Conspiracy

Plaintiffs allege in the SAC that Defendants' "described actions and wrongful activities constitute a civil conspiracy to commit in cooperation with each other the other torts and illegal activities alleged herein, or some of them, in violation of California law." (Dkt. #39 at ¶145.)   Judgment on the pleadings must be granted on this cause of action as a matter of law.

As the District Court of the Northern District of California has observed, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tort feasors a common plan or design in its perpetration." *Les*

TROJAN LAW OFFICES
BEVERLY HILLS

*Fields/C.C.H.I. Ins. Servs. v. Hines*, No. 15-CV-03728-MEJ, 2016 WL 6873459, at *18 (N.D. Cal. Nov. 22, 2016) (citing *I-CA Enters., Inc. v. Palram Americas, Inc.*, 235 Cal. App. 4th 257, 271-272 (2015).)  As civil conspiracy is not even a proper cause of action as a matter of law, judgment on the pleadings must be granted on this cause of action as to all the Defendants.

Moreover, in the December 1, 2016 Order granting, in part, Defendants' prior motion for dismissal, the Court pointedly noted "that to the extent VBS alleges other conspiracies and relies on them in their causes of action, VBS' operative complaint fails to clearly identify the contours of any such conspiracies let alone allege sufficient conduct committed as part of them."  (Dkt. #33 at 8:7-10.)  The Court further noted that "VBS' complaint fails to clearly identify any actionable conspiracy among the Supplement Defendants (Nutrivita Laboratories, Nutrivita, US Doctors' Clinical, Robinson Pharma, and Tuong Nguyen) given that Nguyen 'is the primary or sole shareholder and owner and the driving force of each of the other' Supplement Defendants. (FAC ¶ 8.)"  (Dkt. #33 at 8:12-16.)

Despite the Court's admonition, the Second Amended Complaint still states: "Accordingly, VBS reserves the right, and currently conditionally intends, to amend this Complaint subject to the fruits of such discovery, and to add such additional facts when they been explored in discovery."  (Dkt. #39 at ¶12.)  Plaintiffs' admission that further amendment is necessary is an admission that the claim for conspiracy is facially deficient and must be dismissed.

### D.    Judgment on Plaintiffs' Antitrust Claim

Defendants move for judgment on the pleadings as to Plaintiffs' antitrust claim against the Supplement Defendants.   Defendants are also moving for summary adjudication on this claim in the alternative (as set forth in a motion filed separately herewith).   However, this motion addresses woefully deficient allegations in the pleadings to support the antitrust claim.

In Plaintiffs' ninth and tenth causes of action, Plaintiffs allege that the

-11-

TROJAN LAW OFFICES
BEVERLY HILLS

Supplement Defendants have violated federal and state antitrust laws.  (Dkt. #39 at ¶¶136-139.)  Without offering much specifics, Plaintiffs allege that the Supplement Defendants have violated the Sherman Act by "engag[ing] in anti-trust and restraint of trade" to "put VBS out of business in the niche Vietnamese marketplace in which the parties directly compete for sales on Arthro-7 and JN-7 Best, and other wrongful activities…."  (*Id*. at ¶12.)

In the Order granting in part Defendants' prior motion for dismissal, the Court pointedly noted "that to the extent VBS alleges other conspiracies and relies on them in their causes of action, VBS' operative complaint fails to clearly identify the contours of any such conspiracies let alone allege sufficient conduct committed as part of them."  (Dkt. #33 at 8:7-10.)  In a footnote, the Court admonished:

> Should VBS choose to file an amended complaint, the Court reminds VBS that conspiracies between corporations and their officers and between closely intertwined or aligned corporations are circumscribed. *See, e.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770–71 (1984) (holding that, for the Sherman Act, the coordinated activity of parties lacking independent sources of economic power and separate interests cannot form a conspiracy); *...Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005) ("The crucial question is whether the entities alleged to have conspired maintain an 'economic unity,' and whether the entities were either actual or potential competitors."); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 (1994) ("[D]uly acting agents and employees cannot be held liable for conspiring with their own principals.").

