# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| VBS DISTRIBUTION, INC., and VBS TELEVISION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRIVITA LABORATORIES, INC., NUTRIVITA, INC., US DOCTORS' CLINICAL, INC., ROBINSON PHARMA, INC., KVLA, INC., TUONG NGUYEN, TRAM HO, and JENNY DO a/k/a NGOC NU,<br><br>Defendants. | Case No.: SACV 16-01553-CJC(DFM)<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING APPLICATIONS TO FILE UNDER SEAL** |

//

//

//

# I. INTRODUCTION

Plaintiffs VBS Distribution, Inc. ("VBS Distribution") and VBS Television, Inc. ("VBS Television") brought this case against Defendants Nutrivita Laboratories, Inc., Nutrivita, Inc., US Doctors' Clinical, Inc., Robinson Pharma, Inc., KVLA, Inc., Tuong Nguyen, Tram Ho, and Jenny Do a/k/a Ngoc Nu.  (Dkt. 229 [Third Amended Complaint, hereinafter "TAC"].)  The parties' dispute arises out of their competing nutritional supplements and television programs.

Plaintiffs allege the following thirteen causes of action: (1) unfair competition under the Lanham Act, (*id.* ¶¶ 119–23), (2) false advertising under the Lanham Act, (*id.* ¶¶ 124–28), (3) unfair competition, false advertising, and deceptive trade practices under California common law and false advertising under California Business & Professions Code §§ 17500, (*id.* ¶¶ 129–30), (4) theft of trade secrets under the federal Defend Trade Secrets Act, (*id.* ¶¶ 131–32), (5) theft of trade secrets under the California Uniform Trade Secrets Act, (*id.* ¶¶ 133–35), (6) trade dress infringement under the Lanham Act, (*id.* ¶¶ 136–37), (7) trade dress infringement under California common law, (*id.* ¶¶ 138–41), (8) antitrust under sections 1 and 2 of the Sherman Act, (*id.* ¶¶ 142–43), (9) antitrust under the California Cartwright Act, (*id.* ¶¶ 144–45), (10) interference with contractual relationships under California law, (*id.* ¶¶ 146–47), (11) interference with prospective economic advantage under California law, (*id.* ¶¶ 148–49), (12) civil conspiracy under California law, (*id.* ¶¶ 150–51), and (13) breach of fiduciary duties under California law, (*id.* ¶¶ 152–53).

Now before the Court is Defendants' motion for judgment on the pleadings, (Dkt. 239), and Defendants' motion for summary judgment, (Dkt. 240).  For the following reasons, the motion for judgment on the pleadings is converted to a motion for summary

judgment, and that converted motion as well as Defendants' motion for summary judgment are **GRANTED**.

## II.  FACTUAL ALLEGATIONS

Plaintiffs VBS Distribution and VBS Television are two corporations with the same Chief Executive Officer and Chairman, Joseph Nguyen.  (TAC ¶ 25.)  Plaintiffs generally allege that Defendants are engaged in two unlawful schemes.  The first scheme involves the false advertising of a dietary supplement.  Defendants Nutrivita Laboratories, Inc., US Doctors' Clinical, Inc., Robinson Pharma, Inc., Tuong Nguyen, and Jenny Do (collectively, "Supplement Defendants") manufacture and sell "Arthro-7," a dietary supplement for joint relief.  (*Id*. ¶ 22.)  Plaintiff VBS Distribution manufactures and sells a competing dietary supplement called JN-7 Best.  (*Id*.)  Plaintiffs allege that "[t]he general marketplace for the parties' products is the elderly population in the United States," along with persons of Vietnamese descent living in the United States.  (*Id*.)  Plaintiffs allege that Arthro-7 has 60% of the market and JN-7 Best has 10% of the market.  (*Id*.)

Plaintiffs allege that Supplement Defendants have committed several wrongful acts "solely or primarily" to drive JN-7 Best out of the market.  (*Id*.)  Supplement Defendants purportedly make a number of false statements in advertising Arthro-7.  (*Id*. ¶ 44.)  For example, Supplement Defendants claim that Arthro-7 is "100% natural herbal," that over 8 million bottles have been sold, and that Arthro-7 has been "clinically tested" and is "Doctor Recommended."  (*Id*. ¶¶ 44–51.)  Plaintiffs claim that all of these statements are false.  (*Id*.)  Plaintiffs also claim that Supplement Defendants wrongfully filed a lawsuit against Plaintiff VBS Distribution in 2013, alleging various causes of action regarding the sale of JN-7 Best, including copyright and trademark infringement.  (*Id*. ¶¶ 88–103.)

The lawsuit settled in 2015, and Plaintiffs now claim that it was a baseless lawsuit brought to drive JN-7 Best out of the market.  (*Id*.)

The second general scheme at issue involves the parties' respective television shows.  Plaintiff VBS Television is a television broadcast company "primarily aimed at the Vietnamese community and is broadcast primarily in the Vietnamese language."  (*Id*. ¶ 24.)  VBS Television produces a show named "DAU GIA TREN TRUYEN HINH" ("Fight Price on Television").  (*Id*. ¶ 27.)  The show is a live auction program which primarily auctions diamonds.  (*Id*.)  The show was created in 2011, and in April 2012, Defendant Tram Ho became a host of the show.  (*Id*. ¶ 60.)  When she was hired by VBS Television, Ho allegedly signed a confidentiality agreement agreeing "to preserve and protect the confidentiality of [VBS Television's] proprietary information."  (*Id*. ¶ 62.)  Ho also allegedly signed an employment agreement agreeing to be exclusively employed by VBS Television.  (*Id*. ¶ 64.)

