**DYKEMA GOSSETT LLP**
James S. Azadian (SBN: 225864)
jazadian@dykema.com
Cory L. Webster (SBN: 274404)
cwebster@dykema.com
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

**MK SMITH, APC**
Mark T. Kearney (SBN: 219707)
mkearney@mks-law.com
Jason K. Smith (SBN: 277923)
jsmith@mks-law.com
9891 Irvine Center Drive, Suite 200
Irvine, California 92618
Tel: (949) 299-2500
Fax: (949) 408-1750

Attorneys for Plaintiffs
VBS DISTRIBUTION, INC. and
VBS TELEVISION, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VBS DISTRIBUTION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRIVITA LABORATORIES, INC., et al.,<br><br>Defendants. | Case No. 8:16-CV-01553-CJC (DFMx)<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  October 5, 2020<br>Time:  1:30 p.m.<br>Crtrm.:  9B<br>Ronald Reagan Federal Bldg.<br>411 W. 4th St., Santa Ana, CA |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................. 5

II.     STATEMENT OF FACTS ..................................................................... 6

III.    ARGUMENT ........................................................................................ 8

    A.  The Court should deny summary judgment on the breach of
        fiduciary duty claim. ................................................................... 8

        1.  There are genuine factual disputes about whether Ms. Ho
            had a fiduciary duty as a Vice President of VBS or based
            on her voluntary acceptance of a relationship of
            confidence. .......................................................................... 8

        2.  VBS has presented evidence that it was harmed by the
            alleged breach of fiduciary duty. ...................................... 12

        3.  The trade secret claim does not supersede the fiduciary
            duty claim. ........................................................................ 13

    B.  The Court should deny summary judgment on the trade secrets
        claim. .......................................................................................... 14

        1.  The Court should decline to consider Defendants' serial
            challenge to the trade secrets claim ................................ 14

        2.  There are genuine factual disputes about whether VBS's
            customer and auction lists are protectible trade secrets. ... 15

        3.  There is a genuine factual dispute on the question of
            misappropriation. ............................................................ 19

    C.  Defendants offer no independent basis for summary judgment on
        the civil conspiracy theory of liability. .................................... 23

    D.  Defendant Tom Nguyen is not entitled to summary judgment ............. 23

IV.     CONCLUSION .................................................................................. 23

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Armentero v. Willis*,
No. CIV S-08-2790 GGH P, 2013 U.S. Dist. LEXIS 4764 (E.D. Cal. Jan. 11, 2013) ................................................................................................................ 14

*Balint v. Carson City*,
180 F.3d 1047 (9th Cir. 1999) ............................................................................. 8

*Frudden v. Pilling*,
877 F.3d 821 (9th Cir. 2017) ............................................................................... 8

*Hoffman v. Tonnemacher*,
593 F.3d 908 (9th Cir. 2010) ............................................................................. 14

*United States v. Valdovinos-Mendez*,
641 F.3d 1031 (9th Cir. 2011) ........................................................................... 19

**State Cases**

*ABBA Rubber Co. v. Seaquist*,
235 Cal. App. 3d 1 (1991) ................................................................................. 18

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ............................................................................ 16

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
226 Cal. App. 4th 26 (2014) .............................................................................. 16

*Gab Bus. Servs. v. Lindsey & Newsom Claim Servs.*,
83 Cal. App. 4th 409 (2000) ......................................................................... 9, 10

*Hasso v. Hapke*,
227 Cal. App. 4th 107 (2014) ........................................................................... 8, 9

*Johnson v. Superior Court*,
38 Cal. App. 4th 463 (1995) ............................................................................ 6, 9

*Klamath-Orleans Lumber, Inc. v. Miller*,
87 Cal. App. 3d 458 (1978) ............................................................................... 18

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................. 13

*L.A. Mem'l Coliseum Com. v. Insomniac, Inc.*,
  233 Cal. App. 4th 803 (2015) ............................................................................... 5, 9

*Morlife, Inc. v. Perry*,
  56 Cal. App. 4th 1514 (1997) ...................................................................... 17, 18, 19

*O'Neal v. Stanislaus Cty. Emps.' Ret. Ass'n*,
  8 Cal. App. 5th 1184, 1219 (2017) ......................................................................... 13

*Pellegrini v. Weiss*,
  165 Cal. App. 4th 515 (2008) ................................................................................... 8

*Reeves v. Hanlon*,
  33 Cal. 4th 1140 (2004) ............................................................................................ 9

*Richelle L. v. Roman Catholic Archbishop*,
  106 Cal. App. 4th 257 (2003) ........................................................................... 11, 12

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) ............................................................................... 15

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ................................................................................. 13

**Federal Statutes**

18 U.S.C. § 1832 et seq. ............................................................................................ 15

**State Statutes**

Cal. Civ. Code § 3426.1 ...................................................................................... 15, 16

Cal. Code Civ. Proc. § 2019.210 ............................................................................. 15

**Other Authorities**

CACI 4101 .............................................................................................................. 13

**DYKEMA GOSSETT LLP**
**333 SOUTH GRAND AVENUE**
**SUITE 2100**
**LOS ANGELES, CALIFORNIA 90071**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# I.    <u>INTRODUCTION</u>

This case originally involved claims against two overlapping, but not identical, groups of defendants. The parties have called these groups the Supplement Defendants and the Show Defendants.