(Dkt. #33 at 8:22-28.)  The Court dismissed, with leave to amend, Plaintiffs' tenth cause of action for antitrust and restraint of trade "to the extent it relies on Section 1 of the Sherman Act."  (*Id*. at 15:14-16.)

Despite the Court's guidance, Plaintiffs fail to allege in the SAC any cognizable "conspiracy" under the Sherman Act to restrain competition of arthritic dietary supplements.  For example, Plaintiffs do not allege that the Supplement

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

Defendants conspired with any third party to fix the price for Arthro-7. As this Court recognized, any so-called "conspiracy" among the Supplement Defendants would not violate the Sherman Act because Defendants have not alleged that Nutrivita Labs, Nutrivita Inc., USDC, Robinson, and Tuong Nguyen are competitors with independent economic power and separate interests. Indeed, Plaintiffs admit that "VBS does not currently know, with certainty and without further discovery, whether such Supplement Defendants, even those named so far, do or do not have the requisite 'economic power and separate interests' and 'economic unity' to conspire with Tuong, Jenny, or the other Supplement Defendants." (Dkt. #39 at ¶10.) Plaintiffs further admit, "[u]pon information and belief, …there are third parties directly involved in the sale and marketing of Arthro-7 whose precise role in the wrongful acts complained of herein are not known or fully known yet to VBS, nor the precise parameters or contours of the conspiracy and agreement of the Supplement Defendants and third parties." (*Id*. at ¶13.) That allegation remains unchanged in Plaintiffs' proposed Third Amended Complaint. (Dkt. #165-5 at ¶13.) Plaintiffs have had more than 15 months since they filed the SAC to find facts to support the allegation of a conspiracy violating the Sherman Act. Unable to find any, they have never attempted to amend the SAC to allege new facts to support their antitrust claim. Therefore, the antitrust claim remains deficient.

### E.   Judgment on Plaintiffs' Claim of Interference with Contractual Relationships

As their eleventh cause of action, Plaintiffs allege that the Show Defendants interfered with VBS-TV's contractual relationships with certain vendors and employees.[1] (Dkt. #39 at ¶141.) The gist of the claim is that the Show Defendants

---

[1] Plaintiffs also allege that the Show Defendants induced Tram Ho to breach her employment contract as host of the Fight Price Show to come work for KVLA on the Diamond Show. (Dkt. #39. at ¶62.) Defendants are not moving for judgment on the pleadings as to Tram Ho.

allegedly induced certain vendors and employees to leave VBS-TV for KVLA.  (*Id.* at ¶62.)  In previously addressing this claim in the FAC, the Court "note[d] that VBS' other allegations as to 'other desirable employees of VBS' who were induced to breach their contracts are insufficient."  (Dkt. #33 at 13:20-21.)  The Court should grant partial judgment as to Plaintiffs' claim that Show Defendants induced vendors and employees (other than Tram Ho) to breach their contracts with VBS-TV because the allegations in the SAC remain deficient.

>  **1.   Judgment on the Pleadings Is Proper as to Plaintiffs' Claim of Interference with Contractual Relationships as to Employees**

Despite the Court having noted that Plaintiffs' "allegations as to 'other desirable employees of VBS' … are insufficient" (Dkt. #33 at 13:20-21), Plaintiffs failed to correct the deficiencies in the SAC.  Plaintiffs only amended the SAC to allege:

- The Show Defendants induced "Tram Ho, and other desirable employees of VBS Television, **including several technicians,** to breach their contracts with VBS Television and to instead start to work for KVLA." (Dkt. #39 at ¶62 (emphasis added).)

- Plaintiffs "had valuable and ongoing economic relationships with vendors, customers, and employees, including those with **whom there may not have been a specific written or oral contract**" and that Defendant had "knowledge of such relationships." (Dkt. #39 at ¶105 (emphasis added), ¶106.)