Plaintiffs allege that in the spring of 2016, they discovered that Ho was appearing on a rival television show called "Diamond at a Surprise Low Price," which is produced by Defendant KVLA, a rival television station.  (*Id*. ¶ 67.)  Plaintiffs also allege that at that time, Ho was still an employee of VBS Television.  (*Id*.)  Defendants KVLA and Jenny Do (with Tram Ho collectively, "Show Defendants") produce the show, and Plaintiffs claim it is essentially identical to VBS Television's show.  (*Id*. ¶ 71.)  For example, Plaintiffs claim that the two shows have the same hostess, some of the same vendors, the same technician, the same time slot of 5:00 p.m. to 7:00 p.m., "the least to most expensive format," "the same auctioning of approximately 30 items each show," and the same product price range from $300 to $3,000.  (*Id*. ¶ 72.)  Plaintiffs also claim that Show Defendants, through Tram Ho, have stolen VBS Television's employees, customer information, and other trade secrets.  (*Id*. ¶¶ 77–84.)

## III.  MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Plaintiffs' claims for trade dress infringement, trade secret misappropriation, interference with contractual relationships, interference with prospective economic advantage, antitrust, false advertising, and unfair competition.  (Dkt. 240.)

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the

nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325.  Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor.  *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).  The court does not make credibility determinations, nor does it weigh conflicting evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).  But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## A.  Trade Dress Infringement

Plaintiffs bring two claims for trade dress infringement: claim 6 for trade dress infringement under the Lanham Act, (TAC ¶¶ 136–37), and claim 7 for trade dress infringement under California common law, (*id.* ¶¶ 138–41).  Plaintiffs allege that the trade dress of the "Fight Price on Television" Show is comprised of:

> a) the unique style and format of the show, b) its time slot and date selection, each week on alternate weekdays, from 5 to 7 p.m., on Tuesdays and Thursdays, c) the price range for its auctioned items, ranging from about $300 to $3000, d) its "least to most expensive" format in which the least expensive items are sold first, ascending to the most expensive items at the end of the show, e) the length of the show, 2 hours, f) its focus on live TV auctions of jewelry, particularly diamonds, g) its carefully selected vendors, who appear on the show with the show's host, h) unique and proprietary camera angle and special lighting techniques developed by Plaintiffs using an Apple ipad tablet, i) the number and selection of items sold, usually about 30 items.

(*Id.* ¶ 27.)

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (citation and quotations omitted). To prove a trade dress claim, the plaintiff must show "(1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Id.* at 1258. "[A] product feature is functional . . . if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 165 (1995). If features of a claimed trade dress are all functional, the plaintiff must show that the features are combined together in a nonfunctional way to avoid a finding of functionality. *HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 696 (9th Cir. 1993). Although functionality is a question of fact, summary judgment is appropriate if the plaintiff "ma[kes] no showing that its [product] had non-functional features or a non-functional arrangement." *Id.* (affirming the district court's finding that the plaintiff's product, a massage table, was functional and granting summary judgment in the defendant's favor).

Here, Plaintiffs make no showing that the alleged trade dress has nonfunctional features or a nonfunctional arrangement. The elements of the claimed trade dress, individually and in combination, are functional. As Joseph Nguyen, Plaintiffs' own CEO and Chairman, explained in his deposition, the lighting techniques and camera angles function to make the diamonds on the television show "sparkle" and appear brighter. (*See* Dkt. 243-9 [Deposition of Joseph Nguyen, hereinafter "Nguyen Depo."] at 133:2–22.) Nguyen also explained that the lighting techniques are common in jewelry stores, which demonstrates that the techniques are intrinsic to the sale of jewelry. (*Id.* at 133:9–

15.)  With respect to the time and date of the show, Nguyen testified that they were chosen as times that would maximize viewership and auction purchases.  (*Id*. at 116:13–117:7.)  Specifically, Nguyen chose the time slot between 5 p.m. and 7 p.m. because it is the time when most people are with their family and can watch the show together.  (*Id*. at 119:1–10, 121:16–122:3.)  Nguyen also testified that the show sells thirty products per episode because it is the optimal amount to sell during a two-hour long show, and the products are priced between $300 to $3000 because the range is what the average target consumer can afford.  (*Id*. at 122:5–124:6.)  Finally, Nguyen testified that the products are shown in the order of lowest price to highest price to maximize the likelihood that the products will be sold, because more viewers tune in towards the end of the show.  (*Id.* at 124:7–20.)  In sum, Plaintiffs' CEO's own explanations regarding each element of the alleged trade dress indicate that the elements are functional.  They serve to maximize the number of viewers and the likelihood that the viewers will purchase the auction items.  To find that these elements are nonfunctional would "put competitors at a significant non-reputation-related disadvantage."  *Qualitex Co.*, 514 U.S. at 165.

Importantly, Plaintiffs submit no evidence indicating that the elements of its claimed trade dress, individually or taken as a whole, operate in any nonfunctional manner.  Plaintiffs submit no survey indicating that consumers associate the alleged trade dress with Plaintiffs.  Plaintiffs do submit a declaration from one of VBS Television's vendors, Aleksei Lam, who states that Plaintiffs' show "is unique and source identifying, with an unusual, arbitrary format and screen appearance which is strongly and uniquely associated by customers, viewers, and those in the industry, with VBS."  (Dkt. 270 ¶ 16.) Lam further states that "the VBS show has a unique format and overall appearance, a 'look and feel,' including how the screens on the Show appear, its time slot, duration, and many other features which are not dictated by the nature of the products shown on the Show."  (*Id*.)  However, this declaration is not evidence that Plaintiffs' trade dress is nonfunctional.  While Lam repeatedly refers to the show as "unique," Lam fails to

describe what exactly is unique about the show, the visual impression she gets from the show, or any nonfunctional aspect of the show.  In other words, Lam draws a conclusion that the show is nonfunctional, but provides no support for that conclusion.

Surprisingly, Plaintiffs did not even provide the Court with a copy or clip of their television show to demonstrate that it is nonfunctional.  Plaintiffs only submitted the following three snapshots, which are still images from their television show:







(Dkt. 268 Ex. 10.)  These snapshots do not show how Plaintiffs' alleged trade dress, comprising of elements like the lighting technique, the time and date the show airs, the length of the show, and the prices of the products, operate together in some nonfunctional manner.  These snapshots cannot even demonstrate how things like the length and the time of the show operate in a way that renders the purported trade dress unique.[1]

Because Plaintiffs fail to provide any evidence of the nonfunctionality of their trade dress, summary judgment in favor of Defendants on Plaintiffs' claims for trade dress infringement is appropriate.