This case has returned to this Court after the Ninth Circuit affirmed in part and reversed in part the Court's prior judgment for Defendants. Three claims remain against the Show Defendants: breach of fiduciary duty, misappropriation of trade secrets, and civil conspiracy. A fourth claim—false advertising under the Lanham Act against the Supplement Defendants—is the subject of a pending petition for writ of certiorari filed with the Supreme Court.

This Court invited Defendants to submit a motion for summary judgment on the fiduciary duty claim. Defendants' motion is much broader than that. They include a successive request for summary judgment on an issue this Court already addressed in a previous summary judgment motion—the trade secrets claim. Because there is no change in the factual record or the law, the Court should not entertain that request, including the several new arguments Defendants could have raised in their prior summary judgment motion but did not.

On the merits, Defendants' motion reads much like an outline for a trial argument. They challenge the credibility of VBS's witnesses, try to poke holes in the persuasiveness of VBS's evidence, offer self-serving explanations for evidence that can support more than one factual inference, and downplay evidence not in their favor.

For example, in arguing that defendant Tram Ho did not owe a fiduciary duty to VBS, Defendants try to minimize the fact that Ms. Ho was the Vice President of Marketing for VBS. "[O]fficers of corporations who participate in the management of the corporation are considered fiduciaries as a matter of law," *L.A. Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 834 (2015). To escape that conclusion, Defendants offer Ms. Ho's self-serving testimony that the Vice

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

President title was nominal and that she lacked any managerial authority. VBS offers competing evidence that Ms. Ho in fact had managerial authority as a Vice President. Because the "evidence of facts bearing upon this decision is in conflict, its resolution is to be made by the finder of fact." *Johnson v. Superior Court*, 38 Cal. App. 4th 463, 477 (1995).

On the issue of misappropriation of VBS's trade secrets, Defendants present the self-serving testimony of Ms. Ho that she did not have access to the confidential customer information. But VBS has presented contrary evidence that Ms. Ho was given confidential customer information after each show. VBS also presented evidence that it received telephone calls from several customers saying they had been contacted by Ms. Ho to promote Defendants' competing show. Ms. Ho could not have solicited VBS's customers without having access to the confidential information. To deflect from that evidence, Defendants argue that VBS's customer information was maintained in digital format and that Ms. Ho did not have "computer" access to that information. Defendants' deflection tact only underscores that the material facts are in dispute.

While it remains to be seen whether a jury will find Defendants' arguments persuasive, that is irrelevant on a motion for summary judgment. Because the material facts are in dispute, Defendants' motion must be denied.

## II.    STATEMENT OF FACTS[1]

In 2011, VBS Television, Inc. ("VBS") created the television program in the

---

[1]    VBS provides here a brief summary of the facts. The specific evidence showing a genuine dispute of material facts are identified and discussed in the argument section of this memorandum. Because the record has not changed (for the most part) since prior summary judgment proceedings, and the parties are relying on evidence previously submitted to the court, VBS uses the exhibits numbers as used in prior submissions. But VBS resubmits those materials here and (apart from excerpts of deposition transcripts) consecutively paginates the resubmitted material. The page numbers in the evidentiary citations in this memorandum are to the page

Vietnamese market called "Dau Gia Tren Truyen Hinh," which translates in English as "Fight Price On TV" ("VBS Show").  Joseph Nguyen Decl. ¶ 4.  The VBS Show is an auction style program in Vietnamese where customers phone in and bid on consumer items such as jewelry.  *Id.*  The show immediately found success in the Vietnamese American community.  *Id.*  For about five years, the VBS Show was the only Vietnamese-language live diamond jewelry auction television program.  *Id.*

For many years, VBS Television devoted much time, effort, and costs— including advertising its television show in the newspaper, emails, magazines, flyers, and on the radio and television—to attracting customers.  Joseph Nguyen Decl. ¶ 12.  Through those efforts, over the years VBS compiled proprietary customer information by maintaining the information from sales through the VBS Show.  *Id.* ¶ 38.