These allegations remain insufficient to state a claim for intentional interference with contractual relations.  Critically, Plaintiffs admit in the SAC that there "may not have been a specific written or oral contract" with any of the vendors, customers or employees that the Show Defendants are alleged to have induced to breach a contract.  (Dkt. #39 at ¶105.)  Because the SAC does not even

---

Defendants will bring a separate motion for summary adjudication as to the claims against Tram Ho.

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

allege that a contract actually existed with any third party, it is impossible for the SAC to allege that the Show Defendants knew of a such contract (which Plaintiffs themselves do not know existed), or that the Show Defendants induced breach of such a contract. *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 52 Cal. Rptr. 2d 877 (1996) ("A cause of action for intentional interference with contract requires an underlying enforceable contract.").

> **2.    Judgement on the Pleadings as to Plaintiffs' Claim of Interference with Contractual Relationships as to Vendors "Star Jewelry" and "Lam"**

The same applies to the allegations for vendors such as "Star Jewelry" and "Lam." (Dkt. #39 at ¶141.) The SAC alleges only that the Show Defendants knew of the "ongoing and valuable relationship with VBS's jewelry vendor for the Show, such as Star Jewelry." (*id.* at ¶11) and further:

> The Defendants, upon information and belief, had specific knowledge of Plaintiffs' valuable, ongoing, and established relationships with their vendors, like Star Jewelry who they deliberately induced to switch from the Show to the Infringing Show, and have attempted to deliberately induce other vendors, such as Lam, to leave their established and ongoing economic relationship with Plaintiff and instead switch to be a vendor for Defendants' Infringing Show…

(Dkt. #39 at ¶103.) However, the SAC does not allege that VBS-TV had a *contractual* relationship with either Star Jewelry or Lam, much less that the Show Defendants knew about the contractual relationship. The SAC uses the term "contractual relationship" with respect to Star Jewelry and Lam only in Count 11 itself, where it is alleged in a conclusory fashion. (*Id.* at ¶141.) But even there, the SAC still does not allege that the Show Defendants knew that the contractual relationship existed.

In summary, the SAC does not sufficiently allege that contractual relationships existed with respect to any particular third party, nor does it allege that

the Show Defendants knew of such contractual relationships.   In fact, the SAC admits that there may not have been any contractual relationships with any third parties.   *Although Plaintiffs were warned by the Court of this defect, they did not properly redress the defect in the SAC,* and therefore, the Court should render partial judgment on the pleadings as to this cause of action.

### F.   Judgment on Plaintiffs' Claim of Interference with Prospective Economic Advantage Claim

Similarly, Plaintiffs allege a twelfth cause of action against the Show Defendants for interference with prospective economic advantage under California law: "Defendants' above described actions and wrongful activities constitute wrongful intentional interference with prospective economic advantage of Plaintiffs, including its vendors for the Show, and its relationships with its employees…" (Dkt. #39 at ¶143.)   Judgment on this claim is appropriate as well.

#### 1.   Law on Intentional Interference with Prospective Economic Relations

To state a claim for intentional interference with prospective economic advantage, a plaintiff must prove: "(1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiffs; (2) the defendant's knowledge of the relationship; (3) intentional acts, ***apart from the interference itself***, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendants. *CRST Van Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (emphasis added).

In differentiating this cause of action from a claim for interference with contractual relations (above), the Supreme Court of California explained that "intentionally inducing or causing a breach of an existing contract is ... a wrong in and of itself." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55–56, 960 P.2d 513, 530 (1998), *as modified* (Sept. 23, 1998).   By contrast, because a

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

cause of action for intentional interference with prospective economic advantage does not require the existence of an existing relationship, "damages are speculative ... [so] wrongfulness apart from the impact of the defendant's conduct on that prospect should be required." *Id*. Thus, intentional interference with contractual relations requires "a plaintiff to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited*, 479 F.3d at 1108. The SAC fails to allege this element.

### 2. Plaintiffs Fail to Allege Intentional Interference with Prospective Economic Relationship as to the Vendors

Plaintiffs fail to allege that the Show Defendants committed any "intentional acts, apart from the interference itself," to disrupt the relationship between VBS-TV and its vendors, such as Star Jewelry. *CRST Van Expedited*, 479 F.3d at 1108.