//

---

[1]  Plaintiffs argue that the Ninth Circuit has held that the "overall combination" of Plaintiffs' trade dress is non-functional.  (Dkt. 249 at 20.)  Plaintiffs refer to an order from the Ninth Circuit issued on September 15, 2017, which reversed and remanded the Court's order denying Plaintiffs' motion for a preliminary injunction. (Dkt. 83.)  Plaintiffs' argument is without merit, and overstates the Ninth Circuit's ruling.  The Ninth Circuit did not hold that Plaintiffs' television show was nonfunctional, but rather clarified that Plaintiffs *may* have a protectable trade dress in the overall "look and feel" of the show, even if the individual elements of the show are functional.  (*Id*. at 2.)

## B. False Advertising

Plaintiffs assert a claim for false advertising in violation of the federal Lanham Act, 15 U.S.C. § 1125.  (TAC ¶¶ 124–28.)  The elements of a Lanham Act false advertising claim are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

In support of their claim, Plaintiffs allege Defendants make the following false statements regarding Arthro-7: (1) "100% natural herbal," (TAC ¶¶ 44–45), (2) "Over 8 Million Bottles Sold!" (*id.* ¶ 46), (3) the product is endorsed by a doctor and "Doctor Recommended," (*id.* ¶¶ 47–49), and (4) the product is clinically tested and "[p]ositive results utilizing Arthro-7 have been supported by a UCLA researcher," (*id.* ¶¶ 48, 56). Plaintiffs also complain that Defendants fail to disclose that individuals who "use or handle" Arthro-7 are exposed to lead and other dangerous materials.  (*Id.* ¶ 55.)  The Court considers each alleged false statement in turn.

### 1. "100% natural herbal"

Plaintiffs allege it is false to advertise Arthro-7 as "100% natural herbal" because the product contains animal products.  (TAC ¶ 44.)  Plaintiffs refer specifically to an advertisement that Defendants ran in a newspaper in 2013, which contains the following

phrase in Vietnamese: "100% tu duoc thao thien nhien." (*Id*. Ex. 3.)  Plaintiffs claim that this phrase translates to "100% natural herbal."  (TAC ¶ 44.)

Defendants argue that Plaintiffs' translation of the phrase is incorrect.  Defendants argue that "duoc thao," means "dietary supplement," not "herbal."  (Dkt. 240-2 at 22.)  In support, Defendants provide the deposition testimony of Joseph Nguyen, who testified that "duoc thao" means "dietary supplement."  (Nguyen Depo. at 241:11–23.)  However, Nguyen has also submitted a declaration stating that the full phrase, "100% tu duoc thao thien nhien" means "100% from natural herb."  (Dkt. 268 Ex. 29 ¶ 51.)  There is therefore a disputed issue of fact as to the translation of Defendants' advertisement, and whether it is false.

Nevertheless, summary judgment for Defendants is still appropriate because there is no evidence that Plaintiffs were in any way harmed by this limited advertisement.  Plaintiffs "ordinarily must show economic or reputational injury flowing directly from the deception wrought by [Defendants'] advertising; and that that occurs when deception of consumers causes them to withhold trade from [Plaintiffs]."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Here, there is no evidence that Plaintiffs suffered any economic or reputational injury from the "100% natural herbal" advertisement.  In fact, Defendants present evidence that Plaintiffs suffered no lost profits between 2013 and 2014, when the advertisement ran in the newspaper, because Plaintiffs' sales of JN-7 Best actually increased in that time period.  Specifically, Defendants submit Plaintiffs' detailed sales records of JN-7 Best from April 2012 to March 2017.  (Dkts. 243-19–243-23.)

Plaintiffs do not dispute the authenticity or accuracy of these sales records.  Moreover, Plaintiffs provide no other evidence from which any reasonable trier of fact could conclude Plaintiffs were injured or likely to be injured in any way by Defendants'

advertisement.  Plaintiffs only submit a statement from an expert indicating that "various statements on the Arthro-7 package are misleading and have a positive impact on a consumer's likelihood of purchasing Arthro-7." (*See* Dkt. 249-1 [Pls.' Response to Defs.' Statement of Undisputed Facts, hereinafter "SUF"] ¶ 93.)  This expert opinion goes to whether the advertisement is misleading, but does not explain how Plaintiffs have been injured or are likely to be injured from any of the purportedly misleading statements.

### 2.  "Over 8 Million Bottles Sold!"

Defendants' advertisement indicating that they have sold over 8 million bottles of Arthro-7 is not false.  Defendants submit a summary chart of all the sales of Arthro-7 beginning in 1998 and ending in 2017.  (Dkt. 160-25.)  This chart shows that 8,842,335 bottles of Arthro-7 were sold in that time period.  (*Id.*)  Alberto Miranda, an employee of Defendant US Doctors' Clinical who manages the database of sales for Arthro-7, testified in his deposition that Defendants produced in discovery over 40,000 pages of detailed sales records beginning in 1998 to show how many bottles have been sold.  (Dkt. 241-28 [Deposition of Alberto Miranda] at 12:10–19, 48:3–14.)  Miranda confirmed that the database reflected total sales of 8,842,335 bottles from July 7, 1998 to October 10, 2017.  (*Id.* at 70:23–71:22.)

Plaintiffs argue that Defendants' sales records are unreliable because Defendants' employees have testified that they do not know how many bottles of Arthro-7 have been sold.  For example, Plaintiffs point to deposition testimony from Defendant Tuong Nguyen, the owner of Nutrivita Laboratories.  (Dkt. 268 Ex. 14 at 57:22–58:17.)[2]  When Tuong Nguyen was asked how many bottles of Arthro-7 have been sold, he said that he

---

[2] This deposition was taken in the prior case between the parties, which was filed in 2013.

did not remember and could not provide an estimate.  (*Id*.)  This testimony does not create a disputed issue of fact as to whether 8 million bottles of Arthro-7 have been sold. Tuong Nguyen's testimony does not contradict the 40,000 pages of sales records provided by Miranda, the custodian of those records, which show over 8 million bottles have been sold.  Tuong Nguyen only testified that he did not know how many bottles had been sold—he did not testify that less than 8 million bottles had been sold.