No one is more familiar with VBS's extensive marketing efforts to attract customers and gather confidential customer information than Defendant Tram Ho, who was the VBS Vice President of Marketing from 2012 until she left VBS in 2016.  *Id.* ¶ 22.  In or about 2016, Ms. Ho, conspired with the other Show Defendants (KVLA, Inc., Jenny Do, and Tom Nguyen) to create, through unlawful means, a competing version of the VBS Show.  *Id.* ¶¶ 24–27.  The Show Defendants launched their show "Diamond at a Surprise Low Price."  *Id.*  The competing show was in Vietnamese and targeted the Vietnamese-American community.  *Id.*

The Show Defendants went far beyond any notion of fair competition.  Rather than seeking to attract customers through their own efforts, Defendants instead shortcut that process by stealing VBS's confidential information through former VBS host and Vice President of Marketing, Ms. Ho.  While still serving as the VBS Vice President of Marketing and host of the VBS Show, Ms. Ho conspired gathered

_____

numbers in the lower right corner of the exhibits.  Several of the exhibits are subject to a protective order and are thus submitted under seal.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

VBS's confidential information (including thousands of customer identities, buying histories, cell phone numbers, and other information) and then quit her position with VBS to later use the confidential information on behalf of the Show Defendants. This enabled Defendants to market to VBS's customers, including by *directly* contacting VBS customers using the customer cell phone information stolen from VBS.

## III. ARGUMENT

VBS will not rehash the entire familiar summary judgment standard. But because Defendants base their motion mainly on their own version of the facts, the legal standard bears emphasizing. The Court should review the facts, as the Ninth Circuit would on appeal, in the light most favorable to VBS. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). And the Court should not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). Defendants' one-sided factual telling of the material facts is not undisputed.

### A. The Court should deny summary judgment on the breach of fiduciary duty claim.

California law applies to VBS's fiduciary duty claim. A breach of fiduciary duty requires (1) the existence of a fiduciary duty; (2) its breach; and (3) resulting damages. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008). Defendants address the first (existence of a duty) and third (damages) elements. Both arguments fail.

#### 1. There are genuine factual disputes about whether Ms. Ho had a fiduciary duty as a Vice President of VBS or based on her voluntary acceptance of a relationship of confidence.

"[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Hasso v.*

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*Hapke*, 227 Cal. App. 4th 107, 140 (2014) (alteration in original).  VBS contends that Ms. Ho owed a fiduciary duty to VBS both (1) as a matter of law because of her officer role at VBS and (2) by voluntarily accepting a confidential relationship.

Although the existence of a fiduciary duty is a "question of law," that question cannot be determined on summary judgment when facts material to that determination are in dispute.  *Hasso*, 227 Cal. App. 4th at 140 (whether a party has a role for which the law imposes a fiduciary duty "is a question of fact").  For example, like a fiduciary duty, "[w]hether an attorney-client relationship exists is a question of law," but "[i]f evidence of facts bearing upon this decision is in conflict, its resolution is to be made by the finder of fact."  *Johnson v. Superior Court*, 38 Cal. App. 4th 463, 477 (1995).  Here, there is such a conflict in the evidence, which precludes summary judgment.

Evidence shows that Ms. Ho had a managerial role as a VBS Vice President. "[O]fficers of corporations who participate in the management of the corporation are considered fiduciaries as a matter of law."  *L.A. Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 834 (2015); *see also Gab Bus. Servs. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 420–21 (2000) ("[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law."), *disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (2004).  "Conversely, a 'nominal' officer with no management authority is not a fiduciary."  *Gab Bus. Servs.*, 83 Cal. App. 4th at 421.

Ms. Ho acknowledges that she was a VBS "vice president," in addition to being the host of the VBS Show.  Mot. at 7.  She offers her own self-serving testimony, however, that the "vice president" title was "inflated" and "meaningless" and that she did not actually participate in management of VBS in any way.  *Id.*

VBS disputes that contention.  Ms. Ho had the title of Vice President of Marketing.  Joseph Nguyen Decl. ¶ 22.  As part of her role, Ms. Ho was "involved

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

in the management and operation of the VBS Show and the other VBS employees involved with the show," and she "was responsible for overseeing all marketing activity of VBS." *Id.* ¶ 18, 22.  She also oversaw vendors and all technicians working on the set of the VBS Show. *Id.* ¶ 22.  While she was a VBS officer, Ms. Ho was "second in command" to VBS's principal, Joseph Nguyen. *Id.* All VBS employees other than Mr. Nguyen took direction from Ms. Ho. *Id.* She was the only VBS employee who worked directly with Mr. Nguyen on strategy and expansion for the VBS Show. *Id.* Ms. Ho had business cards identifying her position as the Vice President of Marketing for VBS, and she acted and held herself out as the Vice President of Marketing. *Id.* Ms. Madalyn Huynh, who worked with Ms. Ho at VBS, declared that Ms. Ho "was trusted with the information because she was a high-level managerial employee and show host who had agreed to maintain the confidentiality of such documents and information." Huynh Decl. ¶ 6.  All this evidence shows a genuine dispute about whether Ms. Ho participated in management of the company.  That dispute alone precludes any determination on summary judgment as to whether Ms. Ho had a fiduciary duty. *Gab Bus. Servs.*, 83 Cal. App. 4th at 421 ("Whether a particular officer participates in management is a question of fact.").[2]