As the Ninth Circuit teaches in *CRST Van Expedited*, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." 479 F.3d at 1109; *see also*, *San Jose Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal.App.4th 1528, 1544-1545 (2007) ("an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive" (internal citations and quotations omitted)). An example of a "wrongful independent act" was discussed in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937 (2003). In *Korea Supply Co.*, the defendant was accused of interfering with a prospective economic advantage by allegedly "engag[ing] in bribery and offered sexual favors to key Korean officials in order to obtain the contract from the Republic of Korea." 29 Cal. 4th at 1159, 63 P.3d at 954. Because such practices were illegal pursuant to the Foreign Corrupt Practices Act, the court concluded the element of an "wrongful independent act" was satisfied. *Id*.

Here, by contrast, Plaintiffs do not allege that the Show Defendants committed any "unlawful" act proscribed by some constitutional, statutory, regulatory, common law as to the vendors Star Jewelry, Lam (or other vendors). Therefore, this claim fails as a matter of law.

Further, Plaintiffs fail to allege any economic harm to VBS-TV proximately caused by the acts of the Show Defendants.  In the Order previously dismissing this claim in the FAC, the Court noted:

> Indeed, the only harm alleged by VBS in the FAC is that VBS' "customers and vendors have complained . . . about the copying by KVLA . . . and there have been instances of actual confusion between the parties and their respective businesses, products, and services." (FAC ¶ 56; see also id. ¶¶ 61–62 … Notably, VBS' opposition to Defendants' motion claims, without citation to the FAC, that VBS suffered "loss of customers[] and diverted profits." (Dkt. 31 at 23.) Since **the FAC fails to allege any economic harm (confusion alone is insufficient),** VBS' thirteenth cause of action is DISMISSED WITH LEAVE TO AMEND.

(Dkt. #33 at 14:16 – 15:2 (emphasis added).)  In the SAC, Plaintiffs do not allege any specific economic harm resulting from the alleged interference, particularly as to the vendors and employees that are identified in the SAC.  Plaintiffs only allege that the "economic harm includes the allegations set forth above as to loss sales, and lost customers, and diverted profits."  (Dkt. #39 at ¶102.)

Therefore, the Court should grant partial judgment as to this claim as well.

## G.    Judgment on Plaintiffs' Lanham Act False Advertising Claim as to the Show Defendants

In the second cause of action, Plaintiffs' allege that "[t]he Show Defendants engage in false advertising by virtue of their confusingly similar Infringing Show, which creates the false or misleading belief that there is some affiliation, license, sponsorship, or endorsement between VBS and the Show Defendants, or their

TROJAN LAW OFFICES
BEVERLY HILLS

-18-

products or services." (Dkt. #39 at 117.)  The Court should grant judgment on the pleadings as to Plaintiffs' false advertising claim *against the Show Defendants*. (Defendants are moving separately for summary adjudication on Plaintiffs' claim of false advertising as to the Supplement Defendants, which involve the Arthro-7 product.)

### 1.    Law of Lanham Act False Advertising

Under § 43(a) of the Lanham Act, the elements of a false advertising claim include:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997) ("*Southland* elements"); *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, 1180 (9th Cir. 2003).

### 2.    No False Advertising of the TV Shows

The SAC does not allege that the Show Defendants made any false statement of fact about the Fight Price Show.  Nor does the SAC allege that the public was deceived by any advertisement made by the Show Defendants about their own Diamond Show.  Instead, Plaintiffs only allege that the Diamond Show "creates the false or misleading belief that there is some affiliation, license, sponsorship, or endorsement between VBS and the Show Defendants." (Dkt. #39 at ¶117.) However, by Plaintiffs' own account, the alleged confusion is due to the trade dress of the shows, not to any false advertisement about the shows.  (*Id*. at ¶112.)