### 3 & 4.  "Doctor Recommended" and tested by a "UCLA Researcher"

Plaintiffs claim that Arthro-7's packaging contains several false statements.  The package states that Arthro-7 is "clinically tested" and "Doctor Recommended," and that "Positive results utilizing Arthro-7 have been supported by a UCLA researcher."  (TAC Ex. 5.)  The packaging also has a picture of a man in a doctor's coat, identified as "Dr. John E. Hahn, Board certified foot surgeon."  (*Id*.)  Plaintiffs argue that the picture and description of Dr. Hahn is misleading because Dr. Hahn is a Doctor of Podiatric Medicine, and not a Medical Doctor.

Defendants submit evidence showing that each of the statements on the package are true.  Defendants submit a March 27, 2013, article published in a journal called Nutrition and Dietary Supplements.  (Dkt. 240-8.)  The article publishes the results of a 12-week clinical study conducted in Shanghai, China.  (*Id*.)  Four of the ten authors of the article are from the Department of Pathology and Laboratory Medicine at the David Geffen School of Medicine at the University of California at Los Angeles.  (*Id*.)  The article provides evidence that Arthro-7 is clinically tested, and positive results from Arthro-7 are supported by the research of researchers at UCLA.  (*Id*.)  Plaintiffs nevertheless argue that the statements that Arthro-7 is "clinically tested" and "supported by a UCLA researcher" are false or misleading, because the studies took place in China.

(Dkt. 249 at 13.)  Plaintiffs' argument is without merit.  Nothing on the Arthro-7 package denies that the studies took place in China.

The parties do not dispute that Dr. Hahn is a Board-certified podiatrist.  Plaintiffs claim that describing him as a "doctor" is false, however, because Dr. Hahn's podiatry license has expired and he is not a medical doctor.  But a podiatrist is a doctor of podiatric medicine who is qualified by education and training to diagnose and treat conditions affecting the foot, ankle, and related structures of the leg.  Plaintiffs provide no admissible evidence showing that "doctor" necessarily means one who is currently licensed or one who has a medical degree.  Plaintiffs instead simply refer to hearsay opinions, including the opinion of the "Attorney General of the state of California that podiatrists are not physicians," and a segment from the television show, *Seinfeld*, for the proposition that "people do not think podiatrists are doctors."  (SUF ¶ 88.)  This evidence is clearly inadmissible hearsay and insufficient to defeat summary judgment.

## 5.  Exposed to Lead and Other Statements

Plaintiffs also complain about a number of other statements claiming that Arthro-7 is safe.  Plaintiffs claim that Defendants fail to disclose, for example, that there are "toxic lead levels" in Arthro-7.  Plaintiffs also claim that Defendants falsely represent that Arthro-7 contains no heavy metals and is "GMP Compliant."  (Dkt. 249 at 13–14.)  As an initial matter, Defendants did not address these alleged false advertisements because most of them are not included in the Plaintiffs' TAC.  In any event, Plaintiffs offer no admissible evidence that these alleged false advertisements are in fact false or misleading.  Plaintiffs only cite to allegations in other lawsuits involving Arthro-7.  (Dkt. 249 at 13 n.13, 14 n.15.)  These allegations are not evidence—they are merely inadmissible hearsay allegations.  Without more, Plaintiffs have failed to present any evidence to support their claim that these advertisements are false.

### C.  Trade Secrets Misappropriation

Plaintiffs bring two claims for trade secrets misappropriation: claim 4 for theft of trade secrets under the federal Defend Trade Secrets Act, (TAC ¶¶ 131–32), and claim 5 for theft of trade secrets under the California Uniform Trade Secrets Act, (*id*. ¶¶ 133–35). Plaintiffs identify four categories of purported trade secrets: Plaintiffs' customer lists, employee information, vendor information, and "jewelry photographic technique."  (SUF ¶ 36.)

To prevail on their trade secrets misappropriation claims, Plaintiffs must show they have a legally protectable trade secret that has been misappropriated by Defendants.  *See* Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1832.  To prove that information constitutes a legally protectable trade secret, Plaintiffs must first demonstrate that they took reasonable steps to keep the information confidential.  *See* Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3).  To prove misappropriation of that trade secret, Plaintiffs must show that Defendants acquired the trade secret by improper means, or disclosed or used the trade secret without consent.  *See* Cal. Civ. Code § 3246.1(b); 18 U.S.C. § 1839(5).

Plaintiffs have failed to show that Defendants misappropriated the four alleged trade secrets.  First, Plaintiffs offer no evidence that their customer lists were kept confidential.  VBS Television's CEO, Joseph Nguyen, admitted and Defendant Tram Ho confirmed that VBS Television provided its customer lists to its vendors, who then delivered products to the Show's customers.  (Nguyen Depo. 184:19–185:13; Dkt. 256 Ex. 170 [Deposition of Tram Ho, hereinafter "Ho Depo."] at 180:24–181:2.)  For this claim, Plaintiffs rely on the conclusory declaration of Aleksei Lam, with whom Plaintiffs had a vendor agreement.  (SUF ¶ 3 [citing Dkt. 256 Ex. 160].)  Lam states that VBS Television has "always" had a contractual understanding, whether written or oral, with its vendors to "protect the confidentiality . . . of VBS' customers' [sic] lists and customer

information." (Dkt. 256 Ex. 160 ¶¶ 6–7.)  However, Lam's declaration is hearsay with respect to his statements about agreements between VBS Television and other vendors, and his own vendor agreement contains no confidentiality agreement.  (*See* Dkt. 256 Ex. 162 at 17.)  The other vendor agreements cited by Plaintiffs likewise contain no confidentiality provisions.  (Dkt. 256 Ex. 162 at 33–69.)  Because Plaintiffs have failed to show that the customer lists were kept secret, the customer lists cannot constitute a protectable trade secret.  *See Ruckelshaus v. Monstanto Co*., 467 U.S. 986, 1002 (1984) (stating that "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished") (internal citations omitted).