_____

[2]     In trying to downplay, and perhaps distract from, Ms. Ho's role as a VBS Vice President, Defendants take an improper potshot at VBS's principal, Joseph Nguyen. Mot. at 7. Defendants' assertion that Mr. Nguyen "is accused of sexually harassing Ms. Ho" is materially misleading. Although this Court had suggested in its September 18, 2018 order that Ms. Ho was "the victim of sexual harassment," the facts are not as the Court was led to believe. Ms. Ho's case against Mr. Nguyen is over and *Mr. Nguyen has been vindicated of Ms. Ho's accusations*, which she raised only after VBS sued her and the other defendants. Joseph Nguyen Decl. ¶ 54, Ex. 202 at 293–99. Indeed, in rejecting Ms. Ho's claims, the arbitrator—Hon. Gary Taylor (Ret.)—noted that the conclusions of Ms. Ho's own expert suggested that Ms. Ho had backdated calendar-diary entries to fabricate the claims of harassment and then lied about them in her deposition. *Id.* Ex. 202 at 296. The Orange County superior court confirmed the arbitration award and entered judgment in favor of Mr.

1    <u>Evidence shows that Ms. Ho voluntarily accepted a relationship of special</u>

2    <u>confidence.</u>  Defendants correctly identify California law that a fiduciary

3    relationship is generally not created simply by the mere receipt of confidential

4    information.  *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 272

5    n.6 (2003).  But as the Court of Appeal in *Richelle L.* also stated, a fiduciary

6    relationship *is* created when the recipient "voluntarily accept[s]" the confidential

7    relationship.  *Id.*

8    A triable issue of fact exists as to whether Ms. Ho accepted a confidential

9    relationship.  First, she voluntarily agreed, through formal contracts, to keep

10   information confidential.  Joseph Nguyen Decl. ¶¶ 19–21, Ex. 8 at 2–4 and Ex. 9 at

11   6–7.  In these contracts, Ms. Ho expressly agreed not to use any of VBS's

12   confidential information  regarding business strategy, technology, and customers

13   gained through working at VBS for her own benefit or the benefit of anyone else

14   other that VBS.  *Id.*  Second, Ms. Ho was given confidential information after each

15   show and reaffirmed her commitment to keep that information in confidence.  *See*

16   Joseph Nguyen Decl. ¶¶ 42, 49; Huynh Decl. ¶¶ 6–7.  Third, Ms. Ho, as a VBS Vice

17   President, was one of just a few high-level VBS employees who had access to

18   VBS's master customer list, containing confidential information of more than 4,000

19   unique VBS customers and vendors.  Huynh Decl. ¶ 15.  Further, Ms. Ho admitted

20   at her deposition that she was aware of her duty not to take any VBS information

21   and documents when she left VBS.  Tram Ho Depo. Trans. (Kearney Decl.) at

22   248:1–12.  This evidence, at a minimum, creates a triable issue as to whether Ms.

23   Ho voluntarily accepted VBS's confidence placed in her.

24

25   Nguyen and the other defendants Ms. Ho sued.  Kearney Decl. Ex. 204 at 306–10.

26   While any accusation of sexual harassment is a serious matter, the Court should not

27   countenance the use of an accusation *proven to be unfounded* to smear or otherwise get an unfair advantage over an adversary.

28

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

Defendants contend that the confidentiality agreement is meaningless because it has no provision that expressly imposes a fiduciary duty.[3]  But Defendants cite no California authority for that contention.  They instead rely on district court decisions, which themselves cited no California law (one case relied on an Eleventh Circuit case which applied New York law).  Under California law, as cited by Defendants, the question is whether the putative fiduciary "voluntarily accepted" a role of confidence.  *See Richelle L.*, 106 Cal. App. 4th at 272 n.6.  Ms. Ho's written and oral agreement to maintain strict confidence over proprietary information is relevant, if not dispositive, of her voluntarily accepting the confidence reposed in her.

### 2.    VBS has presented evidence that it was harmed by the alleged breach of fiduciary duty.

Defendants argue that VBS has not offered evidence that it was harmed by the alleged breach of fiduciary duty.  Setting aside that Defendants' misconstrue their burden of showing that there are no damages as a matter of law, Defendants are wrong.