TROJAN LAW OFFICES
BEVERLY HILLS

Plaintiffs' allegations regarding the trade dress of the shows, such as a similar host or marketing, does not amount to false advertising. For example, just because two televisions programs have the same host, similar marketing, or runs commercials for the same product (Arthro-7) does not mean that one show is falsely advertising itself as the other show. If Alex Trebek from Jeopardy® were to host Wheel of Fortune®, Jeopardy® cannot sue Wheel of Fortune® for false advertising just because some viewers might be confused. And if Wheel of Fortune® were to run a commercial for Coca-Cola® that also appears on Jeopardy®, Jeopardy® cannot claim that Wheel of Fortune® is falsely advertising itself as Jeopardy® just because the two shows are promoting the same product. Plaintiffs' arguments are illogical and irrelevant to the claim of false advertising.

Therefore, the Court should grant partial judgment on Plaintiffs' false advertising claim as to the Show Defendants.

## H.   Judgment on Plaintiffs' Unfair Competition Claims

In the Order granting in part Defendants' prior motion for dismissal, the Court dismissed *with prejudice* Plaintiffs' original claim for unfair competition pursuant to Cal. & Bus. Code § 17200 et seq. against all Defendants. (Dkt. #33 at 11:20-23.) The Court found that Plaintiffs did not have standing to assert a claim for restitution as required by the statute in dismissing the claim. (*Id.*) Yet in the SAC, Plaintiffs have again alleged unfair competition. (Dkt. #39 at ¶120.)

### 1.   Plaintiffs' Unfair Competition Based on California Common Law as to All Defendants

Instead of removing the § 17200 unfair competition claim as ordered by the Court, Plaintiffs try to get around the Court's order by modifying their claim under California common law: "Count 3- As to All Defendants (Unfair Competition, False Advertising, and Unfair and Deceptive Trade Practices - California Common Law)." (Dkt. #39 at ¶120.) The SAC essentially disguises the § 17200 unfair competition claim under the cloak of the common law by alleging: "Defendants'

TROJAN LAW OFFICES
BEVERLY HILLS

acts, as set forth above, constitute unfair competition, unfair and deceptive practices, and false advertising under the common law of the State of California…." (*Id*.)

While Plaintiffs state in the SAC that "no claim is alleged under the California UCL, Cal. & Bus. Code § 17200 et seq., for the reasons set forth in the Court's Dec. 1, 2016 Order," the disclaimer is contradicted by the request in the SAC that Plaintiffs "be allowed at least one attempt to cure the defects concerning restitution set forth in the Court's Order, and to seek injunctive relief even if restitution were not being alleged." (*Id*.) It is improper to use the SAC to request reconsideration of the unfair competition claim that was previously dismissed with prejudice.

Since Count 3 is simply a placeholder "common law" claim with no substance or factual allegations, the Court should grant judgment on Count 3 as a matter of law as it is no different from the unfair competition claim that was previously dismissed with prejudice.

### 2.      Plaintiffs' Unfair Competition Based on California Common Law as to the Supplement Defendants

Should the Court not dismiss Plaintiffs' common law unfair competition claim in its entirety as discussed above, the Court should alternatively grant judgment on the pleadings on this cause of action as to the Supplement Defendants.

The Supreme Court of California teaches, "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263, 833 P.2d 545, 551 (1992); *see also Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 393, 166 Cal. Rptr. 3d 899, 912 (2014).

The SAC does not state a claim of "passing off" pursuant to California

TROJAN LAW OFFICES
BEVERLY HILLS

common law as to the Supplement Defendants.  There is no dispute involving the trade dress and trademarks of Arthro-7 and JN-7.  (The trade dress claim at issue involves The Fight Price Show.)  Plaintiffs have never made any allegations that the Supplement Defendants co-opted Plaintiffs' common law trade dress or trademark rights to JN-7.  Absent such allegations of fact, judgment as a matter of law is appropriate for this cause of action at least as to the Supplement Defendants.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for partial judgment on the pleadings should be GRANTED.


Respectfully submitted,

TROJAN LAW OFFICES
by

April 16, 2018                    /s/ R. Joseph Trojan
                                  R. Joseph Trojan
                                  Dylan C. Dang
                                  Francis Wong
                                  Attorneys for Defendants,
                                  Robinson Pharma, Inc., et al.