As for VBS Television's employee information, Plaintiffs have failed to show what specific employee information was confidential or how it was allegedly misappropriated.  Plaintiffs argue that Defendant Tram Ho was "[a]rmed with VBS' confidential employee information," which she used to "poach[]" VBS employees through promises of higher compensation.  (Dkt. 249 at 25–26.)  In response to this claim, Show Defendants produced their database of employee files so that Plaintiffs could cross-check the information with Plaintiffs' own employee database.  (SUF ¶ 51.) However, Plaintiffs have still made no showing that Show Defendants possess any information on Plaintiffs' employees, much less confidential information.  Employees are allowed to share their salary with competitors and negotiate better compensation packages.  Plaintiffs have failed to show that their employee compensation information is a legally protectable trade secret, let alone that Defendants acquired any information through improper means.

Plaintiffs have also failed to show that Defendants misappropriated any confidential vendor information.  Plaintiffs allege that vendor information such as "vendor names, personal contact information such as email address[es] and cell phone

numbers, and individual contacts at vendor companies," among other things, constitute trade secrets.  (*Id*. ¶ 36.)  However, anyone watching the Fight Price Show can see the vendor's name and find its contact information.  (*See* Dkt. 268 Ex. 10.)  Plaintiffs also cite a series of documents that Defendant Tram Ho produced to Plaintiffs that contain vendors' ad revenue, advertising contracts, and sales reports.  (Dkt. 249 at 26 [citing Dkt. 256 Exs. 161–66].)  However, Plaintiffs fail to show that these documents were kept secret, or that Defendants disclosed the documents or acquired them through improper means.  Three of the cited documents are spreadsheets of vendor sales and revenue from 2014 to 2015.  (*See* Dkt. 256 Exs. 161, 164, 165.)  Tram Ho testified that she was required to take daily notes on vendor sales and revenue while working at VBS.  (Ho. Depo. 253:21–254:20.)  On a monthly basis, she would then type those notes into a single spreadsheet and throw the handwritten notes away.  (*See id*.)  Plaintiffs fail to present any evidence of how Tram Ho acquired this information, the product of her daily notes at VBS, through improper means.  Nor do Plaintiffs show that Defendants or Tram Ho used or disclosed this information.  Tram Ho produced the information in response to Plaintiffs' requests because it was already on her computer.  (*See id*.)  No evidence was presented that she improperly took the information home with her when she left VBS to misappropriate it.  The other vendor document found in Tram Ho's possession was a sales commission report for December 2014 to July 2015, (Dkt. 256 Ex. 163), which Tram Ho testified was given to her by a VBS employee so she could "calculate her pay amount," (Ho Depo. 251:20–252:7).  The last vendor document Plaintiffs cite is a series of VBS advertising contracts from 2014.  (Dkt. 256 Ex. 162.)  Although these documents were created by VBS, Plaintiffs fail to show how they were kept confidential.  Plaintiffs also fail to present any evidence that Tram Ho used the documents or acquired them through improper means.  Plaintiffs' conclusory and unsupported allegation that the

contracts were "acquired through improper means," (Dkt. 249 at 26), is not evidence of trade secrets misappropriation.[3]

Finally, Plaintiffs fail to show that their "jewelry photographic technique" constitutes a protectable trade secret.  (*See* TAC ¶ 36.)  As evidence of VBS' "unique technique to display and photograph the jewelry," Plaintiffs cite Aleksei Lam's declaration.  (SUF ¶ 56 [citing Dkt. 256 Ex. 160 ¶ 16].)  However, the Lam declaration does not mention lighting technique or camera angles.  (*See* Dkt. 256 Ex. 160 ¶ 16.)  Plaintiffs also cite deposition testimony of Joseph Nguyen in which he states that the "technique when you use [sic] iPad or iPhone and you light it up and then shoot it into the diamond, they will make into [sic] different light."  (SUF ¶ 56 [citing Nguyen Depo. 133:2–8].)  However, Nguyen admits, moments later, that if "you go to the jewelry store, they have the same concept.  They have the light, you know, shining down on the diamond."  (Nguyen Depo. 133:9–15.)  In other words, the Show Defendants employ conventional lighting techniques used across the industry and in jewelry stores.  The lighting technique is not a secret, and the Plaintiffs have failed to show they took any steps to keep it confidential.

//

---

[3] Given the weakness of their trade secrets misappropriation claims, Plaintiffs resort to unsubstantiated character attacks on Defendant Tram Ho.  (*See* Dkt. 249 at 25 ["Tram Ho is a proven pathological liar" whose "lies do not provide a basis for summary adjudication."].)  Plaintiffs cite to Tram Ho's purported "admission" of "getting caught in lie after lie" when, in her deposition, she acknowledged she might have made a mistake in entering information on her LinkedIn profile.  (Dkt. 250 Ex. 170 at 65–68.)  Plaintiffs then cite to Tram Ho's "deposition in full" as evidence of her "lies."  (Dkt. 249 at 25.)  The Court does not make credibility determinations, nor weigh conflicting evidence at the summary judgment stage.  *Eastman Kodak Co.*, 504 U.S. at 456.  Further, such conclusory and speculative allegations in moving papers are insufficient to defeat summary judgment.  *See Thornhill*, 594 F.2d at 738.

### D.  Interference with Contractual Relationships & Economic Advantage

Plaintiffs bring two interference claims: claim 10 for interference with contractual relationships under California law, (TAC ¶¶ 146–47), and claim 11 for interference with prospective economic advantage under California law, (*id.* ¶¶ 148–49).  In support of claim 10, Plaintiffs allege that Defendant KVLA lured Tram Ho from the Fight Price on Television Show to host the Diamond Show in breach of her contract.  (*Id.* ¶¶ 67, 147.)  For claims 10 and 11, Plaintiffs further allege that Show Defendants interfered with Plaintiffs' relationships with certain employees and their vendor, Kim Cuong Jewelry.  (*Id.* ¶¶ 147, 149.)