VBS has presented evidence that Ms. Ho took proprietary customer information with her when she left VBS.  Tran Decl. ¶ 3.  Evidence also shows that about 230 of VBS's former customers are now customers of Defendants' KVLA show.  Huynh Decl. ¶ 16.  Evidence also shows that Ms. Ho solicited VBS customers on behalf of Defendants after she left VBS.  Joseph Nguyen Decl. ¶ 44 Ex. 105 at 141–42, Ex. 108 at 144–45; Huynh Decl. ¶¶ 10–12; Tran Decl. ¶¶ 7–9; Lam Decl. ¶¶ 16–17.  VBS also presented evidence that it lost customers as a result of Defendants' use of proprietary customer information.  Joseph Nguyen Decl. ¶ 53.

---

[3]    Defendants, in effect, argue that the written agreement to keep proprietary information confidential does not prevent Ms. Ho from misusing that information because the agreement did not expressly state that she owes "fiduciary" duties.  That is not and cannot be the law.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

This evidence creates a triable issue as to whether Ms. Ho misappropriated confidential information and thereby diverted sales from VBS to the benefit of Defendants.  *See O'Neal v. Stanislaus Cty. Emps.' Ret. Ass'n*, 8 Cal. App. 5th 1184, 1219 (2017) (holding that summary judgment on the issue of damages was error because evidence supported a conclusion that the alleged breach of fiduciary duty resulted in a "reduction" of funds in the plaintiffs' accounts). At trial, all VBS will have to show on this element is that it "was harmed" and that Ms. Ho's "conduct was a substantial factor in causing [its] harm."  Judicial Council of Cal., Civil Jury Instructions, CACI 4101.  Diversion of sales is harm.

Defendants, of course, deny that they obtained the overlapping customers through unlawful means.  But that is an issue for trial.

### 3. The trade secret claim does not supersede the fiduciary duty claim.

Defendants present no binding authority supporting their argument that the CUTSA or the DTSA preempt the fiduciary duty claim.  Under California law, a claim is not preempted if it "does not depend on the existence of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 241 (2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

In *Silvaco*, the plaintiff alleged that the defendants' misappropriation of trade secrets also violated or aided the violation of a court injunction, and the plaintiff asserted a claim under California's Unfair Competition Law (UCL) on that basis. *Id.*  The Court of Appeal held that the UCL claim was not preempted because "[i]f one is enjoined from disclosing information, and one discloses that information in violation of the injunction, the legal consequences of that act are not affected by the status of the information as a trade secret."  *Id.* at 241–42. "Indeed," the court observed, the information disclosed "may not, and need not *be* a trade secret."  *Id.* at 242.  Similarly, here, the legal consequences of Ms. Ho's breach of fiduciary duty "are not affected by the status of the information as a trade secret."  Improper

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

disclosure of information by a fiduciary is actionable whether or not the information meets the definition of a trade secret.

### B. The Court should deny summary judgment on the trade secrets claim.

#### 1. The Court should decline to consider Defendants' serial challenge to the trade secrets claim

To begin with, the Court should not give Defendants a second bite at the apple.

Defendants previously moved for summary judgment on the trade secrets claim. When this Court granted the motion as to VBS's customer lists, it did so on a single ground: "Because Plaintiffs have failed to show that the customer lists were kept secret, the customer lists cannot constitute a protectable trade secret." (Dkt. 278 at 16–17.) On appeal, the Ninth Circuit reversed the grant of summary judgment on the trade secrets claim: "VBS's evidence was sufficient to create a disputed issue of fact as to whether it took reasonable measures to ensure the secrecy of its customer lists." (See Dkt. 306 at 7.) This Court's August 3, 2020 order invited a motion for summary judgment on the breach of fiduciary duty claim, *not the trade secrets claim.* (Dkt. 309 at 2.) Although that order stated that "Defendants may also raise other issues," the Court should not allow Defendants to raise new issues that they could have raised in their previous summary judgment motion.

Although the Court may consider successive summary judgment motions, the Ninth Circuit has recognized "the potential for abuse of the procedure" and cautioned district courts to exercise discretion to "weed out" motions that are "simply repetitive." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). The exceptional course of allowing serial motions for summary judgment on the same claim is generally justified only where there has been a development in the record or a change in law. *See id.* (discussing justification for successive summary judgment motions on an "expanded record"); *Armentero v. Willis*, No. CIV S-08-

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

2790 GGH P, 2013 U.S. Dist. LEXIS 4764, at *9 (E.D. Cal. Jan. 11, 2013) (allowing second motion where "[n]one of the evidence defendant now seeks to put forth was unavailable or could not otherwise be brought at the time defendant moved for summary judgment").

There has been no change in the factual record—other than the arbitrator's rejection of Ms. Ho's harassment claim—and no change in law since Defendants' last summary judgment motion. All of their arguments in the new motion directed at the trade secrets claim could have been—but most were not—raised before. The Court should summarily deny the motion as to the trade secrets claim. At most, the Court should consider no more than Defendants' challenge to the element of misappropriation—the only argument Defendants' raised in the prior summary judgment apart from the argument that the Ninth Circuit rejected.