To prove a claim of intentional interference with contractual relationships, a plaintiff must show (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this contract, (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship, (4) actual breach or disruption of that relationship, and (5) damages.  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Plaintiffs have failed to show that Defendant KVLA interfered with Tram Ho's contractual relationship with VBS Television.  The parties do dispute whether Tram Ho was under an employment contract at the time she left VBS Television in March 2016.  (SUF ¶¶ 57–58, 60.)  Defendants cite deposition testimony of Thu Thi Nguyen, the president of VBS Television, in which he states that Tram Ho's contract with the company ended on March 31, 2016.  (Dkt. 241 Ex. 3 at 83:18–25; 89:13–22.)  Plaintiffs cite a signed agreement between VBS Television and Tram Ho dated July 15, 2015 that provides for a one-year employment term ending on July 30, 2016.  (TAC Ex. 13.)  However, Plaintiffs also allege in their TAC that at some point in 2016, "VBS agreed to

re-negotiate Tram's compensation package after a review period of six months.  But when that time came, Tram just walked away" from VBS Television.  (TAC ¶ 66.)

Regardless of whether Tram Ho's employment contract was still in effect when she left in March 2016, Plaintiffs' interference claim with respect to Tram Ho nevertheless fails because Plaintiffs have offered no evidence that Defendants intentionally induced breach of any purported contract between Tram Ho and Plaintiffs.  Tram Ho did not quit (and allegedly breach her contract) because Defendant KVLA "poached" her or otherwise interfered with her relationship with Plaintiffs.  (*See* FAC ¶ 147.)  Tram Ho testified in her deposition that she left VBS Television because she was being sexually harassed by Joseph Nguyen, the Chief Executive Officer and Chairman of VBS and then-Catholic priest.  Tram Ho said that Nguyen "grabbed [her] boobs, put his hands on [her] butt and then put his hands into [her] groin area."  (Ho Depo. at 71:17–21.)  Because she "could not stand" his offensive and illicit conduct, she "had to quit" her position at VBS Television.  (*See id*.)  Indeed, Nguyen admitted in his deposition that he was forced to leave his parish and the priesthood because of this conduct.  (Nguyen Depo. 19:20–21:25.)  Plaintiffs submit no evidence showing that Defendant KVLA induced Tram Ho to leave VBS.  The only evidence before the Court indicates that she left of her own volition to escape sexual harassment at the hands of VBS' Chief Executive Officer and Chairman, Joseph Nguyen.

Plaintiffs have also failed to present any evidence that Show Defendants interfered with other employee contracts.  Plaintiffs allege that Show Defendants interfered with contractual relationships with other VBS Television employees, including Cuong Nguyen, Thang Nguyen, and Tran Van Chi.  (SUF ¶ 65.)  However, Plaintiffs have provided no evidence of employment contracts with these individuals.  Nguyen even testified that some of these individuals were contractors and not employees.  (Nguyen Depo. 407:11–12.)  Without employment contracts, the employees who left VBS

Television were at will and could leave whenever they chose.  Even if there were any verbal contracts with these employees, which Plaintiffs have not shown, there is no evidence that Show Defendants had knowledge of them or induced their breach.  (SUF ¶ 67.)  Further, Nguyen testified that Cuong Nguyen left VBS Television to return to Vietnam, (Nguyen Depo. 382:10–14), Thang Nguyen left because he asked for a raise but was turned down, (*id*. 384:9–15), and Tran Van Chi left to help his son open an office in San Francisco, (*id*. 390:16–20).  Plaintiffs have failed to show that they had contracts with these employees, let alone that Show Defendants interfered with those contracts and lured the employees away.

Finally, Plaintiffs have not offered evidence that Show Defendants interfered with a contractual relationship with Plaintiffs' vendor, Kim Cuong Jewelry.  Nguyen admitted that VBS Television did not have any exclusive agreement with Kim Cuong Jewelry under which Kim Cuong Jewelry would supply jewelry only to VBS Television.  (Nguyen 410:20–411:2.)  Although Kim Cuong Jewelry entered into advertising agreements with Plaintiffs, it was free to provide its merchandise to other shows.  (*See id*; Dkt. 250 Ex. 38 [advertising agreements].)  In contracting with Kim Cuong Jewelry, Show Defendants did not interfere with or induce a breach of any agreement between Kim Cuong Jewelry and Plaintiffs.  Plaintiffs presented no evidence to suggest otherwise.

Plaintiffs also allege that Show Defendants interfered with their economic advantage by disrupting Plaintiffs' relationships with certain employees and their vendor, Kim Cuong Jewelry.  (*Id*. ¶¶ 147, 149.)  In order to prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must prove (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit, (2) defendant's knowledge of the relationship, (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) economic harm to the plaintiff.  *CRST Van*

*Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).  In California, the primary difference between a claim for interference with contractual relationships and a claim for interference with economic advantage is that under the latter, a plaintiff must also "allege an act that is wrongful independent of the interference itself."  *Id.* at 1108. An act is independently wrongful if it is unlawful under "some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.* at 1109.

Plaintiffs have failed to show that Show Defendants engaged in any independently unlawful acts to disrupt Plaintiffs' relationships with its vendors or employees.  To prevail on this claim, Plaintiffs must prove that the Defendants committed "intentional acts, *apart from the interference itself.*"  *See id.* at 1108 (emphasis added).  However, Plaintiffs have failed to allege that Defendants committed any illegal acts other than Plaintiffs' conclusory and unsubstantiated claims that Defendants stole trade secret information.  (Dkt. 249 at 29.)  Since Plaintiffs failed to present any evidence of trade secrets misappropriation under California and federal law, any claims for interference with prospective economic advantage based on trade secrets misappropriation likewise fail.  *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 936 (N.D. Cal. 2008).