### 2. There are genuine factual disputes about whether VBS's customer and auction lists are protectible trade secrets.

"[A] prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003); *see also* Cal. Civ. Code § 3426.1; 18 U.S.C. § 1832 et seq. Defendants address the first (a protectable trade secret) and second (misappropriation) elements.

VBS has sufficiently identified its trade secrets. Defendants misconstrue California Code of Civil Procedure § 2019.210. When a defendant raises that statute *at the proper time*—"before commencing discovery related to the trade secret"—it protects the defendant from discovery until the party alleging misappropriation "identif[ies] the trade secret with reasonable particularity." Cal. Code Civ. Proc. § 2019.210. That statute does not authorize a procedural "gotcha" to spring onto a plaintiff for automatic judgment in the defendant's favor.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

15

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

In any event, VBS has identified its trade secrets with reasonable particularity. Defendants complain that VBS redacted the much of the actual content in the representative charts of trade secret information. But the duty to identify with reasonably particularity does not require that a plaintiff replicate all the contents of the asserted trade secret information. Indeed, reasonable particularity "does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005). Instead, the trade secret need only "be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 43–44 (2014). VBS has satisfied that standard. The following is a summary description of VBS's asserted trade secrets:

- Customer information: names, contact information, and purchase history, including the amount spent, purchase date, types of items bought or bid on, and the overall purchase history.
- Pricing guidelines, concepts, procedures, explanations, market and customer strategies, and other related confidential information.

The contents of VBS's customer lists and other proprietary business information are trade secrets. "A trade secret is 'information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Advanced Modular*, 132 Cal. App. 4th at 833 (quoting Cal. Civ. Code § 3426.1(d)). The Ninth Circuit held that there is a genuine dispute about whether VBS took reasonable efforts to protect its proprietary

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

information, and that holding is the law of the case.  So the only issue now is whether VBS's proprietary information derives independent economic value from not being generally known to the public or its competitors.

Defendants cite *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514 (1997), but that case helps VBS.  Customer information is a trade secret when "the secrecy of this information provides a business with a 'substantial business advantage.'"  *Id.* at 1522.  "In this respect, a customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested."  *Id.*  Use of such a list "enables the former employee 'to solicit both more selectively and more effectively.'"  *Id.*  In *Morlife*, the plaintiff presented testimony that it undertook great effort to secure the patronage of its customers and that the identity of its customers were not readily ascertainable by the public generally.  *Id.*  The Court of Appeal held that such evidence was "more than sufficient" to support the finding that the customer information "had independent economic value" and "was not generally known to the public."  *Id.* at 1522–23.

As in *Morlife*, VBS has presented ample evidence that it expended considerable time and effort to secure the patronage of its customers and gather customer information.  Since VBS began its show in 2011, it has expended time and capital in marketing its television show to attract customers by advertising in the newspaper, emails, magazines, flyers, and on the radio and television.  Joseph Nguyen Decl. ¶ 12.  VBS spent about $100,000 per year on advertising and marketing to acquire new customers.  *Id.*  That amount includes about $10,000 per year spent on advertising in the largest Vietnamese newspaper in the United States.  *Id.*  VBS hired one of the most famous Vietnamese models, and another well-known public figure, to appear in its advertisements.  *Id.*  As VBS found success acquiring customers, it invested several years collecting, analyzing, and organizing data about

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

its customers.  Joseph Nguyen Decl. ¶ 38; Huynh Decl. ¶ 4.  Through those efforts, over the years VBS compiled proprietary customer information—including names, contact information, and purchases (amount spent, purchase dates, types of items bought or bid on)—by maintaining the information from sales through the VBS Show.  Joseph Nguyen Decl. ¶ 38; Huynh Decl. ¶ 4.  VBS takes great lengths to keep its confidential customer information confidential.[4]  Joseph Nguyen Decl. ¶ 39. Ironically, Defendants' contracts with its own employees identify its own customer lists and customer requirements as trade secrets.  Joseph Nguyen Decl. ¶ 41, Ex. 44 at 128–35.

Defendants present no evidence that the identity of VBS's customers—let alone their contact information and purchase history—is generally known to or readily ascertainable by the public.  Indeed, like in *Morlife*, Ms. Ho's disclosure to the Show Defendants of VBS's customer lists "would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique . . . product as opposed to a list of people who only might be interested." *Id.* at 1522.