**E.  Antitrust**

Plaintiffs bring two antitrust claims: claim 8 for antitrust violations under sections 1 and 2 of the Sherman Act, (TAC ¶¶ 142–43), and claim 9 for antitrust violations under the California Cartwright Act, (*id.* ¶¶ 144–45).  In support of these claims, Plaintiffs allege that Defendants conspired to take away VBS' employees, illegally restrain trade in the Vietnamese and general market place by attempting to eliminate JN-7 Best as a competitor to Anthro-7, file a "sham litigation" against VBS in this Court, and unlawfully promote Anthro-7 through deceptive false advertising and price-fixing.  (*Id.* ¶¶ 4–12.)

To prevail on a claim for a Sherman Act section 1 violation, a plaintiff must show that (1) there was an agreement, conspiracy, or combination between two or more entities, (2) the agreement was an unreasonable restraint of trade, and (3) the restraint affected interstate commerce. *Am. Ad Mgmt., Inc. v. GTE Corp*., 92 F.3d 781, 784 (9th Cir. 1996). To establish a Sherman Act section 2 violation for attempted monopolization, a plaintiff must demonstrate (1) specific intent to control prices or destroy competition, (2) predatory or anticompetitive conduct directed at accomplishing that purpose, (3) a dangerous probability of achieving "monopoly power," and (4) causal antitrust injury. *McGlinchy v. Shell Chem. Co*., 845 F.2d 802, 811 (9th Cir. 1988). The California Cartwright Act is the primary state antitrust law and mirrors the Sherman Act. *See Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976) ("A long line of California cases has concluded that the Cartwright Act is patterned after the Sherman Act," and "federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act.").

To the extent that Plaintiffs' antitrust claims are based on Defendants' alleged trade secrets misappropriation, trade dress infringement, and false advertising, the antitrust claim fails for the same reasons stated above. This leaves Plaintiffs' assertion that the Defendants' prior lawsuit was a "sham litigation" intended to put VBS out of business. (TAC ¶¶ 5, 22, 88–103.) In the prior lawsuit, Defendant Nutrivita Laboratories alleged that the JN-7 dietary supplement infringed the Anthro-7's trade dress and other intellectual property. *Nutrivita Labs., Inc. v. VBS Distribution, Inc., et al*., 160 F. Supp. 3d 1184 (C.D. Cal. 2016). However, this Court already expressly rejected VBS' claim that the litigation was baseless. (*See* Dkt. 136–2 at 14:6–7 ["[T]here is no reason to believe that the lawsuit was frivolous or the filings improper."].) On appeal, the Ninth Circuit affirmed this Court's finding, noting "there was no evidence in the record to support a finding of bad faith, and Nutrivita's complaint as a whole was meritorious."

(Dkt. 136–3 at 3.)  Plaintiffs have already attempted this argument and failed.  It does not resurrect their antitrust claims here.

### F.  Unfair Competition

Plaintiffs bring two unfair competition claims: claim 1 for unfair competition under the Lanham Act, (TAC ¶¶ 119–23), and claim 3 for unfair competition under California common law, (*id*. ¶¶ 129–30.)  Plaintiffs do not allege any separate facts in support of these claims.  They appear to be catch-all claims dependent on Plaintiffs' claims for trade dress infringement.  These claims fail for the same reasons Plaintiffs' others claims fail.

### G.  Breach of Fiduciary Duty

Plaintiffs assert a claim for breach of fiduciary duty under California law against Defendant Tram Ho.  (TAC ¶¶ 152–53.)  Specifically, Plaintiffs allege that Tram Ho breached her "fiduciary duty of trust, confidence, and loyalty owed to Plaintiffs."  (*Id*.)  Defendants did not move for summary judgment on this claim or on the claim for civil conspiracy, discussed below.  Instead, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. 239.)

On a motion for judgment on the pleadings, the Court is limited to material included in the pleadings.  *See Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011).  Where the Court exercises its discretion to consider material outside of the pleadings, it must convert the motion for judgment on the pleadings to a motion for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment.").  Plaintiffs' claims for breach of fiduciary duty and civil conspiracy are entirely premised

on the conduct alleged in Plaintiffs' claims for trade secrets misappropriation and interference with contractual relationships.  The parties have had multiple opportunities to brief and develop the evidentiary record regarding the conduct underlying those claims.  The Court exercises its discretion to consider that evidence here, and converts Defendants' motion for judgment on the pleadings into a motion for summary judgment.[4]

To prove a claim for breach of fiduciary duty under California law, a plaintiff must show (1) existence of a fiduciary duty, (2) breach of the duty, and (3) resulting damages. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 988 (C.D. Cal. 2011).  "While breach of fiduciary duty is a question of fact, the existence of [a] legal duty in the first instance and its scope are questions of law."  *Kirschner Brothers Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790 (1986) (internal citation omitted).  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).

The Court takes pause before addressing whether Tram Ho, the victim of sexual harassment at the hands of VBS' CEO and Chairman, owed VBS any fiduciary duties of "trust, confidence, and loyalty" in return.  (*See* TAC ¶¶ 152–53.)  Plaintiffs claim that Tram Ho's employment contract purportedly in effect when she left VBS Television showed that she was "not a mere employee," but rather a manager of VBS Television.  (Dkt. 245 at 17 [citing TAC ¶ 64, Ex. 13 ¶ 3].)  The cited portion of the employment

---

[4] Rule 12(d) requires that the parties have "a reasonable opportunity to present all the material that is pertinent" to the converted motion for summary judgment. Fed. R. Civ. P. 12(d).  The material pertinent to the converted motion for summary judgment on the breach of fiduciary duty and civil conspiracy claims is the material allegedly underlying Plaintiffs' misappropriation and interference claims.  In light of the three rounds of briefing and hundreds of exhibits submitted on motions for summary judgment on those other claims, (Dkts. 174, 216, 249), Plaintiffs have been given ample opportunity to present evidence on the conduct underlying the breach of fiduciary duty and civil conspiracy claims.