Defendants misconstrue California law when they argue that customer lists are not protectable if they contain merely the identities and contact information of customers.  Indeed, in at least three published cases cited in Defendants' motion, *Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 462 (1978), and *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (1991), and *Morlife*, the Court of Appeal upheld trade secret claims based on customer lists.  As stated in *Morlife*, customer lists are not trade secrets *if* "they embody information which is 'readily ascertainable' through public sources, such as business directories."  56 Cal. App. 4th at 1521.  There is no public source from which the Show Defendants (or anyone

---

[4]   To be clear, whether VBS has taken reasonable steps to keep its proprietary information secret is not at issue because of the Ninth Circuit's decision.

else) could readily learn of the customers of its competitor, VBS.  Defendants' argument also overlooks that VBS's customer information is not limited to names and contact information.  VBS's trade secrets include customers' purchase history, which, paired with the names and contact information, is valuable information that "would allow a competitor to direct its sales efforts to those customers who have already shown" a proclivity to purchase certain products.  *See Morlife*, 56 Cal. App. 4th at 1522.

Defendants emphasize that VBS has not produced a complete, unredacted copy of their customer and auction lists.  They cite no authority that VBS must do so.  For the same reason, Defendants' best-evidence-rule objection misses the mark. The best evidence rule (which has many exceptions) applies only when the proponent seeks to prove the *contents of a writing*.  *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1035 (9th Cir. 2011).  Ms. Huyn's declaration submitted in opposition to the current summary judgment motion—as well as her prior declaration—shows that she has personal knowledge of VBS's current and former customers and that the customer list produced by Defendants includes about 230 former VBS customers.  Huynh Decl. ¶ 16.  That evidence was not offered to prove the contents of any writing but instead to prove that former VBS customers have become customers of the Show Defendants.  The best evidence rule thus has no application.

### 3. There is a genuine factual dispute on the question of misappropriation.

VBS has presented ample evidence from which a trier of fact could conclude that Ms. Ho and the other defendants misappropriated its trade secrets.

First, multiple VBS personnel testified that Ms. Ho was given access to VBS customer information.  Mr. Joseph Nguyen stated, "[Ms.] Ho was provided, in strict confidence and solely in connection with her work for VBS, with VBS confidential information during her work for VBS.  Such information included confidential

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

customer names, customer information, vendor information, and pricing information. . . . After each show, [Ms. Ho] was given a print-out of portions of the customer list . . . ." Joseph Nguyen Decl. ¶¶ 42, 49.  Ms. Huynh declared that "[a]fter each show, [she] would print off a confidential customer list from [her] computer, personally give the list to [Ms.] Ho, and often remind [Ms. Ho] not to show the list to, or share them with, anyone." Huynh Decl. ¶ 6.  The confidential customer lists given to Ms. Ho "contained customer phone numbers, ID numbers, how customers paid and how much they paid, and the commission to VBS." *Id.* ¶ 14.

Second, VBS employee Hau Thi Tran saw Ms. Ho writing down customer information from her computer screen.  Tran Decl. ¶ 3.  When Ms. Tran looked at Ms. Ho's computer screen, she saw a list of VBS customers and their names, telephone numbers, and ID numbers.  *Id.*  Defendants cited deposition testimony of Ms. Tran, which they interpret to mean that Ms. Tran did not actually see Ms. Ho copying down names.  But the testimony is at most ambiguous.  Ms. Tran stated: "I didn't see the names. *All I saw was her writing the names on [the paper]*." (Emphasis added.)  Read in a light most favorable to VBS (the non-movant), this testimony suggests that Ms. Tran saw Ms. Ho copying down customer names even if she did not see any specific name that Ms. Ho wrote.

To defeat summary judgment, VBS of course need not disprove Defendants' contention that Ms. Ho had no access to confidential customer information.  But documents produced by Ms. Ho do just that.  Ms. Ho produced in discovery *VBS* customer lists.  Joseph Nguyen Decl. ¶ 43 Ex. 43 at 109–10.  She could not have done so if she never had access to VBS's confidential customer information.  Ms. Ho also admitted in her deposition that she was provided access to customer lists when she worked for VBS.  Tram Ho Depo. Trans. (Kearney Decl.) at 258:9–260:18, 100:20-101:25, 212:12–213:24.  Additionally, at her deposition, Ms. Ho did not deny soliciting VBS customers after she left VBS, and she instead tried to justify

doing so by claiming that they were her own customers.  Tram Ho Depo. Trans. (Kearney Decl.) at 140:18-143:19; 212:4-213:20; 255:1–19.

Third, Ms. Ho sent emails soliciting VBS customers to purchase jewelry through Defendants' competing show.  Joseph Nguyen Decl. ¶ 44 Ex. 105 at 141, Ex. 108 at 144.  (At her deposition, Ms. Ho authenticated these emails and their English translation.  Tram Ho Depo. Trans. (Kearney Decl.) at 137:13–138:6; 160:2-163:22.)