agreement describes Tram Ho's five duties as (1) "[p]romoter and coordinator of diamond and jewelry auction programs broadcasting on Tuesdays and Thursdays each week," (2) "[s]olicitor of advertisements and sponsorship from businesses," (3) "[a]nchorwoman for news broadcasting when needed," (4) "[p]roducer of 'Hue Thuong' show," and (5) "[a]ssisting to produce the ads when needed." (*Id*. ¶ 3.)[5]

Plaintiffs have failed to show that Tram Ho had a fiduciary relationship with Plaintiffs as a matter of law. Relationships imposing a fiduciary duty as a matter of law are those between principal and agent, joint venturers, attorney and client, and corporate officers and their corporation. *Blatty v. Warner Bros.*, 2011 WL 13217379, at *8 (Apr. 21, 2011) (quoting *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 632 (2005)). Plaintiffs rely on one California state appellate case for the assertion that an employee also owes its employer a fiduciary duty where the employee "participat[es] in management." (Dkt. 245 at 16 [citing *Gab Bus. Servs. v. Linsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 422 (2000)].) However, Plaintiffs at no point show that Tram Ho managed VBS Television. Tram Ho's detailed employment agreement, even if it was in effect at the time she left VBS Television, described Tram Ho as an "employee," not a director, manager, or officer. (TAC Ex. 13.) Tram Ho's specifically outlined duties, such as soliciting advertisements and promoting jewelry auction programs, do not include high-level management of the company. (*See id*.) Tram Ho did not have a fiduciary relationship with VBS Television as a matter of law.

Plaintiffs next argue that the confidentiality provisions in Tram Ho's employment agreement, which required her to "retain the confidentiality of, and not disclose, valuable

---

[5] Plaintiffs also argue in their opposition to Defendants' motion for judgment on the pleadings that Tram Ho was the "Vice President of Marketing (an officer) at VBS." (Dkt. 245 at 17.) However, Plaintiffs never made that allegation in the operative TAC or exhibits attached thereto, and they fail to cite any other evidence in their opposition. Further, Tram Ho's employment contract explicitly characterizes Tram Ho as an "employee," not a director, officer, or executive of VBS Television. (*See* TAC Ex. 13.)

trade secret information," effectively imposed a fiduciary duty.  (TAC ¶ 61.)  However, receipt of confidential information, without more, does not compel the imposition of a fiduciary duty.  *City of Hope*, 43 Cal. 4th at 391–94; *see Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 960 (N.D. Cal. 2002) ("A confidentiality agreement does not give rise to a fiduciary relationship unless it does so expressly.").  Plaintiffs also allege that "VBS gave Tram Ho discretion in how she exercised her job duties" and relied on her "to competently perform her duties."  (TAC ¶ 65.)  Plaintiffs argue that because VBS "placed great trust and confidence" in Tram Ho, Tram Ho owed them a fiduciary duty of trust and confidence in return.  (Dkt. 245 at 16–17; *see* TAC ¶ 61.)  Plaintiffs fail to explain how these vague allegations show that Tram Ho owed a fiduciary duty to Plaintiffs.  If granting an employee discretion to do a job and relying on the employee to competently perform that job were sufficient, every employee would owe their employer a fiduciary duty.  *See Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 960 (N.D. Cal. 2002) ("A fiduciary relationship . . . does not arise simply because parties repose trust and confidence in each other."); *Worldvision Enters., Inc. v. Am. Broadcasting Cos.*, 142 Cal. App. 3d 589, 595 (1983).  Because Plaintiffs fail to show the existence of a fiduciary duty in the first instance, they cannot prevail on a claim for breach of fiduciary duty.

But putting aside the issue of whether Tram Ho owed Plaintiffs a fiduciary duty as an employee of VBS Television, Plaintiffs' breach of fiduciary duty claim nevertheless fails because Plaintiffs have not shown that Tram Ho engaged in any conduct that would constitute a breach of any duty.  Plaintiffs' claim for breach of fiduciary duty rests entirely on the misconduct alleged in Plaintiffs' claims for misappropriation of trade secrets and interference with contractual relationships.  Plaintiffs have had multiple opportunities to present evidence and brief the purported misconduct that forms the basis of those claims.  Yet Plaintiffs failed to present any evidence of trade secrets

misappropriation or interference with contractual relationships.[6]  Accordingly, Plaintiffs'
derivative claim for breach of fiduciary duty must also fail.

## H.  Civil Conspiracy

Plaintiffs assert a claim for civil conspiracy under California law.  (TAC ¶ 151.)
Civil conspiracy is not an independent cause of action, but rather a theory of vicarious
liability under which certain defendants may be held liable for torts committed by others.
*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1097 (C.D. Cal. 2009).  In order to invoke
vicarious liability, a plaintiff must allege the formation of a conspiracy to commit
wrongful acts, the commission of the wrong acts, and the damage resulting from such
acts.  *Id.* (citing *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419
(2007)).  Because all of Plaintiffs' independent causes of action fail, the vicarious claim
for civil conspiracy also fails.

//

---

[6] Further, to the extent that Plaintiffs' breach of fiduciary duty claim turns on Plaintiffs' trade secrets
misappropriation allegations, the claim is preempted by the California Uniform Trade Secrets Act.  *See
First Advantage*, 569 F. Supp. 2d at 936 (citing cases holding that common law claims based on
misappropriation of trade secrets are preempted by the California Uniform Trade Secrets Act).

**IV.  CONCLUSION**

Simply put, Plaintiffs' opposition is one complete failure of proof.  It is nothing more than conclusory and unsupported allegations of wrongdoing on Defendants' part. That is not enough to raise a genuine issue of material fact.  Accordingly, Defendants' motion and converted motion for summary judgment are **GRANTED**.[7]

DATED:     September 10, 2018

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[7] Both parties filed applications to file under seal certain documents in relation to Defendants' motion for summary judgment.  (Dkts. 242, 248, 265.)  The only reason cited by the parties to justify their applications to seal is the parties' protective order.  As the Court has already explained in length, a mere citation to the protective order is not sufficient to warrant sealing documents from the public docket. (Dkt. 227 at 6–7.)  The parties' applications are therefore **DENIED**.