Fourth, VBS received telephone calls from customers complaining that they had received calls from someone claiming to be affiliated with VBS but encouraging the customers to a new show—Defendants' competing show—on a different channel.  Huynh Decl. ¶¶ 10–12.  Some of these customers said that Ms. Ho identified herself as the person calling to promote the "new show" that was supposedly (but not actually) affiliated with VBS.  *Id.*; *see also* Tran Decl. ¶¶ 7–9.  A VBS vendor reported receiving similar calls from confused VBS customers.  Lam Decl. ¶¶ 16–17, 20.

Fifth, after Defendants produced a customer list in discovery, a VBS employee identified about 230 former VBS customers on the list.  Huynh Decl. ¶ 16.

Sixth, Ms. Ho admitted that she took various VBS confidential documents and information when she left VBS.  Although at one point in her deposition, Ms. Ho denied having taken any documents, she later admitted that she did take confidential material.  Tram Ho Depo. Trans. (Kearney Decl.) 258:9–260:18.

VBS's evidence—as well as Ms. Ho's own testimony confirming that she contacted VBS customers—is more than enough for a jury to find that Defendants' misappropriated VBS's trade secrets.

Defendants' arguments on the element of misappropriation are mostly attacks on the weight of VBS's evidence.  Those arguments might ultimately be persuasive with the jury, but they do not establish any material fact as undisputed or that Defendants are entitled to judgment as a matter of law.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

First, Defendants argue at length that Ms. Ho did not have "computer" access to customer lists. Mot. at 20–22. That is a red herring. There is no reason that Ms. Ho's access to customer information had to be by *computer*. In any event, a VBS employee testified that she saw Ms. Ho writing customer names down from a VBS computer screen displaying the customer information. Tran Decl. ¶ 3.

Second, Defendants argue that Ms. Ho did not copy customer information based on Ms. Ho's testimony denying that she did and on their assertion that Ms. Hau Thi Tran's story "falls apart upon inspection." Mot. at 22–23. Again, a party's denial, no matter how "vehemently" offered, and criticism of another witness's contrary testimony as "feeble" does not render the facts undisputed.

Third, Defendants argue that Ms. Ho independently acquired customers before she worked for VBS. Mot. at 23–24. Although Ms. Ho testified vaguely that she had "many" jewelry customers before she began working for VBS, she also testified that she did not have a license to sell jewelry commercially and that the "customers" she was referring to were those who she sold her own personal jewelry to on occasion when she needed money. Tram Ho Depo. Trans. (Kearney Decl.) at 226:24–227:15. That of course would not explain how within a short period Defendants were selling jewelry to more than 200 former VBS customers. In any event, Defendants' argument at most shows that there is a genuine dispute of fact.

Finally, Defendants offer one explanation for why so many of Defendants' customers are former VBS customers: "some of these same customers *could* be calling both shows to purchase jewelry." Mot. at 18. And they suggest that there would be "nothing unusual about customers buying jewelry from two different shows" independently. *Id.* Defendants' possible explanation is just that—one possibility. Their argument underscores their failure to establish as an undisputed fact that Defendants did not misappropriate VBS's trade secrets.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**DYKEMA GOSSETT LLP**
**333 SOUTH GRAND AVENUE**
**SUITE 2100**
**LOS ANGELES, CALIFORNIA 90071**

### C.     Defendants offer no independent basis for summary judgment on the civil conspiracy theory of liability.

Defendants suggest that the civil conspiracy theory of liability stands or falls with the other two remaining claims.  VBS agrees.  If the Court denies summary judgment on the trade secrets or fiduciary duty claims, it should also deny the motion as to the civil conspiracy theory of liability.

### D.     Defendant Tom Nguyen is not entitled to summary judgment.

Defendants do not present a valid basis for the Court to award judgment as a matter of law in favor of defendant Tuong (Tom) Nguyen.

Defendants contend that Mr. Tom Nguyen was no longer involved in KVLA by early 2016.  But that was around the same time that Ms. Ho began working with the Show Defendants to set up the competing jewelry show.  Nguyen Depo. Trans. (Kearney Decl.) at 31:20–32:4; Joseph Nguyen Decl. ¶ 23.  At his deposition, Mr. Tom Nguyen admitted that he was involved in setting up the competing show. Tuong (Tom) Nguyen Depo. Trans. (Kearney Decl.) at 31:20–32:4; 86:2–20; 87:3–88:10.   Additionally, although an agreement in early 2016 to "give up" his investments in KVLA might limit his own rights, it does not absolve Mr. Tom Nguyen of responsibility for any involvement in the tortious conduct alleged by VBS.  There is a triable issue of fact about his role in the wrongful conduct.

## IV.    CONCLUSION

For all these reasons, the Court should deny Defendants' motion for summary judgment.

DATED:  September 14, 2020          DYKEMA GOSSETT LLP


By:     */s/ James S. Azadian*
        James S. Azadian
        Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT